UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC SURF DESIGNS, INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>v.<br><br>WHITEWATER WEST INDUSTRIES, LTD., a Canadian corporation; GEOFFREY CHUTTER, an individual; FLOWRIDER INC., a California corporation; MARSHALL MYRMAN, an individual; AQUATIC DEVELOPMENT GROUP, INC., a New York corporation; DAVID KEIM, an individual; and THOMAS LOCHTEFELD, an individual,<br><br>              Defendants. | Case No.: 3:20-cv-01464-BEN-BLM<br><br>**ORDER:**<br><br>**(1) GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(2) DENYING AS MOOT DEFENDANT CHUTTER'S MOTION TO DISMISS**<br><br>[ECF Nos. 28, 29] |

Plaintiff Pacific Surf Designs, Inc. ("PSD") is suing Defendants Whitewater West Industries, Ltd. ("Whitewater"); Geoffrey Chutter, Flowrider, Inc. ("Flowrider"); Marshall Myrman; Aquatic Development Group, Inc. ("ADG"); David Keim; and Thomas Lochtefeld (collectively, "Defendants" or the "RICO Conspiracy Defendants") for claims arising in antitrust and racketeering. The matter comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 28, and Defendant

1

Chutter's Motion to Dismiss for Lack of Jurisdiction, ECF No. 29.  As set forth below, the Motion to Dismiss for Failure to State a Claim is **GRANTED-IN-PART**, and the Motion to Dismiss for Lack of Jurisdiction is **DENIED AS MOOT**.

## I.   BACKGROUND[1]

This case concerns sheet wave machines.  Sheet wave machines are amusement rides that pump a thin but powerful sheet of water over a padded ride surface, allowing a rider to simulate surfing or boogie boarding.  Compl., ¶ 2.  Sheet wave machines are often installed at water parks, hotels, resorts, and municipal swimming pools as well as on cruise ships.  *Id*.

Whitewater has long held the dominant share in this industry—controlling up to 97% of the relevant market.  Compl., ¶ 17.  Whitewater's CEO is Geoffrey Chutter, one of the named Defendants.  *Id*. at ¶ 29.  Whitewater is also the parent company of Flowrider, and Flowrider's President and Chief Operating Officer, Marshall Myrman, is also one of the named defendants.  *Id*. at ¶¶ 30-31.  ADG is Whitewater's exclusive distributor in most of the United States and also provides consulting services to waterpark developers including hotels, resorts, and municipalities.  *Id*. at ¶ 32.  ADG's Vice President for Business Development, David Keim, is another named defendant.  *Id*. at 33.  Finally, Thomas Lochtefeld was one of the first people to patent sheet wave machine technology, some of which has previously been at issue before this Court.  *Id*. at ¶ 76; *see Whitewater West Inds. v. Pacific Surf Designs, Inc.*, S.D. Cal. Case No. 17-cv-1118-BEN-BLM.

PSD was founded in 2012 by Richard Alleshouse, who previously worked as an engineer West Loch, Lochtefeld's sheet wave machine company.  Compl., ¶ 93.  As an upstart in the market, PSD hoped it could offer superior products at better prices and

---

[1]   The following overview of the facts is drawn from PSD's Complaint, ECF No. 1, which the Court assumes true in analyzing Defendants' Motion to Dismiss.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court is not making factual findings.

capture a share of the sheet wave machine market. Compl., ¶ 8. It hoped to compete with Whitewater for clients both in the general, worldwide market for sheet wave machines as well as in the smaller submarket for selling sheet wave machines to municipalities within the United States. *Id*. However, its hopes were dashed by an extensive and malicious campaign to thwart PSD's business and unlawfully corner the market. *Id*.

PSD's first claim for relief alleges Whitewater violated the Sherman Act by creating and maintaining an unlawful monopoly through anticompetitive behavior. Compl., ¶¶ 233-47. It alleges Whitewater worked with (1) Lochtefeld and Flowrider to initiate "sham" litigation and (2) ADG to create an unlawful "Exclusion Agreement" used to pressure, coerce, and induce third-party consultants to rig municipal project bids against PSD in an unlawfully monopolistic manner. *Id*. at ¶ 243. This alleged process cost municipalities and other developers hundreds of thousands of dollars that could have gone to superior, less costly sheet wave machines produced by PSD. *Id* at ¶ 245.

