# Exhibit 1

**Buchalter PC**
Joshua M. Robbins (SBN 270553)
Roger L. Scott (SBN 247165)
Adam M. Sechooler (SBN 293860)
Alexandria C. Montes (SBN 309207)
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
949.760.1121

**Crowell & Moring LLP**
Daniel A. Sasse (SBN 236234)
Chahira Solh (SBN 248985)
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949.263.8400

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Pacific Surf Designs, Inc.**,<br><br>            Plaintiff,<br><br>      vs.<br><br>**WhiteWater West Industries, Ltd., et al.**,<br><br>            Defendants. | CASE NO. 3:20-cv-01464-BEN-DDL<br>Hon. Judge Roger T. Benitez<br><br>**Declaration of Geoffrey Chutter in Support of Motion for Summary Judgment**<br><br>Hearing Date: June 5, 2023<br>Ctrm:  5A |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**DECLARATION OF GEOFFREY CHUTTER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# DECLARATION OF GEOFFREY CHUTTER

I, Geoffrey Chutter, hereby declare as follows:

1. I am a citizen of Canada, residing in Vancouver, British Columbia.

2. I am the founder, president, and CEO of WhiteWater West Industries, Ltd. ("WhiteWater"), a defendant in this case. I founded WhiteWater in 1980 with my uncle.

3. One of my responsibilities as president and CEO of WhiteWater is approving its and its subsidiaries' participation in litigation. Although I often receive advice and input from others in the company, as well as company counsel, the decision of whether to pursue litigation ultimately belongs to me alone.

4. I approved and directed the filing of lawsuits against Pacific Surf Designs Inc. ("PSD") and its founders, first by WhiteWater subsidiaries Flowrider Surf Ltd. and Surf Waves, Ltd. in May 2014 and June 2015, and later by WhiteWater itself in March and June 2017.

5. Specifically, as to *Flowrider Surf Ltd. v. Pacific Surf Designs, Inc.*, Case No. 14-cv-01110, I reviewed information on sheet wave machines that PSD was selling and offering for sale, consulted with others inside and outside the company, and believed that PSD's products infringed on Patent No. 6,491,589 (the "'589 Patent"), which WhiteWater had recently bought from Wave Loch, Inc. Over a number of years, WhiteWater had paid millions of dollars to Wave Loch to license that patent and other intellectual property. In 2014, WhiteWater paid another $2.5 million, and agreed to pay future royalties, to license the patent (through Flowrider Surf), along with licensing or purchasing other assets. In total, WhiteWater has paid over $19 million to license or buy those assets. I believed when the litigation was filed, and continue to believe today, that the '589 Patent was valid when issued and should have remained valid until its term expired in 2020.

6. The sheet wave machines that PSD was offering for sale looked very similar to the "FlowRider" sheet wave machine that WhiteWater sold, and that used the '589 Patent. I also knew that Richard Alleshouse, one of PSD's founders, had previously worked for Wave Loch and was very familiar with the FlowRider's technology. I understand that when he launched PSD, Mr. Alleshouse wrote to PSD's co-founder that he intended to make and sell a "knockoff" of the FlowRider. I understood that PSD's sheet wave machines used a "nozzle flap" that infringed on the '589 Patent, and I continue to believe that today.

7. As to *Surf Waves Ltd. v. Pacific Surf Designs, Inc.*, Case No. 14-01108, I reviewed information on "half-pipe" sheet wave machines that PSD was offering or planning to offer for sale, consulted with others inside and outside the company, and believed that PSD's product infringed on Patent No. 8,088,016 (the "'016 Patent"), which was owned by Surf Waves, Ltd. WhiteWater had bought Surf Waves, then called Murphy's Waves, Ltd., in 2012 for £2,329,066 (about $3.7 million at the time). I believed when the litigation was filed, and continue to believe today, that the 016 Patent was valid when issued and should still be valid today.

8. I understand that when he launched PSD, Mr. Alleshouse wrote to PSD's co-founder that he intended to make and sell a "halfpipe type wave" that was "basically [M]urphy[']s wave halfpipe but with water on the sides." I continue to believe today that PSD's "halfpipe" design infringes on the '016 Patent.

9. In mid-2014, WhiteWater and PSD entered into discussions regarding settlement of the two lawsuits. Both sides signed a Tolling Agreement, under which, as I understood it, Flowrider Surf and Surf Waves would voluntarily dismiss the lawsuits without prejudice, so that the parties could continue to discuss settlement, but both lawsuits could be re-filed if no settlement was reached. **Exhibit 1** to this declaration is a true and correct copy of the tolling agreement. When no settlement was reached, I directed that the patent claims be re-filed, this time in a single joint case: No. 15-01879.

