**Zelle LLP**
Jennifer Duncan Hackett (*pro hac vice*)
(Active: DC 477433; OR 180905; MD)
James R. Martin (SBN 173329)
1775 Pennsylvania Avenue, NW, Suite 375
Washington, D.C. 20006
Tel: (202) 899-4100
Fax: (612) 336-9100
jhackett@zellelaw.com
jmartin@zellelaw.com

**Zelle LLP**
Judith A. Zahid (SBN 215418)
James S. Dugan (SBN 325565)
555 12th Street, Suite 1230
Oakland, CA 94607
Tel: (415) 693-0700
jzahid@zellelaw.com
jdugan@zellelaw.com

**The Law Office Of Manuel de la Cerra**
Manuel de la Cerra (SBN 189313)
7040 Avenida Encinas, Suite 104-381
Carlsbad, CA 92011
Tel: (760) 809-2250
manny@delacerralaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pacific Surf Designs, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>WhiteWater West Industries, Ltd., et al.,<br><br>Defendants. | Case No. 3:20-cv-01464-BEN-DDL<br><br>Hon. Judge Roger T. Benitez<br><br>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF S. ILAN GUEDJ, PH.D.<br><br>Date:      June 12, 2023<br>Time:      10:30 a.m.<br>Courtroom: 5A |

# INTRODUCTION

In opposing Defendants' blunderbuss *Daubert* motions, Plaintiff Pacific Surf Designs, Inc. ("PSD") demonstrated that its expert on causation and damages, S. Ilan Guedj, Ph.D., was highly qualified and reliably used scientific methods to form his opinions on the fact and scope of harm caused by Defendants' unlawful conduct. As part of its *Daubert* opposition, PSD provided a declaration in which Dr. Guedj responded to certain criticisms that he did not sufficiently "vet" data regarding PSD's profits and losses on nine sheet-wave machine installations that were used as inputs in a mathematical technique that he used to estimate PSD's lost profits. In that declaration, Dr. Guedj wrote that he evaluated invoice-level records for PSD's profit-and-loss data to confirm that the higher-level data he used in his expert report were reliable and sufficient for their intended purpose.

Apparently recognizing that Dr. Guedj's declaration squarely rebuts Defendants' misplaced criticism of his opinion, Defendants now seek to strike Dr. Guedj's declaration as an "untimely expert report" and repeatedly refer to it as a "Reply Report." *See, e.g.*, Def. Mem. at 1, 6. A review of the declaration, however, confirms that it is nothing of the sort. It merely re-confirms that Dr. Guedj's methodology and damage models were appropriate, and the underlying data were reliable. Dr. Guedj's opinion that Defendants' unlawful conduct caused economic harm to PSD remains unchanged.[1] His opinions

---

[1] As explained in PSD's opposition to Defendants' *Daubert* motion, once the jury concludes that Defendants violated the Sherman Act, "a lesser level of proof is needed to support the amount of damages." *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir. 1986); *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379 (1927) ("It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate."). That is because (1) "the vagaries of the marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the absence of the defendant's antitrust violation," *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981), and (2) "it would be a perversion of fundamental principles of justice to deny all relief to the injured person." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). "Any other rule would enable

regarding "B2C" causation and damages remain unchanged. The only change that Dr. Guedj offered to make was to *reduce* his estimated damages for B2B losses – and in that case Dr. Guedj primarily did so by giving Defendants the benefit of the doubt for one project in which the customer has not yet fully paid the contract price (although Dr. Guedj concluded that it was reasonable to use the full contract prices for his purposes).

Contrary to Defendants' desperate assertions, district courts routinely permit experts to respond to criticisms so long as they do not abandon their prior methods or conclusions or try to assert new theories. Defendants' cases to the contrary either do not stand for what Defendants say they do, or they miss the mark because the experts in those cases were belatedly trying to advance new theories.