PSD's second and third claims for relief allege Whitewater and ADG also violated the Sherman Act by entering into an unlawful agreement to restrain trade. Compl., ¶¶ 248-69. PSD alleges that Whitewater controls up to 97% of the U.S. municipal sheet wave machine market and a correspondingly high share of the worldwide market. *Id*. at ¶ 17. PSD argues Whitewater maintains this control through an agreement with ADG, its exclusive distributor in the United States, to pressure municipalities and other buyers into purchasing only Whitewater products at the expense of competitors. *Id*. at ¶¶ 146-53. Often, municipalities employed third-party intermediaries to help source bids for new city pools that might feature a sheet wave machine, and PSD argues that Whitewater and ADG used their respective roles and market power to force those intermediaries to recommend Whitewater's products. *Id*. PSD cites specific examples from Oklahoma, Arkansas, Texas, and Missouri. *Id*. at ¶¶ 175-89.

As discussed below, PSD withdrew its fourth claim for relief for Walker Process Fraud, and thus, the Court does not address it here. *See below*, Section III.C.

PSD's final two claims for relief allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO"). Claim five is directed at Whitewater and Geoffrey Chutter, while claim six is levied against each named Defendant together. These claims allege the RICO Conspiracy Defendants schemed to put PSD out of business, rig project bids, and deprive PSD of market share. Opp'n, ECF No. 33, 26. PSD alleges the RICO Conspiracy Defendants used email communications to carry out their scheme. *Id.* Notably, however, PSD does not allege specific money or property the RICO Conspiracy Defendants took from it because of the scheme.

## II. LEGAL STANDARD

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or absence of sufficient facts to support a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering a Rule 12(b)(6) motion, the Court "accept[s] as true facts alleged and draw[s] inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010). A plaintiff must not merely allege conceivably unlawful conduct but must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a court dismisses a complaint, it may grant leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

/ / /

## III. ANALYSIS

### A. *Claim 1: Unlawful Monopolization or Attempted Monopolization*

PSD alleges Whitewater either created or attempted to create an unlawful monopoly in the worldwide sheet wave machine market. Compl., ¶¶ 233-47. In moving to dismiss this claim, Whitewater argues PSD makes no allegation of anticompetitive conduct. Mot., ECF No. 28, 5. It also argues the *Noerr-Pennington* Doctrine and statute of limitations bar certain allegations from forming the basis of an unlawful monopoly claim here. *Id*. at 5-11. As discussed below, the Court finds at least a portion of the alleged unlawful conduct is not protected by the *Noerr-Pennington* Doctrine, and therefore, denies the Motion to Dismiss with respect to Claim 1.

Section 2 of the Sherman Act ("Section 2") makes it a crime to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. Congress has also established a private right of action to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws," providing for treble damages, costs, and attorney's fees. 15 U.S.C. § 15. To state a claim for unlawful monopolization under Section 2, a plaintiff must allege "(1) [p]ossession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 783 (9th Cir. 1996).

Turning to the first element, PSD alleges (and Whitewater does not dispute) that Whitewater has monopoly power in the relevant market—here, the worldwide sheet wave machine market. Compl., ¶¶ 234-36. With the first element established, the Court turns to whether Whitewater willfully acquired or maintained its monopoly power and whether its conduct caused PSD's alleged antitrust injury. *See SmileCare*, 88 F.3d at 783.

"[I]n addition to the possession of monopoly power in the relevant market," a plaintiff must also establish "'the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product,

business acumen, or historic accident.'" *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570–571 (1966)). Hence, for a violation of 15 U.S.C. § 2 to occur, "[t]he possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct." *Id.* Anticompetitive conduct "is behavior that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Cascade Health Solutions v. PeaceHealth,* 515 F.3d 883, 894 (9th Cir. 2008); *see also Image Tech. Serv., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1208 (9th Cir. 1997). Here, PSD alleges Whitewater engaged in anticompetitive conduct by "pressure[ing], coerc[ing], or induc[ing] *third-party consultants* . . . to participate in the rigging of bid specifications for U.S. municipal contracts for sheet wave machines." Compl., ¶ 240 (emphasis added). Whitewater, however, argues PSD's Complaint fails to plausibly allege anticompetitive conduct because its allegedly unlawful bid-rigging activities are protected by the *Noerr-Pennington* Doctrine. Mot., 6-13.

      The *Noerr–Pennington* Doctrine provides immunity to private entities from liability under antitrust laws for conduct related to petitioning any branch of government to influence the passage or enforcement of laws that might have anticompetitive effects. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015); *Sosa v. DIRECTTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006). The doctrine "has since been expanded to ensure that 'those who petition any department of the government,'. . . 'are immune from . . . liability for their petitioning conduct.'" *Microsoft*, 795 F.3d at 1047 (citations omitted). It originates with the principle that "efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965). Nonetheless, it is less clear that the *Noerr-Pennington* Doctrine applies to pressuring, coercing, or inducing *third-party intermediaries* to influence public officials, which is what PSD alleges here. However, Whitewater's argument that such conduct falls outside the scope of the *Noerr-*

6

*Pennington* Doctrine is equally unpersuasive.