3

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**DECLARATION OF GEOFFREY CHUTTER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

10. In May 2017, Flowrider Surf's claim regarding the '589 Patent was dismissed without prejudice for lack of standing, because that company had been amalgamated into WhiteWater. I then directed that the claim be refiled in WhiteWater's name.

11. I also learned that PSD had applied for several patents on inventions that I believed were based on work that Mr. Alleshouse had done and information he had learned while he was working for Wave Loch. I understood that while at Wave Loch, he had signed an agreement under which, in return for his employment compensation, he was prohibited from using confidential Wave Loch information to "carry on" a competing business, and inventions derived from his employment at Wave Loch would belong to Wave Loch and be assigned to it. I understood that the agreement, which was later assigned to Flowrider Surf (and later WhiteWater) as part of its asset purchase, was valid and enforceable. I also believed that Mr. Alleshouse had breached the agreement by using technology and information developed at Wave Loch to pursue patents to benefit PSD. I believed that any resulting patents should thus belong to WhiteWater.

12. At the same time, I believed that PSD co-founder Yong Yeh, who was listed as a co-inventor on the patent application but who was not an engineer by trade or experience, was not properly qualified to be considered a co-inventor.

13. In March 2017, after three patents were issued to PSD based on its applications, I directed that WhiteWater file a lawsuit (Case 17-cv-00501) against Alleshouse, PSD, and Yeh to have the patents transferred to WhiteWater and corrected to remove Mr. Yeh's name as co-inventor.

14. From the time each of the above cases were filed, and continuing today, I have believed that each of them was valid and meritorious, and that WhiteWater or its subsidiaries should have prevailed in those cases. Until the Patent Trial and Appeal Board found the '016 Patent invalid, I believed that Surf Waves would win the litigation regarding that patent. Until the jury returned a verdict in the litigation over

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**DECLARATION OF GEOFFREY CHUTTER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

the '589 Patent, I believed that WhiteWater would win that litigation. Until the Federal Circuit reversed WhiteWater's trial win in the litigation over Mr. Alleshouse's contract, I believed that WhiteWater would win that litigation.

15. At the outset of each case, I believed that it would be moderate in cost and length. I did not expect the litigation to continue for over six years or to cost either party nearly as much as it ultimately did.

16. I directed the filing of each of the above cases only for the purpose of enforcing the contract and intellectual property rights of WhiteWater and its subsidiaries. I did not direct that any of them be filed for the purpose of harassing PSD, driving it out of business, or preventing it from lawfully competing with WhiteWater or other companies. WhiteWater has never had any policy of pursuing litigation for such purposes, or without regard to the merits of the case.

17. WhiteWater and Aquatic Development Group, Inc. ("ADG") are separate companies, with no common ownership or control. From 2011 until 2022, they were parties to a sublicense agreement under which ADG had the right to make FlowRiders and to sell them in the United States and eastern Canada; before that, each of them had a license agreement with Wave Loch.

18. I signed the WhiteWater-ADG sublicense agreement on behalf of WhiteWater. From the time I signed it, it has always been my understanding that it required both companies to make efforts to help protect intellectual property related to FlowRiders. But I have never understood it to require either company to pursue any intellectual property litigation, unless that party believes it has merit, is likely to succeed, and that the expected benefits outweigh the expected cost.

19. WhiteWater and ADG have never had any agreement that WhiteWater would pursue litigation against PSD or its founders that was frivolous or conducted for the purpose of harassing it, driving it out of business, or preventing it from lawfully competing with WhiteWater, ADG, or other companies. ADG and WhiteWater have never had any agreement for ADG to share in any damages that might be awarded to

5

1  WhiteWater in its litigation against PSD. Nor have WhiteWater and ADG ever had any
2  agreement to inform third parties about any litigation against PSD or its founders, nor
3  to make any false or defamatory statements about PSD.
4
5      I declare under penalty of perjury under the laws of the United States that the
6  foregoing in true and correct.
7      Executed on May 17, 2023.