The Court should summarily reject Defendants' motion to strike Dr. Guedj's declaration.[2]

## DR. GUEDJ'S DECLARATION PROPERLY ADDRESSED MISPLACED CRITICISMS LODGED BY DEFENDANTS REGARDING HIS B2B DAMAGE ESTIMATES

### A. Dr. Guedj's Declaration Confirms that His Opinion on Damages Meets the *Daubert* Standards

In their *Daubert* motion, Defendants complained that Dr. Guedj did not sufficiently "vet" profitability data on nine sheet-wave projects and that "PSD has confirmed" that those data were inaccurate. Dkt. 128-01 at 13-17. PSD explained in its opposition that Dr. Guedj did, in fact, "vet" the data and applied accepted statistical methods to estimate PSD's lost profits in the "but-for" world.[3] Dkt. 141-00 at 6, 31-34. PSD explained that

---

the wrongdoer to profit by his wrongdoing at the expense of his victim." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946).

[2] In their motion, Defendants seek permission to file a "supplemental report" from its expert to respond to Dr. Guedj's declaration. PSD contacted Defendants with an offer to stipulate that Defendants may file such a report. Defendants declined.

[3] To be specific, Dr. Guedj used the data to perform a "Monte Carlo" simulation to estimate an associated profit for each project that PSD was projected to install in the but-for world

Defendants could raise their complaints at trial through cross-examination and testimony from their own witnesses, but that they came nowhere close to meeting the standard required to exclude Dr. Guedj from testifying. *Id.*

Nevertheless, in light of Defendants' criticisms, Dr. Guedj undertook the task of analyzing invoice-level detail "to confirm the reliability of the data used in [his] damages estimation." Guedj Decl. ¶ 3. Dr. Guedj confirmed that (1) the purchase contract prices of each of PSD's nine projects were the same as the revenue numbers that he used to form his opinion, (2) WhiteWater's own damages expert in a prior litigation relied on testimony from PSD, including the same revenue figures that Dr. Guedj used for three out of the four PSD projects he used in forming his opinions, and (3) PSD's revenues and costs were reasonable and generally consistent with industry competitor figures, including WhiteWater's profit margins. *Id.* ¶¶ 4-6.

Dr. Guedj then delved deeper into the data underlying each of the nine sheet-wave installations used in his report to estimate PSD's average profitability. Through that process, he (1) confirmed that the data for six installations were clearly accurate, (2) found small discrepancies ($23,000 and $5,000, respectively) in two installations, and (3) learned that the customer for one project had paid only $591,000 of the full contract price of nearly $1.1 million. *Id.* ¶¶ 7-10. Dr. Guedj found that the contract price reflected what PSD could reasonably have attained in a but-for world because the customer agreed to those terms, but nevertheless adjusted his prior estimate for that project downward to reflect only the amount actually paid, which resulted in a restated profit of $349,000 versus

---

and/or the future actual world. Guedj Rep. ¶ 44. The Monte Carlo simulation is a widely used technique that employs repeated iterations of a model to determine the range or distribution of outcomes when only the probabilities of underlying factors or events are known or have been estimated. Monte Carlo simulations have been widely used in solving practical problems in mathematics, statistics, physics, engineering, biology, business, and finance. *Id.* ¶ 2, n.34. For this exercise, the Monte Carlo simulation randomly drew one realized financial outcome (i.e., profit amount) from the observed set of PSD's actual sales, each with equal probability, and repeated that process 10,000 times for each assumed market share. *Id.* ¶ 44, n. 46; Guedj Dep. 105:10-106:13.

$857,000. *Id.* ¶ 9. Dr. Guedj recalculated his damage estimates by plugging these three new numbers into the same model he used in his report. *Id.* ¶ 10. He made no other adjustments.[4] Using the same methodology that he used in his report, Dr. Guedj reported that the recalculated damages are slightly lower than the ones he estimated in his report. *Id.* ¶ 11.