Whitewater argues that PSD "cites to no authority indicating the involvement of a third party, working *on behalf* of a public municipality to develop the specifications for a government project, somehow strips Defendants of their First Amendment petitioning rights." Reply, ECF No. 36, 5.  But this only states the obvious: the *Noerr-Pennington* Doctrine applies to attempts to influence public officials.  *See Pennington*, 381 U.S. at 670.  The Complaint, by contrast, alleges Whitewater attempted to influence third-party intermediaries, who in turn influenced public officials.

Without deciding whether attempts to influence third-party intermediaries are entitled to the protections provided by the *Noerr-Pennington* Doctrine, the Court finds PSD plausibly pleads anticompetitive conduct to support a claim for violation of Section 2 by alleging Whitewater pressured third-party intermediaries to rig bid specifications for sheet wave machines in the relevant markets.  PSD also detailed the damages it sustained from Whitewater's conduct.  *See* Compl., ¶ 246.  Accordingly, the Court finds PSD has adequately pled the elements of a Section 2 violation, and as a result, denies Defendants' Motion to Dismiss this claim.

      **B.**    *Claims 2 & 3: Unlawful Restraint of Trade*

PSD next alleges Whitewater and ADG "willfully and with specific intent agreed with one another to unreasonably restrain trade and foreclose competition" in both the worldwide and United States municipal sheet wave machine markets in violation of 15 U.S.C. § 1, Section 1 of the Sherman Act ("Section 1").  Compl., ¶¶ 250, 261.  Defendants argue (1) the Complaint lacks factual detail about the alleged conspiracy, (2) none of the conduct alleged constitutes an unreasonable restraint on trade, and (3) Whitewater and ADG, the defendants named in these claims, "are legally incapable of conspiring under the Supreme Court's decision in *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)." Mot., 18.

"To state a claim under Section 1, a plaintiff must allege (1) a contract, combination, or conspiracy between two or more entities; (2) in unreasonable restraint of

1  trade; that (3) affects interstate commerce." *Pro Search Plus, LLC v. VFM Leonardo,*
2  *Inc.*, Case No. 12-2102-JLS-ANX, 2013 WL 6229141, at *5 (C.D. Cal. Dec. 2, 2013)
3  (citing 15 U.S.C. § 1; *Am. Ad Mgmt., Inc. v. GTE Corp.,* 92 F.3d 781, 788 (9th Cir.
4  1996)).  Defendants mistakenly argue PSD attempts to show an antitrust conspiracy,
5  which would invoke a heightened pleading standard, Mot., 22-23, but this is not the
6  allegation.  Instead, PSD alleges Whitewater and ADG entered into a contract (the
7  "Exclusion Agreement") "that foreclosed PSD and harmed competition in the relevant
8  sheet wave machine markets."  Opp'n, 18.

9        Turning to the three elements of a Section 1 claim, the Court finds PSD pled
10 sufficient facts to state a plausible claim for relief.  First, PSD alleges Whitewater and
11 ADG—i.e., two or more entities—have a *de facto* agreement that goes beyond their
12 licensing agreement to pressure intermediaries to reject Whitewater's competitors,
13 including PSD.  Compl., ¶ 147.  Second, PSD plausibly alleges a litany of specific
14 actions, taken pursuant to an Exclusion Agreement, designed to exclude PSD and other
15 competitors from the relevant sheet wave machine markets.  *See Id*. at ¶¶ 251, 262.
16 These allegations plausibly allege a contract to impose an unreasonable restraint on trade.
17 Third, the parties do not dispute the allegation that Defendants' conduct allegedly affects
18 interstate commerce.  Accordingly, the Court finds PSD has adequately pled violations of
19 Section 1.

20       Defendants also argue that because they are parties with "a common economic
21 interest and without diverging interests" they are not capable of creating an antitrust
22 conspiracy.  Mot., 22 (citing *Copperweld*, 467 U.S. at 773).  In support of this argument,
23 they contend that "ADG recommends [Whitewater's sheet wave machine] not because of
24 any anticompetitive restraint in its license agreement, but rather because ADG—as the
25 exclusive distributor of [Whitewater's sheet wave machine]—has a legitimate financial
26 interest in recommending that product instead of others."  Reply, 9.  In other words, the
27 Parties agree Whitewater and ADG have an exclusive licensing agreement but disagree
28 about whether the licensing agreement (1) contains a *de facto* agreement to squeeze out

Whitewater's competition and (2) in this context, is unlawful anticompetitive behavior.