*/s/ Geoff Chutter*

_____
Geoff Chutter

## TABLE OF CONTENTS

## DECLARATION OF GEOFFREY CHUTTER EXHIBIT

| Exhibit | Description | Page Number |
|---|---|---|
| 1A | Tolling Agreement Executed by Pacific Surf Designs, Yong Yeh, and Richard Alleshouse | 8 |
| 1B | Tolling Agreement Executed by Geoffrey Chutter of Surf Waves, LTD and Flowrider Surf, LTD | 13 |

# EXHIBIT 1A

**EXHIBIT 1A**
Page 008

# TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is entered into by and between Flowrider Surf, Ltd., a Canadian corporation, and Surf Waves Ltd, a company incorporated in the United Kingdom (collectively, the "Plaintiffs"), on the one hand and Pacific Surf Designs, Inc., a Delaware corporation, Richard Alleshouse, and Yong Yeh (collectively, the "Defendants") on the other, effective as of the 27th day of June 2014.

## Recitals

A.  On or about May 1, 2014, Surf Waves Ltd filed a complaint styled *Surf Waves Ltd v. Pacific Surf Designs, Inc., et al*, Case No. 3:14-cv-01108 BEN JMA in the United States District Court for the Southern District of California alleging that Defendants violated one (1) patent belonging or assigned to Surf Waves Ltd, and Flowrider Surf, Ltd. filed a complaint styled *Flowrider Surf, Ltd. v. Richard Alleshouse, et al*, Case No. 3:14-cv-01110 GPC BLM in the United States District Court for the Southern District of California alleging that Defendants violated certain contractual rights and one (1) patent belonging or assigned to Flowrider Surf, Ltd. (collectively, the "Actions").

B.  On June 9, 2014, the parties met to discuss a possible business relationship that potentially would resolve all of the issues raised in the Actions.

C.  The Parties believe that it is in their respective interests to toll any statutes of limitation for six (6) months as set forth below so they can attempt to resolve their disputes and continue with settlement discussions.

## Agreement

Now therefore, in consideration of the mutual promises contained in this Agreement, the Parties hereby agree as follows:

OC 287271340v2

**EXHIBIT 1A**
Page 009
CONFIDENTIAL                                                                                               FRSW0000161

1. Any and all statutes of limitation applicable to any claims, causes of action, rights, and actions that Plaintiffs may have against Defendants or Defendants may have against Plaintiffs shall remain tolled beginning June 27, 2014 through and including December 31, 2014.

2. The Parties agree to enter a joint stipulation to dismiss the Actions, without prejudice, reserving Plaintiffs' rights to refile similar actions and Defendants rights to file any actions or counterclaims in future actions that they may have.

3. Any defense that any Party may have, including those based on laches or related equitable doctrines shall not be based upon or supported in any way by the postponement or assertion of any claim, cause of action or defense during the tolling period.

4. This Agreement in no way constitutes an admission by any Party of any fault or liability, or lack thereof, on the part of any Party, in relation to any potential or existing lawsuit, claim, action, or matter.

5. This Agreement shall not revive, renew or reinstate any claim or limitation period that has expired prior to the effective date of this Agreement or affect any equitable defenses, including laches or related equitable doctrines, that are based on delay or inaction prior to the date of this Agreement.

6. This Agreement constitutes the complete understanding of the Parties with respect to the subject matter hereof, and may not be modified except by writing signed by each of the Parties.

7. This Agreement may be executed in multiple counterparts, each of which, when solely executed, shall be deemed an original, but all which counterparts together shall constitute one and the same instrument. A signature transmitted by facsimile shall constitute an original signature for all purposes.

8. This Agreement and the provisions contained herein shall be construed and enforced in accordance with, and governed by, the laws of the State of California applicable to agreements made and performed therein.

9. Each Party agrees to execute all documents and other agreements reasonably necessary to effectuate the terms of this Agreement.

10. The terms, conditions, covenants and agreements as set forth in this Agreement shall apply to and bind the heirs, executors, administrators, assigns and successors of the Parties.

11. The undersigned each acknowledge and represent that they have read this Agreement and have had the opportunity to consult with their respective attorneys concerning its contents and consequences and that the Agreement is being executed solely in reliance on their respective judgment, belief and knowledge of the matters set forth herein.

12. Each signatory on behalf of a Party to this Agreement by his or her signature represents, warrants and covenants that he has the power and authority to execute this Agreement behalf of that Party.

**SIGNATURES ON FOLLOWING PAGE**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

Dated: June ___, 2014        SURF WAVES LTD

                             By: _____
                             Its: _____

Dated: June ___, 2014        FLOWRIDER SURF, LTD.

                             By: _____
                             Its: _____

Dated: June 27, 2014         PACIFIC SURF DESIGNS, INC.