### B. Dr. Guedj's Declaration Merely Responds to Defendants' Unwarranted Criticisms of his Report

As shown above, Dr. Guedj's opinion that Defendants' unlawful conduct caused harm to PSD is unchanged. His opinions regarding B2C damages are unchanged. The only "change" is that Dr. Guedj would slightly decrease damages for harm caused to PSD's B2B business. Defendants' argument that "the Guedj Reply Report is a completely new report, containing new damages modeling . . . ," Def. Mem. at 4, therefore is simply wrong and the motion should be denied on that basis alone. Indeed, even if Dr. Guedj had not submitted the declaration, he could have testified to those facts on cross-examination if Defendants asked questions about the inputs he used for the Monte Carlo simulation. *See, e.g., United States v. Butterfly*, 72 F.3d 136 (9th Cir. 1995) ("This testimony became appropriate once the defense 'opened the door.'"); *United States v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) (defense opened door to doctor's expert testimony when it tried to demonstrate on cross-examination that victim had "fooled" doctor).

### C. Dr. Guedj's Declaration is Well Within the Limits of Acceptable Rebuttal

As shown, Dr. Guedj's declaration on B2B damages deals with a narrow issue relating to the amount of damages (not whether PSD suffered any damages). Defendants nevertheless argue that the Court must automatically strike the declaration because it was filed after the deadline for his opening report. Def. Mem. 2-3. That is not the law, and it makes no sense, particularly in the context of the accelerated trial schedule in this case

---

[4] Dr. Guedj also updated the accrued interest and discount rate to the date of his declaration, which is simply a mathematical exercise and not contested by Defendants.

(which provided less than two months for *Daubert* and summary judgment motions[5] and required oppositions within two weeks of those motions).

On the law, it is well accepted that district courts may consider declarations from experts that respond to criticisms from the opposing party, so long as the experts do not abandon prior methodologies. *See Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 592 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) (allowing supplemental report where, as here, the expert did not "abandon his prior methods or conclusions" but simply conducted "additional analyses to refute Defendants' arguments" and show that his original conclusions were sound); *Am. Diabetes Ass'n v. Friskney Fam. Tr., LLC*, No. CV 13-3720, 2015 WL 12826476, at *2 (E.D. Pa. July 21, 2015) (allowing an expert's reply report which, "as opposed to presenting new opinions . . . provides further explanation in support of his prior opinions").

Defendants cite several cases that are off point. In *Luke v. Family Care and Urgent Med. Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009), the expert's declaration "presented a new theory as to a key element of Plaintiffs' medical negligence claim." *Id.* at 499-500. Here, by contrast, Dr. Guedj used the same theory, the same methodology, and the same model as he did in his report. Unlike here, the expert in *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-cv-00705, 2011 WL 4375297, at *2 (E.D. Cal. Sept. 19, 2011) was not qualified, did not review prior deposition testimony, used an inherently flawed methodology, and merely "tallied various data as requested by attorneys" and committed other serious errors. *Id.* at *3-5. And the question in *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10 C 204, 2013 WL 3147349, at *3-4 (N.D. Ill. June 19, 2013) was whether the reply report advanced new arguments for the first time. *Id.* In an excerpt that Defendants ignore, the district court held that the expert's consideration of alternative numbers and certain additional cost data

---

[5] Defendants failed to note that they chose to file self-serving declarations from their own witnesses, which contradicted prior sworn testimony, along with their motions for summary judgment. PSD will deal with those witnesses at trial. Defendants should plan to do the same with Dr. Guedj.

was responsive to the opposing party's criticisms and therefore proper. *Id.* at *2-3. The district court struck only the portion of the reply report that presented a new and "deeply flawed approach" to calculating damages. *Id.* at *3.