"Behavior that otherwise might comply with antitrust law may be impermissibly exclusionary when practiced by a monopolist." *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005). While "an exclusive dealing arrangement does not constitute a *per se* violation of [15 U.S.C. § 1]," *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.*, 676 F.2d 1291, 1303-04 (9th Cir. 1982), "[u]nder the antitrust rule of reason, an exclusive dealing arrangement violates section 1 [] if its effect is to 'foreclose competition in a substantial share of the line of commerce affected.'" *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (quoting *Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327 (1961)). That is precisely what PSD alleges here.

PSD provides plausible allegations that Whitewater and ADG control up to 97% of the U.S. municipal sheet wave machine market and a correspondingly high share of the worldwide market. Compl., ¶ 17. PSD also plausibly alleges that when ADG consulted on several specific municipal installations, it not only promoted Whitewater's sheet wave machine but also did so in a manner that foreclosed competition in a substantial share of the relevant markets. *See Allied Orthopedic*, 592 F.3d at 996. While PSD must later prove this anticompetitive conduct and support its allegations with admissible evidence, it has certainly alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, Defendants' Motion to Dismiss claims 2 and 3 is denied.

C.  *Count 4: Walker Process Claim*

In its Opposition to the Motion to Dismiss for Failure to State a Claim, PSD withdrew Count 4 of its Complaint without prejudice. Opp'n, 23-24. Accordingly, the Court grants Defendants' Motion to Dismiss this claim.

D.  *Counts 5 & 6: RICO Claims*

Finally, PSD brings two claims for violations of 18 U.S.C. § 1961 and § 1962(d) against Chutter, Whitewater, and the RICO Conspiracy Defendants. Compl., ¶¶ 292,

309. "In essence, PSD alleges that Defendants schemed to eliminate PSD as competition and to put PSD out of business," by disparaging PSD's reputation, threatening customers with litigation, bringing frivolous lawsuits, and rigging bids. Opp'n, 26 (quotations omitted).

To establish a RICO claim, a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996)). PSD argues the "predicate act" here is wire fraud, a violation of 18 U.S.C. § 1343. Opp'n, 24. Wire fraud, in turn, requires "(1) a scheme to defraud, (2) use of the wires in furtherance of the scheme and (3) specific intent to deceive or defraud." *United States v. Hussain*, 972 F.3d 1138, 1143 (9th Cir. 2020). To establish standing for a RICO claim, a plaintiff must "show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002). "[M]arket share is neither tangible or intangible property; its loss is far too amorphous a blow to support a claim of mail fraud." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 406 (9th Cir. 1991). It is here that PSD's RICO claims fail.

"In essence, PSD alleges that Defendants schemed to 'eliminate PSD as competition' and to 'put PSD out of business.'" Opp'n, 26. This, stated in PSD's own words, essentially argues that Defendants sought to capture additional market share and deprived PSD of future business by squeezing PSD out of the sheet wave machine market. Capturing additional market share, unlike the taking of money or property, does not meet the concrete injury standard articulated by the Ninth Circuit in *Lancaster*. 940 F.2d at 406. The claims lack allegation of "a harm to a specific business or property interest" required to plausibly state a claim for wire fraud. *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

Because PSD has not adequately pled a predicate act required for its RICO claims,

Defendants' Motion to Dismiss those claims is granted.

### E.  *Motion to Dismiss for Lack of Personal Jurisdiction*

Concurrent with Defendants' Motion to Dismiss for Failure to State a Claim, Defendant Chutter filed a Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 29.  Chutter is Whitewater's CEO but is only named as an individual defendant for PSD's fifth and sixth claims, which allege RICO violations.  Compl., ¶¶ 289-313.  As discussed above, those claims have been dismissed and deciding the Motion at this juncture would have no effect on the case.  Accordingly, the Motion to Dismiss for Lack of Personal Jurisdiction is denied as moot.  *See*, *e.g.*, *Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (concluding "that an issue is moot when deciding it would have no effect within the confines of the case").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 28, is **GRANTED-IN-PART**, as follows:

1.  Defendants' Motion to Dismiss the first through third claims for relief in the Complaint is **DENIED**.

2.  Defendants' Motion to Dismiss Plaintiff's fourth through sixth claims for relief in the Complaint is **GRANTED**.  These claims are dismissed.

3.  If Plaintiff wishes to file an amended complaint, Plaintiff must request leave of this Court within fourteen (14) days of this Order.  *See* Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED.**

Dated: February 8, 2021

HON. ROGER T. BENITEZ
United States District Judge