                             By: Yong Yeh
                             Its: CEO

Dated: June 27, 2014

                             Richard Alleshouse

Dated: June 27, 2014

                             Yong Yeh

OC 287271340v2

**EXHIBIT 1A**
Page 012
CONFIDENTIAL                                    FRSW0000164

# EXHIBIT 1B

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is entered into by and between Flowrider Surf, Ltd., a Canadian corporation, and Surf Waves Ltd, a company incorporated in the United Kingdom (collectively, the "Plaintiffs"), on the one hand and Pacific Surf Designs, Inc., a Delaware corporation, Richard Alleshouse, and Yong Yeh (collectively, the "Defendants") on the other, effective as of the 27th day of June 2014.

### Recitals

A.  On or about May 1, 2014, Surf Waves Ltd filed a complaint styled *Surf Waves Ltd v. Pacific Surf Designs, Inc., et al*, Case No. 3:14-cv-01108 BEN JMA in the United States District Court for the Southern District of California alleging that Defendants violated one (1) patent belonging or assigned to Surf Waves Ltd, and Flowrider Surf, Ltd. filed a complaint styled *Flowrider Surf, Ltd. v. Richard Alleshouse, et al*, Case No. 3:14-cv-01110 GPC BLM in the United States District Court for the Southern District of California alleging that Defendants violated certain contractual rights and one (1) patent belonging or assigned to Flowrider Surf, Ltd. (collectively, the "Actions").

B.  On June 9, 2014, the parties met to discuss a possible business relationship that potentially would resolve all of the issues raised in the Actions.

C.  The Parties believe that it is in their respective interests to toll any statutes of limitation for six (6) months as set forth below so they can attempt to resolve their disputes and continue with settlement discussions.

### Agreement

Now therefore, in consideration of the mutual promises contained in this Agreement, the Parties hereby agree as follows:

OC 287271340v2

CONFIDENTIAL                                                                 FRSW0000173

1.  Any and all statutes of limitation applicable to any claims, causes of action, rights, and actions that Plaintiffs may have against Defendants or Defendants may have against Plaintiffs shall remain tolled beginning June 27, 2014 through and including December 31, 2014.

2.  The Parties agree to enter a joint stipulation to dismiss the Actions, without prejudice, reserving Plaintiffs' rights to refile similar actions and Defendants rights to file any actions or counterclaims in future actions that they may have.

3.  Any defense that any Party may have, including those based on laches or related equitable doctrines shall not be based upon or supported in any way by the postponement or assertion of any claim, cause of action or defense during the tolling period.

4.  This Agreement in no way constitutes an admission by any Party of any fault or liability, or lack thereof, on the part of any Party, in relation to any potential or existing lawsuit, claim, action, or matter.

5.  This Agreement shall not revive, renew or reinstate any claim or limitation period that has expired prior to the effective date of this Agreement or affect any equitable defenses, including laches or related equitable doctrines, that are based on delay or inaction prior to the date of this Agreement.

6.  This Agreement constitutes the complete understanding of the Parties with respect to the subject matter hereof, and may not be modified except by writing signed by each of the Parties.

7.  This Agreement may be executed in multiple counterparts, each of which, when solely executed, shall be deemed an original, but all which counterparts together shall constitute one and the same instrument. A signature transmitted by facsimile shall constitute an original signature for all purposes.

OC 287271340v2

8. This Agreement and the provisions contained herein shall be construed and enforced in accordance with, and governed by, the laws of the State of California applicable to agreements made and performed therein.

9. Each Party agrees to execute all documents and other agreements reasonably necessary to effectuate the terms of this Agreement.

10. The terms, conditions, covenants and agreements as set forth in this Agreement shall apply to and bind the heirs, executors, administrators, assigns and successors of the Parties.

11. The undersigned each acknowledge and represent that they have read this Agreement and have had the opportunity to consult with their respective attorneys concerning its contents and consequences and that the Agreement is being executed solely in reliance on their respective judgment, belief and knowledge of the matters set forth herein.

12. Each signatory on behalf of a Party to this Agreement by his or her signature represents, warrants and covenants that he has the power and authority to execute this Agreement behalf of that Party.

**SIGNATURES ON FOLLOWING PAGE**

OC 287271340v2

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

Dated: June ___, 2014          SURF WAVES LTD
                               By: _G.P. CHUTTER_
                               Its: _____

Dated: June ___, 2014          FLOWRIDER SURF, LTD.
                               By: _G.P. CHUTTER_
                               Its: _____

Dated: June ___, 2014          PACIFIC SURF DESIGNS, INC.

                               By: _____
                               Its: _____

Dated: June ___, 2014

                               _____
                               Richard Alleshouse

Dated: June ___, 2014

                               _____
                               Yong Yeh