Finally, Defendants cite *Lightfoot v. Georgia-Pac. Wood Prod., LLC*, No. 7:16-CV-244-FL, 2018 WL 4517616, at *6 (E.D.N.C. Sept. 20, 2018), order amended on reconsideration, No. 7:16-CV-244-FL, 2018 WL 6729636 (E.D.N.C. Dec. 21, 2018) for the proposition that "the court granted defendants' motion to strike four expert declarations that were submitted in response to defendants' *Daubert* motions." Def. Mem. 10. That is the ***opposite*** of what that decision says. The district court, in fact, found that striking the expert declarations would "undermine full and fair determination of the merits of the issues presented by this case" and, therefore, "exclusion of the expert declarations is ***not warranted***."[6]  *Lightfoot* at *8, 9 (emphasis added).

Unlike those cases, Dr. Guedj's declaration does not advance a new theory or methodology. To the contrary, it confirms the reliability of his methodology and offers to make three mathematical adjustments using the same theory and methodology that would lower damages.

### D. Even If (Incorrectly) Viewed as a Supplemental Report, Dr. Guedj's Declaration is "Harmless"

At best, Defendants are (incorrectly) complaining that Dr. Guedj is correcting an "inaccuracy" in the form of reduced damage estimates. That is expressly permitted by Rule 26(e). As Dr. Guedj explained, however, he does not view the estimates in his report as wrong. Instead, he confirmed that his estimates were reasonable for their intended purpose, but that he could make small changes to the numbers without materially affecting

---

[6] Defendants also cite *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225 (S.D. Fla. June 2, 2016). Def. Mem. at 10-11. But, as with the other cases they cite, that decision is inapposite because, *inter alia*, the expert was already given a chance to file a reply report and failed to offer his opinions in that report. Here, Dr. Guedj had no such opportunity.

his opinion. In any event, even if one assumed *arguendo* that Dr. Guedj was seeking to correct a material inaccuracy (which he is not), the declaration would still be "harmless" to Defendants under Fed. R. Civ. Proc. 37(c).

For example, the district court in *Andrews v. Plains All American Pipeline, L.P.*, No. CV 15-4113 PSG (JEMx), 2019 WL 6647928, at *4 (C.D. Cal., Nov. 22, 2019) distinguished *Luke*, cited by Defendants, in allowing the plaintiff to correct an arithmetic error "rather than new or contradictory opinions that introduce new methodologies altogether." *Id.* That same analysis should apply here. Dr. Guedj's declaration does not introduce a new methodology.

District courts consider four factors to determine whether Rule 37(c) should be used to strike an expert declaration: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *W. Towboat Co. v. Vigor Marine, LLC*, No. C20-0416-RSM, 2021 WL 2156694, at *1 (W.D. Wash. May 27, 2021) (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)).

None of those factors weighs in favor of Defendants. There is no prejudice because Dr. Guedj applied the same methodology, did not change his opinion on causation, confirmed that his damage estimates were reliable even after evaluating invoice-level detail, and all the data were supplied to Defendants. PSD informed Defendants in May that it would not oppose a supplemental declaration from their expert to respond (only) to Dr. Guedj's declaration. Defendants refused that offer. Dr. Guedj's declaration will not disrupt trial, which is still more than two months away and there is plainly no bad faith involved since Dr. Guedj was responding to arguments raised in Defendants' *Daubert* motion.

The law is well established that "cases should be decided on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). That is

particularly true in antitrust cases where, as here, the plaintiff acts as a private attorney general to supplement the scarce resources of government regulators. *See, Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979), ("Congress created the treble-damages remedy of § 4 precisely for the purpose of encouraging private challenges to antitrust violations. These private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations."); *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 4 (1958) ("The Sherman Act was designed to be a comprehensive charter of economic liberty aimed at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress, while at the same time providing an environment conductive to the preservation of our democratic political and social institutions.").

## CONCLUSION

For the reasons set forth above, Defendants' motion to strike the Guedj Declaration should be denied.

Respectfully submitted,

DATED: June 7, 2023   ZELLE LLP

By:   */s/ Jennifer Duncan Hackett*
Jennifer Duncan Hackett

*Attorneys for Plaintiff*