# **<u>Exhibit 10</u>**

**Zelle LLP**
Jennifer Duncan Hackett (*pro hac vice*)
(Active: DC 477433; OR 180905; MD)
James R. Martin (SBN 173329)
1775 Pennsylvania Avenue, NW, Suite 375
Washington, D.C. 20006
Tel: (202) 899-4100
Fax: (612) 336-9100
jhackett@zellelaw.com
jmartin@zellelaw.com

**Zelle LLP**
Judith A. Zahid (SBN 215418)
James S. Dugan (SBN 325565)
555 12th Street, Suite 1230
Oakland, CA 94607
Tel: (415) 693-0700
jzahid@zellelaw.com
jdugan@zellelaw.com

**The Law Office Of Manuel de la Cerra**
Manuel de la Cerra (SBN 189313)
7040 Avenida Encinas, Suite 104-381
Carlsbad, CA  92011
Tel: (760) 809-2250
manny@delacerralaw.com

*Attorneys for Plaintiff*

**Buchalter PC**
Joshua M. Robbins (SBN 270553)
Roger L. Scott (SBN 247165)
Adam M. Sechooler (SBN 293860)
Alexandria C. Montes (SBN 309207)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
949.760.1121

**Crowell & Moring LLP**
Daniel A. Sasse (SBN 236234)
Chahira Solh (SBN 248985)
3 Park Plaza, 20th Floor
Irvine, CA 92614-8505
949.263.8400

*Attorneys for Defendants*

IRACTIVE-11766635.6

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pacific Surf Designs, Inc.,<br><br>                                    Plaintiff,<br><br>     v.<br><br>WhiteWater West Industries, Ltd., et al.,<br><br>                                    Defendants. | Case No. 3:20-cv-01464-BEN-DDL<br><br>Hon. Judge Roger T. Benitez<br><br>**[PROPOSED] JURY INSTRUCTIONS** |

IRACTIVE-11766635.6

# Contents

1.   INTRODUCTION...............................................................1

2.   THE PARTIES/OVERVIEW .................................................2

3.   CONDUCT OF THE JURY ...................................................3

4.   PUBLICITY DURING TRIAL...............................................5

5.   TAKING NOTES ................................................................6

6.   BENCH CONFERENCES AND RECESSES....................................7

7.   OUTLINE OF TRIAL............................................................8

8.   THE PARTIES' CONTENTIONS ...........................................9

9.   CORPORATIONS ...............................................................10

10.  BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE11

11.  EVIDENCE DEFINED.........................................................13

12.  PSD'S PROPOSED INSTRUCTION: CONSIDERATION OF EVIDENCE (DISPUTED)...................................................15

13.  DIRECT AND CIRCUMSTANTIAL EVIDENCE ...........................16

14.  CREDIBILITY OF WITNESSES............................................17

15.  PSD'S PROPOSED INSTRUCTION: NUMBER OF WITNESSES (DISPUTED)..................................................................19

16.  DEPOSITION TESTIMONY .................................................20

17.  ANTITRUST LAWS AND PSD'S CLAIMS .................................21

18.  PSD'S PROPOSED INSTRUCTION (DISPUTED)  ELEMENTS...22

18.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) ELEMENTS ...................................................................23

19.  PSD'S PROPOSED INSTRUCTION (DISPUTED) MONOPOLY POWER DEFINED.............................................................24

19.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) MONOPOLY POWER DEFINED ....................................................25

20.  RELEVANT MARKET—GENERAL (UNDISPUTED) .................26

21.  PSD'S PROPOSED INSTRUCTION (DISPUTED) RELEVANT PRODUCT MARKET ........................................................................27

21.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RELEVANT PRODUCT MARKET ....................................................29

22.  RELEVANT PRODUCT MARKET—SUPPLY SUBSTITUTABILITY (UNDISPUTED) .............................................................................31

23.  PSD'S PROPOSED INSTRUCTION (DISPUTED) RELEVANT GEOGRAPHIC MARKET ................................................................33

23.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RELEVANT GEOGRAPHIC MARKET ............................................34

24.  PSD'S PROPOSED INSTRUCTION (DISPUTED)  EXISTENCE OF MONOPOLY POWER (INDIRECT PROOF)....................................36

24.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) EXISTENCE OF MONOPOLY POWER (INDIRECT PROOF)......40

25.  PSD'S PROPOSED INSTRUCTION (DISPUTED) EXISTENCE OF MONOPOLY POWER (DIRECT PROOF) ........................................44

25.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) EXISTENCE OF MONOPOLY POWER (DIRECT PROOF) ..........46

26.  PSD'S PROPOSED INSTRUCTION (DISPUTED) WILLFUL MAINTENANCE OF MONOPOLY POWER..................................48

26.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) WILLFUL (~~ACQUISITION OR~~) MAINTENANCE OF MONOPOLY POWER ...........................................................................................51

27.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) PROOF OF COMPETITIVE HARM ................................................................54

28.  PSD'S PROPOSED INSTRUCTION (DISPUTED) EVALUATE THE EVIDENCE AS A WHOLE ...............................................................57

28.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) EVALUATE THE EVIDENCE AS A WHOLE ...............................58

29.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) NOERR-PENNINGTON IMMUNITY AND SHAM LITIGATION ...............59

30.  DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) SHAM LITIGATION—OBJECTIVELY BASELESS...................................62

31.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) SHAM
       LITIGATION—PRIMARY OBJECTIVE ..........................................65

32.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)
       JUDICIAL NOTICE ......................................................................69

33.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)
       DISPARAGEMENT ......................................................................70

34.    PSD'S PROPOSED INSTRUCTION (DISPUTED) PATENTS.......71

34.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)
       PATENTS / BREACH OF CONTRACT ..........................................73

35.    PSD'S PROPOSED INSTRUCTION (DISPUTED) ELEMENTS OF
       AN ATTEMPT TO MONOPOLIZE CLAIM ....................................74

35.    DEFENDANT'S PROPOSED INSTRUCTION (DISPUTED)
       ELEMENTS OF AN ATTEMPT TO MONOPOLIZE CLAIM ........75

36.    PSD'S PROPOSED INSTRUCTION (DISPUTED)
       ANTICOMPETITIVE CONDUCT ....................................................76

36.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)
       ANTICOMPETITIVE CONDUCT ....................................................77

37.    SPECIFIC INTENT TO ACHIEVE MONOPOLY POWER ............78

38.    DANGEROUS PROBABILITY OF SUCCESS ...............................80

39.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) SHAM
       LITIGATION ................................................................................81

40.    INTRODUCTION..........................................................................82

41.    PSD'S PROPOSED INSTRUCTION (DISPUTED) AGREEMENT:
       DEFINITION, EXISTENCE, AND EVIDENCE...............................83

41.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)
       AGREEMENT: DEFINITION, EXISTENCE, AND EVIDENCE....85

42.    PSD'S PROPOSED INSTRUCTION (DISPUTED) RULE OF
       REASON OVERVIEW....................................................................88

42.    DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RULE OF
       REASON OVERVIEW....................................................................89

43.    PSD'S PROPOSED INSTRUCTION RULE OF REASON
       (DISPUTED) – PROOF OF COMPETITIVE HARM......................90

43. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) – PROOF OF COMPETITIVE HARM ................................................................92

44. PSD'S PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON EVIDENCE OF COMPETITIVE BENEFITS ..................95

44. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON – EVIDENCE OF COMPETITIVE BENEFITS ...............96

45. PSD'S PROPOSED INSTRUCTION (PSD) RULE OF REASON – BALANCING THE COMPETITIVE BENEFITS .............................97

45. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON – BALANCING THE COMPETITIVE BENEFITS .........98

46. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED): SECTION 1 SHAM LITIGATION ....................................................99

47. PSD'S PROPOSED INSTRUCTION (DISPUTED) GENERALLY100

47. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) INJURY AND CAUSATION .........................................................102

48. DEFINITION OF BUSINESS OR PROPERTY ..............................104

49. ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE .105

50. BASIS FOR CALCULATING DAMAGES ....................................106

51. PSD'S PROPOSED INSTRUCTION (DISPUTED) CAUSATION AND DISAGGREGATION .........................................................107

51. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) CAUSATION AND DISAGGREGATION .....................................109

52. PSD'S PROPOSED INSTRUCTION (DISPUTED) DAMAGES FOR COMPETITORS – LOST PROFITS .................................111

52. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) DAMAGES FOR COMPETITORS – LOST PROFITS ..................112

53. PSD'S PROPOSED INSTRUCTION (DISPUTED) DAMAGES FOR COMPETITORS – FUTURE LOST PROFITS ...............113

53. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) DAMAGES FOR COMPETITORS – FUTURE LOST PROFITS..115

54. PSD'S PROPOSED INSTRUCTION (DISPUTED) PREPAREDNESS TO ENTER BUSINESS.................................................117

54.   DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) PREPAREDNESS TO ENTER BUSINESS ......................................118

55.   PSD'S PROPOSED INSTRUCTION (DISPUTED)  NOERR-PENNINGTON .................................................................................119

55.   DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)  NOERR-PENNINGTON .................................................................................120

56.   DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) UNCLEAN HANDS ........................................................................121

57.   ATTORNEY-CLIENT PRIVILEGE ................................................122

58.   IMPEACHMENT EVIDENCE.........................................................123

59.   EXPERT WITNESSES....................................................................124

60.   CHARTS AND SUMMARIES..........................................................125

61.   COMMUNICATION WITH THE COURT ....................................126

62.   READBACK OR PLAYBACK.........................................................127

63.   DELIBERATION AND VERDICT .................................................128

64.   UNANIMOUS VERDICT ................................................................129

65.   DUTY TO DELIBERATE................................................................130

66.   COURT HAS NO OPINION ...........................................................132

**PRELIMINARY INSTRUCTIONS**

**1.  INTRODUCTION**

Members of the jury, you are now the jury in this case. It is my duty to instruct you on the law. These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.[1]

---

[1] Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., 2023 update) ("9th Cir. Instructions") 1.2.

## 2.  THE PARTIES/OVERVIEW

I will now review for you the parties in this action.  This case concerns a dispute about a product called a sheet wave machine, which is a surfing-style amusement ride found in waterparks, municipal parks, resorts, cruise ships, and other entertainment venues.  The machine creates a thin sheet of water that people can ride on specialized boards to mimic a surfing experience.

The plaintiff in this case, Pacific Surf Designs, or PSD, is a company that designs and manufactures sheet wave machines.  The defendants are WhiteWater West Industries, Ltd., which I will refer to as WhiteWater, and Aquatic Development Group, which I will refer to as ADG.  WhiteWater is a company that produces sheet wave machines and other water park attractions.  ADG runs a water park design and contracting business and also produces water park attractions.  From 2011 until last year, ADG had a license agreement with WhiteWater to manufacture and sell sheet wave machines in the United States and part of Canada.[2]

---

[2] Customized instruction agreed upon by the parties.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

### 3.  CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make

any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.[3]

---

[3] 9th Circuit Instructions 1.15

1

## 4.  PUBLICITY DURING TRIAL

2

3          If there is any news media account or commentary about the case or anything to do

4    with it, you must ignore it. You must not read, watch or listen to any news media account

5    or commentary about the case or anything to do with it. The case must be decided by you

6    solely and exclusively on the evidence that will be received in the case and on my

7    instructions as to the law that applies. If any juror is exposed to any outside information,

8    please notify me immediately.[4]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
_____
[4] 9th Circuit Instructions 1.16

28

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 5.  TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom, during trial, or in the jury room during deliberations. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.[5]

---

[5] 9th Circuit Instructions 1.18.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 6.  BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.[6]

---

[6] 9th Circuit Instructions 1.20

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

# 7.  OUTLINE OF TRIAL

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.[7]

---

[7] 9th Circuit Instructions 1.21

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 8.  THE PARTIES' CONTENTIONS

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

PSD alleges that from 2013 to 2020, WhiteWater had monopoly power in the market for sheet wave machines throughout the world except for China. PSD contends that WhiteWater maintained that monopoly power through anticompetitive conduct that was specifically designed to excluded PSD as a strong competitor in the relevant market in violation of Section 2 of the Sherman Act. PSD asserts that as a result of WhiteWater's anticompetitive conduct, PSD suffered economic losses in the form of lost sheet-wave machine sales and lost profits into the future. PSD further alleges that WhiteWater and ADG agreed to restrain trade and foreclose competition in the relevant market in violation of Section 1 of the Sherman Act. PSD has the burden of proving these claims.

Defendants respond that WhiteWater did not have monopoly power in the worldwide market, that it did not engage in any anticompetitive conduct of any kind, and that PSD did not lose sales or profits because of anything WhiteWater did. Defendants also contend that WhiteWater and ADG had no improper agreement of any kind. Defendants further allege, as an affirmative defense, that PSD engaged in improper conduct by making certain statements about them. Defendants have the burden of proof on that affirmative defense.[8]

---

[8] Customized instruction agreed upon by the parties.

## 9.  CORPORATIONS

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.[9]

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.[10]

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of duties the agent would have (judging from his position with the company), the responsibilities previously entrusted to him or his office, and the circumstances surrounding his past conduct.

To summarize, in order for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his employment or his apparent authority.

---

[9] 9th Cir. Instructions 4.1

[10] 9th Cir. Instructions 4.2

## 10. BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.[11]

---

[11] 9th Circuit Instruction 1.6

**DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)**

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.[12]

---

[12] Ninth Circuit Model Instruction 1.7

## 11. EVIDENCE DEFINED

The evidence you are to consider in deciding what the facts are consists of: (1) the sworn testimony of any witness; (2) the exhibits that are admitted into evidence; (3) any facts to which the lawyers have agreed; and (4) any facts that I may have instructed you to accept as proved. [13]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may see or her when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.[14]

---

[13] 9th Circuit Instruction 1.9

[14] 9th Circuit Instruction 1.10

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.[15]

Some evidence the parties offer into evidence may be partially redacted, which means some of the document may be blacked or white out and stamped redacted. Redactions are necessary for a variety of reasons, such as protecting personal information of individuals or communications between attorneys and their clients. You may give the unredacted materials whatever weight you choose, and you are not to consider any characterization of the fact or existence of a redaction in any document, including by counsel.[16]

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

 Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.[17]

---

[15] 9th Circuit Instruction 1.11

[16] Proposed Jury Instructions: Proposed Joint Instruction Regarding Redacted Materials, filed by Oracle International Corporation, Oracle USA Inc., Siebel Systems, Inc., SAP AG, SAP America Inc., Tomorrownow Inc. (Alinder, Zachary) (Filed on 11/10/2010) Modified on 11/12/2010 (jlm, COURT STAFF).

[17] 9th Circuit Instruction 1.13

## 12. PSD'S PROPOSED INSTRUCTION: CONSIDERATION OF EVIDENCE

## (DISPUTED)

When considering evidence, you should use your common sense. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.[18]

---

[18] Manual of Model Civil Jury Instructions for the District Courts of the Third Circuit (2017 ed., 2020 update) 1.5.

## 13. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.[19]

---

[19] 9th Circuit Instruction 1.12

# 14. CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.[20]

---

[20] 9th Circuit Instruction 1.14

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

**15. PSD'S PROPOSED INSTRUCTION: NUMBER OF WITNESSES**

**(DISPUTED)**

The number of witnesses who testify should not determine how you decide today's case. What is more important is how believable the witnesses were and how much weight you think their testimony deserves.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 16. DEPOSITION TESTIMONY

During the trial, certain testimony will be presented to you through depositions that were read into evidence or played electronically.

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.[21]

---

[21] 9th Circuit Instruction 2.4

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINAL INSTRUCTIONS**

**17. ANTITRUST LAWS AND PSD'S CLAIMS**

The purpose of the antitrust laws is to preserve free and unfettered competition in the marketplace. The antitrust laws protect competition, not individual competitors, and rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.[22]

---

[22] ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.) ("ABA Model Instructions"), Sherman Act – General, Instruction 1.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

# SECTION 2: MONOPOLIZATION

## 18. PSD'S PROPOSED INSTRUCTION (DISPUTED)

## ELEMENTS

PSD alleges that it was injured by WhiteWater's unlawful monopolization of market for sheet wave machines worldwide, other than China. To prevail on this claim, PSD must prove each of the following elements by a preponderance of the evidence:

First, that the alleged market is a valid relevant market;

Second, that WhiteWater possessed monopoly power in that market;

Third, that WhiteWater "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct; and

Fourth, that PSD was injured in its business or property because of WhiteWater's anticompetitive conduct.

 If you find that PSD has failed to prove any of these elements, then you must find for WhiteWater and against PSD on this claim. If you find that PSD has proven each of these elements by a preponderance of the evidence, then you must find for PSD and against WhiteWater on this claim.  I will now explain each of these elements to you.[23]

---

[23] ABA Model Instructions, Chapter 3.A.1., *Instruction 1: Elements*.

# SECTION 2: MONOPOLIZATION

## 18. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)[24]

### ELEMENTS

PSD (~~Plaintiff~~) alleges that it was injured by defendant's unlawful monopolization of the underline worldwide market for sheet wave machines ([~~describe relevant market at issue~~]). To prevail on this claim, plaintiff must prove each of the following elements by a preponderance of the evidence:

(1)  the alleged market is a valid antitrust market;

(2)  Whitewater (~~defendant~~) possessed monopoly power in that market from 2013-2020;

(3)  Whitewater (~~defendant~~) willfully acquired or maintained monopoly power in that market by engaging in anticompetitive conduct;

(4)  (~~defendant's conduct occurred in or affected interstate [or foreign] commerce; and~~)

(~~5~~)) PSD (~~plaintiff~~) was injured in its business or property because of Whitewater's (~~defendant's~~) anticompetitive conduct.

If you find that plaintiff has failed to prove any of these elements, then you must find for Whitewater (~~defendant~~) and against PSD (~~Plaintiff~~) on this claim. If you find that PSD (~~Plaintiff~~) has proved each of these elements by a preponderance of the evidence, then you must find for PSD (~~Plaintiff~~) and against Whitewater (~~defendant~~) on this claim.[25]

---

[24] In accordance with Local Rule 51.1(d), Defendants have indicated all modifications of pattern instructions they are proposing.

[25] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.A, Instruction 1: Elements (2016 Edition).

# SECTION 2: MONOPOLIZATION

## 19. PSD'S PROPOSED INSTRUCTION (DISPUTED) MONOPOLY POWER DEFINED

To prove its monopolization claim, PSD must prove by that WhiteWater has monopoly power in a relevant antitrust market.  Monopoly power is the power to control prices, restrict output, or exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.  However, possession of monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether PSD has met its burden of proving monopoly power in a relevant market.[26]

---

[26] ABA Model Instructions, Chapter 3.A.2, *Instruction 2: Monopoly Power Defined*; : *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1202 (9th Cir. 1997) ("Monopoly power is 'the power to control prices **or** exclude competition.'") (*quoting United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966) (emphasis added); *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 389, (1956) ("Our cases determine that a party has monopoly power if it has, over 'any part of the trade or commerce among the several states', a power of controlling prices or unreasonably restricting competition."); *Syufy Enterprises v. Am. Multicinema, Inc.*, 793 F.2d 990, 993 (9th Cir. 1986) ("Monopoly power—the first element of monopolization—is the power to control prices or exclude competition.").

## SECTION 2: MONOPOLIZATION

## 19. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) MONOPOLY POWER DEFINED

To prove its monopolization claim, PSD (Plaintiff) must prove that Whitewater (defendant) has monopoly power in a relevant antitrust market. Monopoly power is the power to control prices, restrict output, and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time. However, possession of monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether PSD (Plaintiff) has met its burden of proving monopoly power in a relevant market.[27]

---

[27] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.A, Instruction 2: Monopoly Power Defined (2016 Edition).

# SECTION 2: MONOPOLIZATION

## 20. RELEVANT MARKET—GENERAL (UNDISPUTED)

PSD must prove by a preponderance of the evidence that WhiteWater had monopoly power in a relevant market.  Defining the relevant market is essential because you are required to make a judgment about whether defendant has monopoly power in a properly defined economic market. To make this judgment, you must be able to determine what, if any, economic forces restrain WhiteWater's freedom to set prices for or to restrict the production level of sheet wave machines.

The most likely and most important restraining force will be actual and potential competition from other firms and their products. This includes all firms and products that act or likely could act as restraints on WhiteWater's ability to set prices as it pleases because customers could switch to those other firms and products if WhiteWater sets its own prices too high.  All the firms and products that exert such restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether PSD has met its burden to prove the relevant market by a preponderance of the evidence. The first is the relevant product market. The second is the relevant geographic market.[28]

---

[28] ABA Model Instructions, Chapter 3.A.3., *Instruction 3: Relevant Market—General.*

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

# SECTION 2: MONOPOLIZATION

## 21. PSD'S PROPOSED INSTRUCTION (DISPUTED) RELEVANT PRODUCT MARKET

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material— such as aluminum foil, cellophane, or even plastic containers— to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable. In other words, will customers accept the price increase, or will so many customers switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant and non-transitory increase in price is approximately a five percent increase in price not due to cost factors. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;
- the relationship between the price of one product and sales of another;
- the presence or absence of specialized vendors;
- the perceptions of either industry or the public as to whether the products are in separate markets;
- the views of PSD and WhiteWater regarding who their respective competitors are;
- and the existence or absence of different customer groups or distribution channels.

In this case, PSD contends that the relevant product market is sheet wave machines using sheet wave technology.  By contrast, WhiteWater contends that PSD has failed to allege the proper relevant product market. If you find that PSD has proven a relevant product market, then you should continue to evaluate the remainder of PSD's claim. However, if you find that PSD has failed to prove such a market, then you must find in WhiteWater's favor on this claim.[29]

---

[29] ABA Model Instructions, Chapter 3.A.4., *Instruction 4: Relevant Product Market*.

# SECTION 2: MONOPOLIZATION

## 21. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RELEVANT PRODUCT MARKET

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material--such as aluminum foil, cellophane, or even plastic containers--to be reasonable alternatives, then all those products may be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product such that the price increase would not be profitable. In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? (~~Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors~~ [*but you may conclude in this case that some other percentage is more applicable to the product at issue*].) If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- consumers' views on whether the products are interchangeable;

- the relationship between the price of one product and sales of another;

- the presence or absence of specialized vendors;

- the perceptions of either industry or the public as to whether the products are in separate markets;

- the views of PSD (plaintiff) and WhiteWater (defendant) regarding who their respective competitors are; and

- the existence or absence of different customer groups or distribution channels.

In this case, PSD (plaintiff) contends that the relevant product market is sheet wave machines ([*state plaintiff's contention*]). By contrast, WhiteWater (defendant) contends that PSD (plaintiff) has failed to allege the proper relevant product market. WhiteWater(defendant) contends that the relevant product market may include deep water wave machines([*state defendant's contention, if any, about the scope of the relevant product market and/or plaintiff's evidence*]). If you find that PSD(plaintiff) has proven a relevant product market, then you should continue to evaluate the remainder of PSD(plaintiff)'s claim. However, if you find that PSD(plaintiff) has failed to prove such a market, then you must find in WhiteWater(defendant)'s favor on this claim.[30]

---

[30] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.A, Instruction 4: Relevant Product Market (2016 Edition).

## SECTION 2: MONOPOLIZATION

## 22. RELEVANT PRODUCT MARKET—SUPPLY SUBSTITUTABILITY

### (UNDISPUTED)

In deciding whether PSD has proven a relevant product market, you may also consider what the law refers to as "the cross-elasticity of supply" or, in other words, the extent to which the producers of one product would be willing to shift their resources, such as intellectual property, manufacturing facilities, or personnel to producing another product in response to an increase in the price of the other product. Such producers, to the extent that they exist, can increase supply and, therefore, drive prices back to competitive levels, defeating any effort by a would-be monopolist to charge significantly higher prices.

Take two shoe manufacturers, for example. The first manufacturer produces shoes for women, while the second manufacturer produces shoes for men. Generally speaking, men's and women's shoes are not reasonably interchangeable and, therefore, might be thought of as being in a separate product markets. However, it is possible that the men's shoe manufacturer could quickly shift its resources to start producing women's shoes if the women's shoe manufacturer raised its prices significantly and vice versa. Although women would not buy men's shoes, nor would men buy women's shoes, the ability of each manufacturer to alter its production could prevent the other manufacturer from raising prices significantly. Thus, in this example, men's and women's shoes would be included in the same market.

If, in determining the products in the relevant product market you find that there are manufacturers that have the ability to alter their production to manufacture products that can reasonably be substituted with WhiteWater's--even though they do not presently compete with WhiteWater--you may consider whether the existence of these potential alternative suppliers can influence the prices that WhiteWater charges for its product and, if so, that amount of the product that these suppliers are likely to produce. However, if you find that there are no others who would switch production to products that would compete

1   with WhiteWater's, you may define the market solely on your evaluation of whether the

2   existing allegedly competing products are reasonable substitutes for each other.[31]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   [31] ABA Model Instructions, Chapter 3.A.5., *Instruction 5: Relevant Product Market—*

28   *Supply Substitutability.*

## SECTION 2: MONOPOLIZATION

## 23. PSD'S PROPOSED INSTRUCTION (DISPUTED) RELEVANT

## GEOGRAPHIC MARKET

The relevant geographic market is the area in which WhiteWater faces competition from other firms that compete, or could compete, in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

PSD has the burden of proving the relevant geographic market by a preponderance of the evidence. In this case, PSD claims that the relevant geographic market is comprised of the world other than China. WhiteWater asserts that this market definition is unsupported by the evidence.

In determining whether PSD has met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

1. The geographic areas where WhiteWater sold sheet wave machines and and where its customers are located;

2. The geographic areas customers considered for supply when buying sheet wave machines.

3. The geographic areas where customers have turned or seriously considered turning for supply;

4. The transportation cost differences between areas;

5. The geographic areas that suppliers view as potential sources of competition.[32]

---

[32] ABA Model Instructions, Chapter 3.A.6., *Instruction 6: Relevant Geographic Market.*

## SECTION 2: MONOPOLIZATION

## 23. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RELEVANT GEOGRAPHIC MARKET

*Note: WhiteWater's position is that the jury should be instructed that, as pled in PSD's complaint,[33] the relevant geographic market is worldwide. If that instruction is not given, then WhiteWater proposes the following instruction.*

The relevant geographic market is the area in which WhiteWater (~~defendant~~) faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.

PSD(~~Plaintiff~~) has the burden of proving the relevant geographic market by a preponderance of the evidence.   In this case, PSD(~~plaintiff~~) claims that the relevant geographic market is worldwide, other than China (~~[state plaintiff's contention]~~). (~~By contrast, defendant~~)WhiteWater asserts that this market definition is unsupported by the evidence, and the relevant geographic market is worldwide, including China(~~[state defendant's contention, if any, about the scope of the relevant geographic market and/or plaintiff's evidence]~~). In determining whether PSD(~~plaintiff~~) met its burden and demonstrated that its proposed geographic market is proper, you may consider several factors, including:

---

[33] *See* Second Amended Complaint ¶ 247 (the "Relevant Markets" for the Section 2 claim are "(1) the worldwide market for sheet wave machines; and (2) the U.S. municipal sheet wave machine market"; *see also* ¶¶ 4, 6-7, 20, 22, 26, 49-50, 62, 65, 70-72, 143, 181, 185-186, 189, 195, 198, 207, 248, 252, 262-263.)

1.  the geographic area in which WhiteWater (~~defendant~~) sells and where WhiteWater (~~defendant~~)'s customers are located;

2.  the geographic area to which customers turn for supply of the product;

3.  the geographic area to which customers have turned or have seriously considered turning;

4.  the transportation cost differences between areas;

5.  the geographic areas that suppliers view as potential sources of competition; and

6.  whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

If you find that PSD has proven a relevant geographic market, then you should continue to evaluate the remainder of PSD's claim. However, if you find that PSD has failed to prove such a market, then you must find in WhiteWater's favor on this claim.[34]

---

[34] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.A, Instruction 6: Relevant Geographic Market (2016 Edition).

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## SECTION 2: MONOPOLIZATION

## 24. PSD'S PROPOSED INSTRUCTION (DISPUTED)  EXISTENCE OF

## MONOPOLY POWER (INDIRECT PROOF)

If you find that PSD has proven the relevant market, then you should determine whether WhiteWater had monopoly power in that market.  Monopoly power is the power to control prices or exclude competition in a relevant market.  Monopoly power, in and of itself, is not unlawful.   The evidence presented by the parties includes evidence of WhiteWater's market share, market share trends, barriers to entry, entry and exit by other companies, and the number and size of other alleged competitors. If this evidence establishes that WhiteWater had the power to control prices or exclude competition in the relevant market, then you may conclude that WhiteWater had monopoly power in the market.

**Market Share**

The first factor that you should consider is WhiteWater's share of the relevant market, which includes both the product market and the geographic market. Based on the evidence that you have heard about WhiteWater's market share, you should determine WhiteWater's market share as a percentage of total annual installations in the relevant market. WhiteWater must have a significant share of the market in order to possess monopoly power.

In evaluating WhiteWater's market share you may, but are not required to, consider sales made by Defendant ADG.[35]

---

[35] *Procter & Gamble Co. v. CAO Group, Inc.*, No. 1:13-cv-337, 2013 WL 5353281, at * 8 (S.D. Ohio Sept. 24, 2013) (allegation that Defendant "and its licensees" received at least 75% of annual revenue for strips of dental treatment was sufficient to support a finding of monopoly power or a dangerous probability of monopoly power); *Bendix Corp. v. Balax, Inc.*, 471 F.2d 149, 162 (7th Cir. 1972) (conducting market share analysis by "combining the [seller's] share of the market with the share of its licensees"); *Magnetar Tech. Corp. v. Intamin, Ltd.*, No. CV071052GAFJWJX, 2011 WL 13133973, at *7 (C.D. Cal. May 11,

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

In evaluating whether the percentage of market share supports a finding of monopoly power, you also should consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry (that is, how difficult is it for other producers to enter the market and begin competing with defendant for sales), the entry and exit by other companies, and the number and size of competitors. Along with WhiteWater's market share, these factors should inform you as to whether WhiteWater has monopoly power. No single factor is conclusive. The higher the company's share, the higher the likelihood that a company has monopoly power.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that WhiteWater has monopoly power. This does not mean that a market share above 50 percent, on its own, supports a conclusion of monopoly power. However, if you find that the other evidence demonstrates that WhiteWater does, in fact, have monopoly power despite having a market share above 50 percent, you may conclude that WhiteWater has monopoly power.

**Market Share Trends**

The trend in WhiteWater's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

**Barriers to Entry**

You may also consider whether there were barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights

---

2011) ("The Court is persuaded that, at least in theory, a patent-holder might wield monopoly power—i.e. the power to control prices or exclude competition—through its licensing program.").

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

(such as patents), regulatory requirements, specialized marketing practices, and the reputation of the companies already participating in the market.

Evidence of low or no entry barriers may be evidence that WhiteWater did not have monopoly power, regardless of its market share, because new competitors could enter easily if WhiteWater attempted to raise prices for a substantial period of time. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant had monopoly power.

### Entry and Exit by Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that WhiteWater lacked monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that WhiteWater had monopoly power.

### **Number and Size of Competitors**

You may consider whether WhiteWater's competitors were capable of effectively competing. In other words, you should consider whether the financial strength, market shares and number of competitors in the relevant market acted as a check on defendant's ability to price its products. If WhiteWater's competitors were vigorous or had large or increasing market shares, this may be evidence that WhiteWater lacked monopoly power. On the other hand, if you determine that WhiteWater's competitors were weak or had small or declining market shares, this may support an inference that WhiteWater had monopoly power.

### Conclusion

If you find that WhiteWater has monopoly power in the relevant market, then you must consider the remaining elements of this claim.  If you find that WhiteWater does not

1  have monopoly power, then you must find for WhiteWater and against plaintiff on this
2  claim.[36]

---

[36] ABA Model Instructions, Chapter 3.A.7., *Instruction 7: Existence of Monopoly Power --- Indirect Proof.*

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## SECTION 2: MONOPOLIZATION

### 24. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

### EXISTENCE OF MONOPOLY POWER (INDIRECT PROOF)

If you find that <u>PSD</u> (~~plaintiff~~) has proven a relevant market, <u>including both a product market and a geographic market,</u> then you should determine whether <u>WhiteWater</u> (~~defendant~~) has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. <u>PSD</u> (~~Plaintiff~~) has introduced evidence of the structure of the market to show that <u>WhiteWater</u> (~~defendant~~) has monopoly power. The evidence presented by the parties includes evidence of <u>WhiteWater's</u> (~~defendant's~~) market share, <u>including</u> (*[~~include any of the following as appropriate:~~*)</u> <u>market share trends, barriers to entry, entry and exit by other companies, and the number and size of other competitors(~~]~~)</u>. If this evidence establishes that <u>WhiteWater</u> (~~defendant~~) has the power to control prices and exclude competition in the relevant antitrust market, then you may conclude that <u>WhiteWater</u> (~~defendant~~) has monopoly power in the market.

<u>You must consider only whether WhiteWater individually has monopoly power, and may not combine WhiteWater with ADG or any other company for this purpose.</u>[37]

<u>If you find that WhiteWater has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that WhiteWater does not have monopoly power, then you must find for WhiteWater and against PSD on this claim.</u>

**Market Share**

The first factor that you should consider is <u>WhiteWater's</u> (~~defendant's~~) share of the relevant market, <u>which includes both the product market and the geographic market</u>. Based on the evidence that you have heard about <u>WhiteWater's</u> (~~defendant's~~) market share,

---

[37] *See, e.g., Consol. Terminal SC Innovation, Inc. v. Uber Techs., Inc.*, 434 F. Supp. 3d 782, 794–95 (N.D. Cal. 2020); *Oxbow Carbon & Mins. LLC v. Union Pac. R. Co.*, 926 F. Supp. 2d 36, 46 (D.D.C. 2013).

you should determine WhiteWater's (defendant's) market share as a percentage of total sales in the relevant market ([*or shipments, production, capacity, reserves, or other relevant measures of market share*]). WhiteWater (The defendant) must have a significant share of the market in order to possess monopoly power. WhiteWater's market share must be calculated on its own, and not combined with that of ADG or any other entities.[38]

In evaluating whether the percentage of market share supports a finding of monopoly power, you also should consider other aspects of the relevant market, ([*include any of the following as appropriate:*) such as market share trends, the existence of barriers to entry (that is, how difficult is it for other producers to enter the market and begin competing with defendant for sales), the entry and exit by other companies, and the number and size of competitors*.(]) Along with WhiteWater's (defendant's) market share, these factors should inform you as to whether WhiteWater (defendant) has monopoly power. No single factor is conclusive. The higher the company's share, the higher the likelihood that a company has monopoly power.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that WhiteWater (defendant) has monopoly power. This does not mean that a market share above 50 percent, on its own, supports a conclusion of monopoly power. However, if you find that the other evidence demonstrates that WhiteWater (defendant) does, in fact, have monopoly power despite having a market share above (below) 50 percent, you may conclude that WhiteWater (defendant) has monopoly power.

**Market Share Trends**

The trend in WhiteWater's (defendant's) market share is something you may consider. An increasing market share may strengthen an inference that a company has

---

[38] *See, e.g., Consol. Terminal SC Innovation, Inc. v. Uber Techs., Inc.*, 434 F. Supp. 3d 782, 794–95 (N.D. Cal. 2020); *Oxbow Carbon & Mins. LLC v. Union Pac. R. Co.*, 926 F. Supp. 2d 36, 46 (D.D.C. 2013).

monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

### Barriers to Entry

You may also consider whether the evidence supports the conclusion that there were (are) barriers to entry into the relevant market, and if so, whether they were high or low barriers. Barriers to entry are things that make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as patents),(or trade secrets the large financial investment required to build a plant or satisfy governmental regulations,) regulatory requirements, specialized marketing practices, and the reputation of the companies already participating in the market ((or the brand name recognition of their products)).

Evidence of low or no entry barriers may be evidence that WhiteWater (defendant) does not have monopoly power, regardless of defendant's market share, because new competitors could enter easily if WhiteWater (defendant) attempted to raise prices for a substantial period of time. Evidence of low or no entry barriers may include evidence that new competitors enter the market even when existing firms have intellectual property or brand reputation, and that new entrants are able to obtain the financing required to enter the market. By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant has monopoly power.

### Entry and Exit By Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that WhiteWater (defendant) lacks monopoly power. On the other hand, departures from the market, or the failure of firms to enter the market, particularly if prices and profit margins are relatively high, may support an inference that WhiteWater (defendant) has monopoly power.

### Number and Size of Competitors

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

You may consider whether WhiteWater's (defendant's) competitors are capable of effectively competing. In other words, you should consider whether the financial strength, market shares, and number of competitors act as a check on WhiteWater's (defendant's) ability to price its products. If WhiteWater's (defendant's) competitors are vigorous or have large or increasing market shares this may be evidence that WhiteWater (defendant) lacks monopoly power. On the other hand, if you determine that WhiteWater's (defendant's) competitors are weak or have small or declining market shares, this may support an inference that defendant has monopoly power.

**Conclusion**

If you find that WhiteWater (defendant) has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that WhiteWater (defendant) does not have monopoly power, then you must find for WhiteWater (defendant) and against PSD (plaintiff) on this claim.[39]

---

[39] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.A Instruction 7: Existence of Monopoly Power – Indirect Proof (2016 Edition).

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SECTION 2: MONOPOLIZATION

## 25. PSD'S PROPOSED INSTRUCTION (DISPUTED)

## EXISTENCE OF MONOPOLY POWER (DIRECT PROOF)

If you find that PSD has proven a relevant market, then you should determine whether WhiteWater has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices or exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.  An alternative way of showing monopoly power is through direct evidence, as described below.

PSD has the burden of proving that WhiteWater had the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. PSD must prove that defendant has the power to do so by itself— that is, without the assistance of, and despite competition from, any existing or potential competitors. PSD must also prove that WhiteWater had the power to maintain prices above a competitive level for a significant period of time. If WhiteWater attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then WhiteWater does not have monopoly power.

Similarly, PSD must prove that WhiteWater has the ability to exclude competition. For example, if WhiteWater attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then WhiteWater does not have monopoly power.

The ability to earn high profit margins or a high rate of return does not necessarily mean that WhiteWater has monopoly power. Other factors may enable a company without

monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as superior products or services, low costs, or superior advertising or marketing. However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that WhiteWater would lose a substantial amount of sales if it raised prices substantially, or that WhiteWater's profit margins were low compared to its competitors, or that WhiteWater's margins go up and down or are steadily decreasing, might be evidence that defendant does not have monopoly power. If you find that WhiteWater has monopoly power in the relevant market, then you must consider the remaining elements of this claim.

If you find that WhiteWater does not have monopoly power, then you must find for WhiteWater and against PSD on this claim.[40]

---

[40] ABA Model Instructions, Chapter 3.A.8., *Instruction 8: Existence of Monopoly Power --- Direct Proof.*

**SECTION 2: MONOPOLIZATION**

**25. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)**

**EXISTENCE OF MONOPOLY POWER (DIRECT PROOF)**

*Note: Defendants' position is that this instruction should not be included. If it is included, Defendants propose the following:*

If you find that PSD (~~plaintiff~~) has proven a relevant market, then you should determine whether WhiteWater (~~defendant~~) has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market. More precisely, a firm is a monopolist if it can profitably raise or maintain prices substantially above the competitive level for a significant period of time.

PSD (~~Plaintiff~~) has the burden of proving that defendant has the ability to raise or maintain the prices that it charges for goods or services in the relevant market above competitive levels. PSD (~~Plaintiff~~) must prove that defendant has the power to do so by itself--that is, without the assistance of, and despite competition from, any existing or potential competitors.

PSD (~~Plaintiff~~) must also prove that defendant has the power to maintain prices above a competitive level for a significant period of time. If WhiteWater (~~defendant~~) attempted to maintain prices above competitive levels, but would lose so much business to other competitors that the price increase would become unprofitable and would have to be withdrawn, then defendant does not have monopoly power.

Similarly, PSD (~~plaintiff~~) must prove that defendant has the ability to exclude competition. For example, if WhiteWater (~~defendant~~) attempted to maintain prices above competitive levels, but new competitors could enter the relevant market or existing competitors could expand their sales and take so much business that the price increase would become unprofitable and would have to be withdrawn, then WhiteWater

(~~defendant~~) does not have monopoly power. The ability to earn high profit margins or a high rate of return does not necessarily mean that <u>WhiteWater</u> (~~defendant~~) has monopoly power. Other factors may enable a company without monopoly power to sell at higher prices or earn higher profit margins than its competitors, such as superior products or services, low costs, or superior advertising or marketing<u>, or stronger reputation</u> ([*expand or contract list as appropriate*]). However, an ability to sell at higher prices or earn higher profit margins than other companies for similar goods or services over a long period of time may be evidence of monopoly power. By contrast, evidence that <u>WhiteWater</u> (~~defendant~~) would lose a substantial amount of sales if it raised prices substantially, or that <u>WhiteWater's</u> (~~defendant's~~) profit margins were low compared to its competitors, or that <u>WhiteWater's</u> (~~defendant's~~) margins go up and down or are steadily decreasing, might be evidence that defendant does not have monopoly power.

If you find that <u>WhiteWater</u> (~~defendant~~) has monopoly power in the relevant market, then you must consider the remaining elements of this claim. If you find that <u>WhiteWater</u> (~~defendant~~) does not have monopoly power, then you must find for <u>WhiteWater</u> (~~defendant~~) and against PSD (~~plaintiff~~) on this claim.[41]

---

[41] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.A, Instruction 8: Existence of Monopoly Power – Direct Proof (2016 Edition).

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## SECTION 2: MONOPOLIZATION

### 26. PSD'S PROPOSED INSTRUCTION (DISPUTED) WILLFUL

### MAINTENANCE OF MONOPOLY POWER

The next element PSD must prove is that WhiteWater possessed monopoly power in that market, then you must determine whether PSD has also proven that WhiteWater willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. The maintenance of monopoly power by supplying better products or services, possessing lawful patents or superior business skills, or because of luck, is not unlawful.

A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals or the achievement of these goals unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether WhiteWater's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide any benefits to competition or consumers. The only effect of the alteration is to exclude competing printer makers from the marketplace. It would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully maintained monopoly power through anticompetitive means if it has maintained that power solely through the exercise of superior foresight and skill; or because of economic or technical efficiency, including efficiency resulting from research; or by obtaining a lawful patent, or because changes in cost or taste have driven out all but one supplier.

If you find that PSD has proven by a preponderance of the evidence that WhiteWater willfully maintained monopoly power through anticompetitive acts, then you must consider whether PSD has proved the remaining elements of this claim. If, however, you find that PSD did not prove this element by a preponderance of the evidence, then you must find for WhiteWater and against PSD on this claim.[42]

---

[42] ABA Model Instructions, Chapter 3.A.9., Instruction 9: Willful Acquisition or Maintenance of Monopoly Power.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECTION 2: MONOPOLIZATION**

**26. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) WILLFUL**

**(~~ACQUISITION OR~~) MAINTENANCE OF MONOPOLY POWER**

The next element <u>PSD</u> (~~plaintiff~~) must prove is that <u>WhiteWater</u> (~~defendant~~) willfully (~~acquired [or~~) *maintained(~~]~~)* monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. Some examples of harm to competition include increased prices, decreased production levels, and reduced quality.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. The (~~acquisition [or~~) *maintenance(~~]~~)* of monopoly power by supplying better products or services, possessing <u>patents or</u> superior business skills, or because of luck, is not unlawful.

A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals--or the achievement of these goals--unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether <u>WhiteWater's</u> (~~defendant's~~) conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that these printers comprised a relevant product market. Suppose also that Firm A developed a more efficient manufacturing process that allowed it to sell profitably at a lower price than its competitors. If Firm A grew its market share and achieved monopoly power by selling profitably at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way. Developing more efficient processes and developing the ability to sell profitably at lower prices is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct even if it has a negative effect on competitors.

Similarly, in the same example, suppose Firm B developed and patented a revolutionary new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power. It would not be unlawful for Firm B to achieve monopoly power in this way. Firm B "built a better mousetrap," which is competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct.

By contrast, in the same example, suppose not only that Firm C makes printers, but also that Firm C is the world's only manufacturer of computers and that there are barriers to entry in the computer market such that no other firm will be able to enter that market. Suppose also that Firm C altered its computers in such a way that only Firm C's printers would work with its computers, and that the alteration does not improve the design of Firm C's computers or provide any benefits to competition or consumers. The only effect of the alteration is to exclude competing printer makers from the marketplace. It would be unlawful for Firm C to achieve monopoly power in the printer market in this way.

As these examples show, the acts or practices that result in the (~~acquisition~~ [*or*] *maintenance(*]~~)~~ of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully (~~acquired [~~*or) maintained(*~~]~~) monopoly power through anticompetitive means if it has (~~acquired  [~~*or) maintained(*~~]~~) that power solely through the exercise of superior foresight and skill; (~~or because of natural advantages such as unique geographic access to raw materials or markets;~~) or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent; <u>or by pursuing litigation that is not objectively baseless and pursued in bad faith; or by truthfully communicating information to its customers</u> (~~because changes in cost or consumer preference have driven out all but one supplier [~~*or because the market is so limited that it is impossible to efficiently produce the product except by a plant large enough to supply the whole demand*~~]~~).

If you find that <u>PSD</u> (~~plaintiff~~) has proven by a preponderance of the evidence that <u>WhiteWater</u> (~~defendant~~) willfully (~~acquired [~~*or) maintained(*~~]~~) monopoly power through anticompetitive acts, then you must consider whether <u>PSD</u> (~~plaintiff~~) has proved the remaining elements of this claim. If, however, you find that <u>PSD</u> (~~plaintiff~~) did not prove this element by a preponderance of the evidence, then you must find for <u>WhiteWater</u> (~~defendant~~)and against <u>PSD</u> (~~plaintiff~~) on this claim.[43]

---

[43] ABA Model Instructions, Chapter 3.A, Instruction 9: Willful Acquisition or Maintenance of Monopoly Power (2016 Edition).

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## SECTION 2: MONOPOLIZATION

## 27. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## PROOF OF COMPETITIVE HARM

In this case, PSD contends that WhiteWater violated Section 2 of the Sherman Act by bringing lawsuits for infringing two of WhiteWater's patents, and a lawsuit for breach of a contract, and making certain statements about the lawsuits to others. To prove that this was anticompetitive, PSD must demonstrate that the lawsuits had a significant and enduring adverse impact on competition in the relevant markets.[44]

(As I mentioned, to prove that the challenged restraint is unreasonable, plaintiff first must demonstrate that the restraint has resulted [*or is likely to result*] in a substantial harm to competition. Although it may be relevant to the inquiry, harm) Harm that occurs merely to the individual business of PSD (plaintiff) is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

(Furthermore, plaintiff must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. It is plaintiff's burden to prove the existence of a relevant market.

If you find that plaintiff has proven the existence of a relevant market, then you must determine whether plaintiff also has proven that the challenged restraint has [*or is likely to have*] a substantial harmful effect on competition in that market. A harmful effect

---

[44] *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997) ("While false or misleading advertising directed solely at a single competitor may not be competition on the merits, the fliers in question must have a significant and enduring adverse impact on competition itself in the relevant markets to rise to the level of an antitrust violation.").

1   on competition, or competitive harm, refers to a reduction in competition that results in

2   the loss of some of the benefits of competition, such as lower prices, increased output, or

3   higher product quality. If the challenged conduct has not resulted in [*or is not likely to*

4   *result in*] higher prices, decreased output, lower quality, or the loss of some other

5   competitive benefit, then there has been no competitive harm, and you should find that the

6   challenged conduct was not unreasonable.

7        In determining whether the challenged restraint has produced [*or is likely to*

8   *produce*] competitive harm, you may look at the following factors:

9        • the effect of the restraint on prices, output, product quality, and service;

10       • the purpose and nature of the restraint;

11       • the nature and structure of the relevant market;

12       • the number of competitors in the relevant market and the level of competition

13         among them, both before and after the restraint was imposed;

14       • and whether the defendant possesses market power.

15       The last factor mentioned, market power, has been defined as an ability to profitably

16   raise prices, for a sustained period of time, above those that would be charged in a

17   competitive market. A firm that possesses market power generally can charge higher

18   prices for the same goods or services than a firm in the same market that does not possess

19   market power. The ability to charge higher prices for better products or services, however,

20   is not market power. An important factor in determining whether defendant possesses

21   market power is defendant's market share, that is, its percentage of the products or services

22   sold in the relevant market by all competitors. Other factors that you may consider in

23   determining whether defendant has market power include [*list factors relevant to the facts*

24   *of the case, such as the existence of barriers to entry or potential competitors*]. If

25   defendant does not possess a substantial market share, it is less likely that defendant

26   possesses market power. If defendant does not possess market power, it is less likely that

27

28

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1  ~~the challenged restraint has resulted~~ [*or will result*] ~~in a substantial harmful effect on~~
2  ~~competition in the market.)~~ [45]

<hr />

27  [45] ABA Model Jury Instructions, Chapter 1.C.2, Instruction 3B: Rule of Reason—Proof of
28  Competitive Harm  (2016 Edition).

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

# SECTION 2: MONOPOLIZATION

## 28. PSD'S PROPOSED INSTRUCTION (DISPUTED)

### EVALUATE THE EVIDENCE AS A WHOLE

PSD contends that WhiteWater engaged in an anticompetitive scheme that includes multiple acts when, viewed together, harmed competition. In analyzing the evidence, you must consider the evidence as a whole, giving PSD the full benefit of its proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.[46]

---

[46] *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1152 (9th Cir. 2019) ("We are required to take a holistic look at how the [acts alleged] actually impact competition. Indeed, the essential inquiry is whether or not the challenged restraint enhances competition, which is assessed by considering the totality of the nature or character of the [conduct]. Thus, the law requires that the character and effect of [the conduct] are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole. Accordingly, we must give plaintiffs the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.") (internal quotations omitted) (*citing, inter alia, Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698–99 (1962); *Simon & Simon, PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 913 (N.D. Cal. 2021) ("Sometimes, a monopolist's singular activity will amount to an antitrust violation on its own. But other times, a series of activities will combine to create an antitrust violation even if no one activity is sufficiently 'anticompetitive' in isolation.") (*citing City of Anaheim v. Southern California Edison Co.*, 955 F.2d 1373, 1376, 1378 (9th Cir. 1992) ("[I]t would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect.")); T*ele Atlas N.V. v. NAVTEQ Corp.*, No. C-05-01673 RS, 2008 WL 4911230, at *1–2 (N.D. Cal. Nov. 13, 2008) ("[C]ourts must consider all of an alleged monopolist's related conduct in the aggregate. . . . To appreciate the effect of otherwise lawful acts, the jury must consider the acts' aggregate effect. Recognizing the danger of falsely condemning innovation and competition, it should be 'much more difficult to find overall wrongdoing' when considering only 'a number of perfectly legal acts.' Even 'a finding of some slight wrongdoing in certain areas need not by itself add up to a violation' of section 2. What matters is whether the 'synergistic effect' of the alleged conduct is to harm competition, and thus perpetuate a monopoly." (citations omitted); *Free FreeHand Corp. v. Adobe Sys. Inc.*, 852 F. Supp. 2d 1171, 1180 (N.D. Cal. 2012) ("Under the theory of monopoly broth,

## SECTION 2: MONOPOLIZATION

## 28. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## EVALUATE THE EVIDENCE AS A WHOLE

*Note: Defendants object to this instruction.*

---

'[t]here are kinds of acts which would be lawful in the absence of monopoly but, because of their tendency to foreclose competitors from access to markets or customers or some other inherently anticompetitive tendency, are unlawful under Section 2 if done by a monopolist.' The Ninth Circuit has likewise stated that it is not 'proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect.' Thus, the Court analyzes the alleged anticompetitive practices below to determine whether, in the aggregate, they tend to reduce competition and maintain Adobe's monopoly power.") (citations omitted); *Klein v. Facebook, Inc*., 580 F. Supp. 3d 743, 806 (N.D. Cal. 2022) ("Under a 'monopoly broth' theory of liability, a plaintiff 'can state a Section 2 claim by alleging a series of practices that are anticompetitive, even if some of the activities would be lawful if viewed in isolation.'"); *In re Intuniv Antitrust Litig.*, 496 F. Supp. 3d 639, 680 (D. Ma.) (explaining that 'a plaintiff can allege a series of actions that when taken together make out antitrust liability even though some of the individual actions, when viewed independently, are not all actionable').

# SECTION 2: MONOPOLIZATION

## 29. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## NOERR-PENNINGTON IMMUNITY AND SHAM LITIGATION[47]

(Defendant claims that the only agreement it participated in was an agreement with [*specify entities involved*] to [*specify conduct involved*].) The Constitution ensures the right of everybody, whether acting alone or in combination or agreement with others, to initiate lawsuits (petition or appeal to the courts for judicial action), recognizing that when people do so, they will naturally seek judicial action that favors them and also may be unfavorable to others. The law provides that the right to initiate a lawsuit(s) (use the courts to seek judicial action) is an important right, and that the genuine exercise of that right, even by an agreement, does not normally violate the antitrust laws.

A lawsuit (An agreement to bring or continue one or more lawsuits against plaintiff) does not violate the antitrust laws unless the lawsuit or lawsuits (suit or suits) were a sham. To prove that the litigation it challenges was a sham, and (that the litigation) thus a violation of the antitrust laws (can be the basis for its antitrust claim), PSD (plaintiff) must prove, by clear and convincing evidence, two things with respect to each individual lawsuit it alleges was brought for an anticompetitive purpose: (1) that the defendant's suit was objectively baseless; and (2) that the baseless suit (must have been) was an attempt to harass or interfere directly with the business relationships of one or more competitors through the use of governmental process as opposed to through the outcome of the suit.

(A lawsuit is objectively baseless only if no reasonable litigant could realistically expect to win. Just because defendant's suit was unsuccessful does not mean that it was objectively baseless. In other words, if someone in defendant's position could have had a

---

[47] *Note: PSD proposes this instruction as #54 to be provided after the jury is instructed on damages. Defendants maintain this instruction should be provided within the context of the jury instruction as to PSD's monopolization claims.*

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

reasonable belief that there was a realistic chance of winning, the suit was not objectively baseless.)

(If you find that defendant's suit was not objectively baseless, then you do not need to consider whether defendant's lawsuit was an attempt to harass or interfere with the business relationships of one or more competitors. Instead, you must find for defendant and against plaintiff on plaintiff's charges that defendant violated the Sherman Act by pursuing a lawsuit.)

(If, however, you find that defendant's lawsuit was objectively baseless, then you must determine whether defendant's primary objective in bringing the lawsuit was to hurt plaintiff [*or its competitor*] by bringing or continuing the lawsuit regardless of the ultimate outcome of the lawsuit, or whether defendant's primary objective was to obtain the relief sought in the suit.)

(The litigation at issue here, that plaintiff contends is a sham, sought the following judicial relief: [*specify all relief sought*]. Defendant contends that the true purpose in bringing the lawsuit was to secure this relief. Plaintiff, on the other hand, maintains that defendant's true purpose in bringing the lawsuit was not to win a favorable judgment against plaintiff [*or its competitor*]; but to harass, bar, or delay plaintiff [*or its competitor*], by the process of litigating, regardless of the outcome.)

(In determining defendant's purpose, you may consider whatever direct evidence of defendant's motivation for bringing the lawsuit is available to you. Of course, you also may consider circumstantial evidence of defendant's true purpose, such as whether defendant engaged in any misrepresentations in the conduct of the lawsuit. If defendant engaged in misrepresentation in a judicial proceeding, you may consider that to be evidence of an improper purpose.)

(If you find that no reasonable person could have realistically expected to succeed in a suit such as the one defendant brought or maintained against plaintiff [*or its competitor*], *and* that defendant's primary purpose in bringing or continuing it was to

1   ~~inflict harm on plaintiff [*or its competitor*] caused by the suit itself, as opposed to the relief~~

2   ~~sought, then you must next consider whether defendant's actions in bringing the suit~~

3   ~~constitute [*an unlawful restraint of trade, exclusionary conduct in pursuit of*~~

4   ~~*monopolization, etc.*], that is, whether the remaining elements of [*plaintiff's claim*] have~~

5   ~~been proven.)~~[48]

---

27   [48] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7.A, Instruction 4: Sham

28   Litigation (2016 Edition).

# SECTION 2: MONOPOLIZATION

## 30. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## SHAM LITIGATION—OBJECTIVELY BASELESS

(Defendant claims that the only agreement it participated in was an agreement with [*specify entities involved*] to [*specify conduct involved*]. The Constitution ensures the right of everybody, whether acting alone or in combination or agreement with others, to petition or appeal to the courts for judicial action, recognizing that when people do so, they will naturally seek judicial action that favors them and also may be unfavorable to others. The law provides that the right to use the courts to seek judicial action is an important right, and that the exercise of that right, even by an agreement, does not normally violate the antitrust laws.)

(An agreement to bring or continue one or more lawsuits against plaintiff does not violate the antitrust laws unless the suit or suits were a sham. To prove that the litigation it challenges was a sham, and that the litigation thus can be the basis for its antitrust claim, plaintiff must prove two things: (1) that defendant's suit was objectively baseless; and (2) the baseless suit must have been an attempt to harass or interfere directly with the business relationships of one or more competitors through the use of governmental process as opposed to through the outcome of the suit.)

A lawsuit is objectively baseless only if no reasonable litigant could realistically expect to win.  Just because defendant (defendant's suit) was unsuccessful in an individual lawsuit does not mean that (it) the lawsuit was objectively baseless.  A lawsuit is not objectively baseless if, for example, the litigant prevailed on summary judgment, but lost at trial.[49]  Similarly, a lawsuit is also not objectively baseless if the if the litigant lost at

---

[49] *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 15 F. Supp. 3d 1075, 1088 (D. Or. 2014) ("Because PMA has already prevailed at summary judgment in one of the two lawsuits, it cannot reasonably be alleged that these lawsuits were brought without regard to their merits."); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 958-9 (S.D. Cal. 1996) ("[B]oth the CNS and Regents lawsuits have survived motions for summary

trial, but the court denied the winning party's motion for attorney fees.[50] In other words, if someone in defendant's position could have had a reasonable belief that there was a realistic chance of winning, the suit was not objectively baseless.

If you find that any of the individual lawsuits (defendant's suit) was not objectively baseless, then you do not need to consider whether that (defendant's) lawsuit was an attempt to harass or interfere with the business relationships of one or more competitors. If you find that none of the individual lawsuits themselves were objectively baseless, (Instead,) you must find for WhiteWater (defendant) and against PSD (plaintiff) on PSD's (plaintiff's) charges that WhiteWater (defendant) violated the Sherman Act by pursuing a lawsuit.[51]

(If, however, you find that defendant's lawsuit was objectively baseless, then you must determine whether defendant's primary objective in bringing the lawsuit was to hurt plaintiff [or its competitor] by bringing or continuing the lawsuit regardless of the ultimate

judgment. Consequently, considering either the CNS suit alone, or the 'pattern' of the CNS and Regents lawsuits, the Court finds lacking the necessary component of objective baselessness")); *Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-BLF, 2020 LEXIS 132717, at *13 (N.D. Cal. Jul. 27, 2020) ("Here, Sumotext's antitrust claims survived summary judgment and therefore cannot be characterized as objectively baseless.").

[50] *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (distinguishing between attorneys fees for exceptional cases in the patent infringement context, and sham litigation cases that are objectively baseless to thwart competition); *In re Ditropan XL Antitrust Litigation*, 2007 WL 3256208 at *2 (N.D. Cal., Nov. 5, 2007) (holding that the District Court's previous finding that the action was "not frivolous" for purposes of denying an attorneys' fees motion was also sufficient to determine the action was not objectively baseless for sham litigation purposes); *Duke Univ., Allergan, Inc. v. Akorn, Inc.*, No. 318-CV-14035-BRM-TJB, 2019 WL 4410284, at *9 (D.N.J. Sept. 16, 2019) ("Federal courts have given a court's denial of attorney's fees under § 285 preclusive effect when determining whether a suit or series of suit constitutes sham litigation.").

[51] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7.A, Instruction 4: Sham Litigation (2016 Edition).

outcome of the lawsuit, or whether defendant's primary objective was to obtain the relief sought in the suit.)

(The litigation at issue here, that plaintiff contends is a sham, sought the following judicial relief: [*specify all relief sought*]. Defendant contends that the true purpose in bringing the lawsuit was to secure this relief. Plaintiff, on the other hand, maintains that defendant's true purpose in bringing the lawsuit was not to win a favorable judgment against plaintiff [*or its competitor*]; but to harass, bar, or delay plaintiff [*or its competitor*], by the process of litigating, regardless of the outcome.)

(In determining defendant's purpose, you may consider whatever direct evidence of defendant's motivation for bringing the lawsuit is available to you. Of course, you also may consider circumstantial evidence of defendant's true purpose, such as whether defendant engaged in any misrepresentations in the conduct of the lawsuit. If defendant engaged in misrepresentation in a judicial proceeding, you may consider that to be evidence of an improper purpose.)

(If you find that no reasonable person could have realistically expected to succeed in a suit such as the one defendant brought or maintained against plaintiff [*or its competitor*], *and* that defendant's primary purpose in bringing or continuing it was to inflict harm on plaintiff [*or its competitor*] caused by the suit itself, as opposed to the relief sought, then you must next consider whether defendant's actions in bringing the suit constitute [*an unlawful restraint of trade, exclusionary conduct in pursuit of monopolization, etc.*], that is, whether the remaining elements of [*plaintiff's claim*] have been proven.)

1

## SECTION 2: MONOPOLIZATION

2

## 31. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

3

## SHAM LITIGATION—PRIMARY OBJECTIVE

4      (Defendant claims that the only agreement it participated in was an agreement with

5  [*specify entities involved*] to [*specify conduct involved*]. The Constitution ensures the right

6  of everybody, whether acting alone or in combination or agreement with others, to petition

7  or appeal to the courts for judicial action, recognizing that when people do so, they will

8  naturally seek judicial action that favors them and also may be unfavorable to others. The

9  law provides that the right to use the courts to seek judicial action is an important right,

10  and that the exercise of that right, even by an agreement, does not normally violate the

11  antitrust laws.)

12      (An agreement to bring or continue one or more lawsuits against plaintiff does not

13  violate the antitrust laws unless the suit or suits were a sham. To prove that the litigation

14  it challenges was a sham, and that the litigation thus can be the basis for its antitrust claim,

15  plaintiff must prove two things: (1) that defendant's suit was objectively baseless; and (2)

16  the baseless suit must have been an attempt to harass or interfere directly with the business

17  relationships of one or more competitors through the use of governmental process as

18  opposed to through the outcome of the suit.)

19      (A lawsuit is objectively baseless only if no reasonable litigant could realistically

20  expect to win. Just because defendant's suit was unsuccessful does not mean that it was

21  objectively baseless. In other words, if someone in defendant's position could have had a

22  reasonable belief that there was a realistic chance of winning, the suit was not objectively

23  baseless.)

24      (If you find that defendant's suit was not objectively baseless, then you do not need

25  to consider whether defendant's lawsuit was an attempt to harass or interfere with the

26  business relationships of one or more competitors. Instead, you must find for defendant

27

28

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1
2
~~and against plaintiff on plaintiff's charges that defendant violated the Sherman Act by pursuing a lawsuit.)~~

3
4
5
6
7
If, however, you find that <u>an individual</u> (~~defendant's~~) lawsuit was objectively baseless, then you must determine whether defendant's primary objective in bringing (~~the~~) <u>that</u> lawsuit was to hurt <u>PSD</u> (~~plaintiff [*or its competitor*]~~) by bringing or continuing the lawsuit regardless of the ultimate outcome of the lawsuit, or whether defendant's primary objective was to obtain the relief sought in the <u>lawsuit</u> (~~suit~~).

8
9
(The litigation at issue here,) <u>In the litigation</u> that <u>PSD</u> (~~plaintiff~~) contends is a sham, <u>WhiteWater</u> sought the following judicial relief: (~~[*specify all relief sought*].~~)

10
- <u>To prevent PSD from infringing on WhiteWater's '589 and '016 patents.</u>

11
- <u>To recover damages from PSD's infringement on the '589 patent.</u>

12
13
- <u>To confirm that Richard Alleshouse had breached his contract with Wave Loch LLC.</u>

14
15
- <u>To have any patents that PSD obtained based Mr. Alleshouse's breach of contract to be transferred to WhiteWater.</u>

16
17
18
19
20
21
22
23
24
<u>WhiteWater</u> (~~Defendant~~) contends that the true purpose in bringing the lawsuit was to secure this relief. <u>PSD</u> (~~Plaintiff~~), on the other hand, maintains that <u>WhiteWater's</u> (~~defendant's~~) true purpose in bringing the lawsuit was not to win (~~a~~) favorable (~~judgment~~) <u>judgments</u> against <u>PSD</u> (~~plaintiff [*or its competitor*];~~) but to harass, bar, or <u>prevent</u> (~~delay~~) <u>PSD</u> (~~plaintiff [*or its competitor*],~~) from competing, by the process of litigating, regardless of the outcome <u>of each individual lawsuit.</u>[52] <u>This requires you to determine WhiteWater's</u> (~~defendant's~~) <u>good or bad faith in bringing the infringement suit. WhiteWater</u> (~~Defendant~~) <u>is entitled to a presumption of good faith. You may disregard this presumption only if you find by clear and convincing evidence that WhiteWater's</u> (~~defendant's~~) <u>goal in pursuing</u>

25
26
27
28
---
[52] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7.A, Instruction 4: Sham Litigation (2016 Edition).

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1  the infringement suit was not to win, but was to harass a competitor and deter others from

2  competing, by engaging in the litigation process itself, regardless of the outcome.[53]

3       In determining WhiteWater's (~~defendant's~~) purpose, you may consider whatever

4  direct evidence of WhiteWater's (~~defendant's~~) motivation for bringing the lawsuit is

5  available to you. Of course, you also may consider circumstantial evidence of

6  WhiteWater's (~~defendant's~~) true purpose, such as whether WhiteWater (~~defendant~~)

7  engaged in any misrepresentations in the conduct of the lawsuit. If defendant engaged in

8  misrepresentation in a judicial proceeding, you may consider that to be evidence of an

9  improper purpose.

10       If you find that no reasonable person could have realistically expected to succeed

11  in a lawsuit (~~suit~~) such as the (~~one~~) lawsuits WhiteWater (~~defendant~~) brought or

12  maintained against PSD (~~plaintiff [or its competitor]~~), *and* that WhiteWater's

13  (~~defendant's~~) primary purpose in bringing or continuing any of the lawsuits (~~it~~) was to

14  inflict harm on PSD (~~plaintiff [or its competitor] caused by the suit itself~~), as opposed to

15  the relief sought, then you must next consider whether WhiteWater's (~~defendant's~~) actions

16  in bringing (~~the suit~~) each lawsuit constitute (~~[an unlawful restraint of trade,~~) *exclusionary*

17  *conduct in* ( ~~pursuit~~ ) maintenance *of* a monopoly *(~~monopolization, etc.~~]*,) that is, whether

18  the remaining elements of (~~[plaintiff's claim]~~) PSD's monopolization claim have been

19  proven.

20       If you do not find that PSD has proven, by clear and convincing evidence, that no

21  reasonable person could have realistically expected to succeed in a lawsuit such as the

22  lawsuits WhiteWater brought or maintained against PSD, and that WhiteWater's primary

23  purpose in bringing or continuing any of the lawsuits was to inflict harm on PSD, as

24  opposed to the relief sought, then you must find in favor of WhiteWater and against PSD

25

26                 

[53] *See* ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 4.F, Instruction 2: Sham

27  Enforcement (2016 Edition); *Handgards, Inc. v. Ethicon*, 601 F.2d 986, 996 (9th Cir.

1979); *Kaiser Foundation v. Abbott Labs*, 552 F.3d 1033, 1044 (9th Cir. 2009).

28

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1    on this claim, and in favor of both Defendants and against WhiteWater on Claim 2,

2    discussed below.[54]

---

27    [54] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 7.A, Instruction 4: Sham

28    Litigation (2016 Edition).

# SECTION 2: MONOPOLIZATION

## 32. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## JUDICIAL NOTICE

The court has decided to accept as proved the (~~fact~~) facts that: (~~[state fact], even though no evidence has been introduced on the subject.~~)

- WhiteWater's claim that the '589 Patent was valid and that PSD infringed it was not objectively baseless.
- WhiteWater's claim that the '016 patent was valid was objectively baseless.
- WhiteWater's claim that Richard Alleshouse's contract with Wave Loch was valid and that Mr. Alleshouse breached that contract was not objectively baseless.
- WhiteWater did not bring any of the above claims in bad faith, for purposes of harassment.
- WhiteWater brought its claims for patent infringement against PSD in order to protect its intellectual property.

You must accept (~~this fact~~) these facts as true.[55]

---

[55] Ninth Circuit Manual of Model Jury Instructions Civil 2.3 (2006).

## SECTION 2: MONOPOLIZATION

### 33. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

### DISPARAGEMENT

PSD alleges that WhiteWater engaged in anticompetitive conduct by telling potential customers about WhiteWater's lawsuits against PSD. In order for a defendant's negative statements about a plaintiff to be anticompetitive conduct that can violate the antitrust laws, those statements must be:

(1) clearly false;

(2) clearly material, meaning that they were important to the customers' decisions;

(3) clearly likely to induce the customers to reasonably rely on the statements' truth;

(4) made to buyers without knowledge of the subject matter;

(5) continued for prolonged periods; and

(6) not readily susceptible of neutralization or other offset by PSD.[56]

---

[56] *Am. Prof'l Testing Servs., Inc. v. Harcourt Brace Jovanovich Legal and Prof'l Publ'n, Inc.*, 108 F.3d 1147, 1151 (9th Cir. 1997).

## SECTION 2: MONOPOLIZATION

### 34. PSD'S PROPOSED INSTRUCTION (DISPUTED) PATENTS

You have heard evidence regarding patents and patent claims. To help you evaluate this evidence, I want to provide you with some general information about patents.

The basic purpose of the patent and antitrust laws is to promote innovation and industry. In general, the antitrust laws seek to promote innovation and industry by maintaining competitive markets. The antitrust laws prohibit anticompetitive conduct to obtain or preserve monopoly power and restraints on trade that unduly interfere with the competitive process. The patent laws seek to promote innovation and industry by encouraging inventors to reveal new, useful, and nonobvious technology to the public, in exchange for the grant by the U.S. government of a patent on their inventions.

These investments can lead to new and better products and better ways of making things. In this way, the holder of lawful patent's exercise of its right to exclude others from using the patented invention for the duration of the patent can be reconciled with antitrust policy. So long as the patent owner acts only to take advantage of the right to exclude created by their patent, they do not violate the antitrust laws. If, on the other hand, the asserted owner of a patent seeks to restrain trade beyond the lawful right to exclude conferred by the patent, their conduct may be an antitrust violation.

To receive a patent, an inventor pays a fee and submits an application to the U.S. Patent and Trademark Office (Patent Office). The Patent Office reviews the application and, if it finds that the application adequately describes a new and useful invention, it grants, or "issues," a patent to the inventor. The inventor may keep the patent or assign it to some other person or entity. The owner of the patent is called the patentee. The patent provides the patentee the right, for a specified number of years, to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States without the permission of the owner of the patent. This potential economic reward gives people an incentive to invest time, money, and effort in research and development.

Every inventor who applies for a patent must provide details of the invention to the Patent Office. When the Patent Office issues a patent, a specification of the invention is included in a publicly filed document that describes the innovation, as well as claims that precisely define what the patent covers. This public filing allows anyone to find out what was invented and how it works. Thus, other researchers can learn from a patent owner's work and can make other inventions of their own.

The holder of a lawfully obtained patent has the right to exclude anyone else from "making, using, offering for sale, or selling throughout the United States or importing the invention into the United States" the patented invention for the duration of the patent. Using a patented invention within the applicable time period without the patent owner's permission is called patent infringement or infringing the patent. The holder of a lawfully obtained patent may enforce the right to exclude by bringing a lawsuit to stop the alleged infringement, to recover damages for the alleged infringement, or both.[57]

---

[57] Adapted from Model Instructions, Chapter 4.A. (Patents), Instruction 1: Introduction; Instruction 2, Relation to Antitrust Laws; Chapter 4.B. (Patent Acquisition), Instruction 1: General.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## SECTION 2: MONOPOLIZATION
## 34. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)
## PATENTS / BREACH OF CONTRACT

*Note: Defendants' position is that whether WhiteWater's prior claims against PSD were objectively baseless is an issue of law to be decided by the Court, and that the jury should be instructed to accept the Court's findings on the point as established, via a judicial notice instruction.*[58]  *If the Court nonetheless submits the issue to the jury, Defendants propose that the jury be instructed on patent law using the instructions the Court gave in* WhiteWater West Industries, Ltd. v. Pacific Surf Design, Inc., *Case No. 17-01118-BEN-BLM (S.D.Cal.), and on breach of contract using the Judicial Council of California Civil Jury Instructions (CACI), 2023 edition, Series 300.*

---

[58] *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1530-1532 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993).

## SECTION 2: ATTEMPT TO MONOPOLIZE

## 35. PSD'S PROPOSED INSTRUCTION (DISPUTED) ELEMENTS OF AN ATTEMPT TO MONOPOLIZE CLAIM

PSD alleges in the alternative that WhiteWater attempted to monopolize the market for sheet wave machines worldwide, except for China. You should consider the attempted monopolization elements only if you have found that PSD has not met its burden of proof on the monopolization count. PSD alleges that it was injured by WhiteWater's unlawful attempt to monopolize the market for sheet wave machines worldwide, except for China.

To prevail on its claim of attempted monopolization, PSD must prove each of the following elements by a preponderance of the evidence:

(1) WhiteWater engaged in anticompetitive conduct;

(2) WhiteWater had a specific intent to achieve monopoly power;

(3) there was a dangerous probability that WhiteWater would achieve its goal of monopoly power in the relevant market;

(4) PSD was injured in its business or property by WhiteWater's anticompetitive conduct.

If you find that PSD has failed to prove any one or more of the elements, then you must find for WhiteWater and against PSD on PSD's claim of attempted monopolization. If you find that PSD has proven all four elements by a preponderance of the evidence, then you must find for PSD and against WhiteWater on this claim.[59]

---

[59] ABA Model Instructions, Chapter 3.D.1., Instruction 1: Elements.

## 35. DEFENDANT'S PROPOSED INSTRUCTION (DISPUTED)  ELEMENTS OF AN ATTEMPT TO MONOPOLIZE CLAIM

PSD (Plaintiff) alleges in the alternative that WhiteWater attempted (that it was injured by defendant's unlawful attempt) to monopolize the market for sheetwave machines worldwide, except for China([identify relevant market]). You should consider the attempted monopolization elements only if you have found that PSD has not met its burden of proof on the monopolization count.

 To prevail on its claim of attempted monopolization, plaintiff must prove each of the following elements by a preponderance of the evidence:

(1) Whitewater (defendant) engaged in anticompetitive conduct;

(2) Whitewater (defendant) had a specific intent to achieve monopoly power in a relevant market;

(3) there was a dangerous probability that Whitewater (defendant) would achieve its goal of monopoly power in the relevant market;

(4) (defendant's conduct occurred in or affected interstate [or foreign] commerce; and

(5)) PSD (plaintiff) was injured in its business or property by Whitewater's (defendant's) anticompetitive conduct.

If you find that PSD has failed (the evidence is insufficient) to prove any one or more of these elements, then you must find for Whitewater (defendant) and against PSD (plaintiff) on PSD's (plaintiff's) claim of attempted monopolization. If you find that PSD has proven (the evidence is sufficient to prove) all four (five) elements by a preponderance of the evidence (as to defendant), then you must find for PSD (plaintiff) and against Whitewater (defendant) on this (plaintiff's) claim (of attempted monopolization).[60]

---

[60] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.D, Instruction 1: Elements (2016 Edition).

**SECTION 2: ATTEMPT TO MONOPOLIZE**

**36. PSD'S PROPOSED INSTRUCTION (DISPUTED) ANTICOMPETITIVE**

**CONDUCT**

It is not sufficient for PSD to prove that WhiteWater intended to monopolize the relevant market. PSD must also show that WhiteWater engaged in anticompetitive conduct, coupled with a specific intent to monopolize and a dangerous probability that WhiteWater would succeed.[61]

---

[61]ABA Model Instructions, Chapter 3.D.1., Instruction 2: Anticompetitive Conduct.

## SECTION 2: ATTEMPT TO MONOPOLIZE

## 36. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## ANTICOMPETITIVE CONDUCT

It is not sufficient for <u>PSD</u> (~~plaintiff~~) to prove that WhiteWater (~~defendant~~) intended to monopolize the relevant market. <u>PSD</u> (~~Plaintiff~~) must also show that WhiteWater (~~defendant~~) engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that WhiteWater (~~defendant~~) would succeed. Generally, a firm engages in anticompetitive conduct when it attempts to exclude rivals without an efficiency-enhancing justification for its conduct.[62]

---

[62] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 3.D, Instruction 2: Anticompetitive Conduct (2016 Edition).

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECTION 2: ATTEMPT TO MONOPOLIZE

## 37. SPECIFIC INTENT TO ACHIEVE MONOPOLY POWER

The second element that PSD must prove is that WhiteWater had a specific intent to monopolize a relevant market. PSD must first prove that the market it alleges—the market for sheet wave machines worldwide, except for China—is a relevant market for antitrust purposes. PSD must then prove that WhiteWater had a specific intent to monopolize that market. I have previously instructed you regarding determining whether PSD has proven the relevant market; those instructions apply with equal force to PSD's attempt to monopolize claim.

If you find that PSD has proven the relevant market, you must then decide whether WhiteWater had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that WhiteWater acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

There are several ways in which PSD may prove that WhiteWater had the specific intent to monopolize. There may be evidence of direct statements of WhiteWater's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible agents of WhiteWater at or about the time of the conduct in question or by testimony concerning statements made by responsible agents of WhiteWater. You must be careful, however, to distinguish between a defendant's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that WhiteWater actually intended to obtain a monopoly, specific intent may be inferred from what WhiteWater did. For example, if the evidence shows that WhiteWater lacked a legitimate business justification and the natural and probable consequence of WhiteWater's conduct in the relevant market was to give WhiteWater control over prices and to exclude or

destroy competition, and that this was plainly foreseeable by WhiteWater, then you may (but are not required to) infer that WhiteWater specifically intended to acquire monopoly power.[63]

---

[63] Model Instructions, Chapter 3.D.3., Instruction 3: Specific Intent.

# SECTION 2: ATTEMPT TO MONOPOLIZE

## 38. DANGEROUS PROBABILITY OF SUCCESS

If you find that WhiteWater had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize, namely, that there was a dangerous probability that WhiteWater would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

The court's previous instructions with respect to monopoly power apply with equal force to PSD's attempt to monopolize claim.

In determining whether there was a dangerous probability that WhiteWater would acquire the ability to control prices and exclude or destroy competition in a relevant market, you should consider such factors as:

- WhiteWater's market share;
- the trend in WhiteWater's market share;
- whether the barriers to entry into the market made it difficult for competitors to enter the market; and
- the likely effect of any anticompetitive conduct on WhiteWater's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that WhiteWater would ultimately acquire monopoly power. A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that WhiteWater would ultimately acquire monopoly power.[64]

---

[64] Model Instructions, Chapter 3.D.4., Instruction 4 (Dangerous Probability of Success)

## SECTION 2: ATTEMPT TO MONOPOLIZE

### 39. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

### SHAM LITIGATION

For PSD's monopolization claims against WhiteWater, I explained to you that the Constitution ensures the right of everybody, whether acting alone or in combination or agreement with others, to initiate lawsuits, recognizing that when people do so, they will naturally seek judicial action that favors them and also may be unfavorable to others. The law provides that the right to initiate a lawsuit(s) is an important right, and that the exercise of that right, even by an agreement, does not normally violate the antitrust laws.

This instruction also applies to PSD's claim that WhiteWater and ADG attempted to monopolize the market for sheetwave machines by pursuing sham litigation against PSD.

Therefore, in order to find for PSD and against Whitewater on PSD's claim of attempted monopolization, PSD must show, by clear and convincing evidence, two things with respect to each individual lawsuit it alleges was brought for an anticompetitive purpose:

(1) that the lawsuit was objectively baseless; and

(2) that the baseless lawsuit was an attempt to harass or interfere directly with the business relationships of one or more competitors through the use of governmental process as opposed to through the outcome of the suit.

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

### 40. INTRODUCTION

PSD challenges Defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. To establish a violation of Section 1 of the Sherman Act, plaintiff must prove the following:

(1) the existence of a contract, combination, or conspiracy between or among at least two separate entities;

(2) that the contract, combination, or conspiracy unreasonably restrains trade;

(3) and that the restraint caused PSD to suffer an injury to its business or property.[65]

---

[65] ABA Model Instructions, Chapter 1.B., Instruction 2: Sherman Act Section 1.

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

## 41. PSD'S PROPOSED INSTRUCTION (DISPUTED) AGREEMENT:

## DEFINITION, EXISTENCE, AND EVIDENCE

PSD alleges that WhiteWater and ADG entered into an agreement to restrain trade by (1) allocating the relevant market such that ADG was primarily responsible for sales in the United States and parts of Canada and WhiteWater was responsible for sales throughout the rest of the relevant market and (2) seeking to exclude PSD from the relevant market. An agreement conspiracy is an understanding between two or more persons to restrain trade. PSD must prove both of the following elements by a preponderance of the evidence: that the alleged agreement existed; and that Defendants knowingly formed that agreement. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. To establish the existence of the alleged agreement, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken.

A person can become a member without full knowledge of all of the details of the agreement. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.  To prove an agreement existed, the evidence must show that the alleged members of the conspiracy came to an understanding among themselves to accomplish a common purpose. It is not necessary the alleged members of the agreement possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by PSD were agreed upon to carry out the alleged agreement.

1   Plaintiff may prove the existence of the alleged conspiracy through direct evidence,
2   circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to
3   establish the existence of the alleged conspiracy.

4   Direct evidence of an agreement may not be available, and therefore an agreement
5   also may be shown through circumstantial evidence. You may infer the existence of an
6   agreement from the circumstances, including what you find the alleged members actually
7   did and the words they used. Mere similarity of conduct among various persons, however,
8   or the fact that they may have associated with one another and may have met or assembled
9   together, does not by itself establish the existence of an agreement. If they acted similarly
10  but independently of one another, without any agreement among them, then there would
11  not be an agreement.

12  In determining whether an agreement or understanding between two or more
13  persons has been proved, you must view the evidence as a whole and not piecemeal.[66]

14
15
16
17
18
19
20
21
22
23
24
25
26
27

---

[66] Model Instructions, Chapter 2.A.1., Instruction 1: Definition, Existence, and Evidence.

28

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

### 41. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) AGREEMENT: DEFINITION, EXISTENCE, AND EVIDENCE

PSD alleges that WhiteWater and ADG entered into an agreement to restrain trade by agreeing that whenever they were contracted by a customer as a consultant or designer, they would exclusively recommend, sell, and install FlowRider machines, to the exclusion of all manufacturers, including PSD.[67] ~~A conspiracy is an agreement or understanding between two or more persons to restrain trade [in the way alleged by plaintiff].~~

~~Plaintiff must prove both of the following elements by a preponderance of the evidence:~~

~~(1)    that    the    alleged    conspiracy    existed;    and (2) that defendant knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.)~~

The basis of <u>an unlawful arrangement</u> ~~a conspiracy~~ is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme. (~~To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.~~) <u>To prove an unlawful arrangement existed, PSD must prove that Defendants</u> (~~To prove a conspiracy existed, the~~

---

[67] Second Amended Complaint, ¶¶ 14, 139, 141.

1    ~~evidence must show that the alleged members of the conspiracy~~) came to an agreement or

2    understanding among themselves to accomplish a common purpose.

3          <u>Such an arrangement</u> (~~A conspiracy~~) may be formed without all parties coming to

4    an agreement at the same time (~~[such as where competitors separately accept invitations~~

5    ~~to participate in a plan to restrain trade]~~). Similarly, it is not essential that all <u>parties</u>

6    (~~persons~~) acted exactly alike, nor is it necessary that they all possessed the same motive

7    for entering the agreement.   (~~It is also not necessary that all of the means or methods~~

8    ~~claimed by plaintiff were agreed upon to carry out the alleged conspiracy, nor that all of~~

9    ~~the means or methods that were agreed upon were actually used or put into operation, nor~~

10   ~~that all the persons alleged to be members of the conspiracy were actually members.~~) It is

11   the agreement or understanding to restrain trade (~~[~~)in the way alleged by plaintiff(~~]~~) that

12   constitutes a conspiracy. (~~Therefore, you may find a conspiracy existed regardless of~~

13   ~~whether it succeeded or failed.~~)

14         (~~Plaintiff may prove the existence of the alleged conspiracy through direct evidence,~~

15   ~~circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to~~

16   ~~establish the existence of the alleged conspiracy.~~)

17         (~~Direct evidence of an agreement may not be available, and therefore a conspiracy~~

18   ~~also may be shown through circumstantial evidence. You may infer the existence of a~~

19   ~~conspiracy from the circumstances, including what you find the alleged members actually~~

20   ~~did and the words they used.~~) Mere similarity of conduct among various persons, however,

21   or the fact that they may have associated with one another and may have met or assembled

22   together, does not by itself establish the existence of a conspiracy. (~~If they acted similarly~~

23   ~~but independently of one another, without any agreement among them, then there would~~

24   ~~not be a conspiracy.~~)

25

26

27

28

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1          In determining whether an agreement (~~or understanding~~) between two or more

2    persons has been proved, you must view the evidence as a whole and not piecemeal.[68]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27    [68] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 2.A Instruction 1: Definition,

28    Existence, and Evidence (2016 Edition).

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

## 42. PSD'S PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON

### OVERVIEW

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraint challenged here – an alleged agreement between WhiteWater and ADG to geographically divide the market for sheet wave machines and maintain WhiteWater's monopoly power -- is unreasonable. In making this determination, you must first determine whether PSD has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that plaintiff has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit. I will now review each step of the analysis in more detail.[69]

---

[69] Model Instructions, Chapter 1.C.1, Instruction 3A: Rule of Reason--Overview.

**SECTION 1: UNREASONABLE RESTRAINT OF TRADE**

**42. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON OVERVIEW**

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraint challenged here (that WhiteWater and ADG entered into an agreement to restrain trade by agreeing that whenever they were contracted by a customer as a consultant or designer, they would exclusively recommend, sell, and install FlowRider machines) (--[*describe it*]--) is unreasonable.

In making this determination, you must first determine whether PSD (plaintiff) has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market.  If you find that PSD has not proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must find in favor of WhiteWater and ADG.  If you find that PSD (plaintiff) has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits.

If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged agreement to recommend, sell, and install FlowRider machines (restraint) is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.

I will now review each step of the analysis in more detail.[70]

---

[70] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1.C, Instruction 3A:Rule of Reason – Overview (2016 Edition).

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

## 43. PSD'S PROPOSED INSTRUCTION RULE OF REASON (DISPUTED) –

## PROOF OF COMPETITIVE HARM

As I mentioned, to prove that the challenged restraint is unreasonable, PSD first must demonstrate that the restraint has resulted in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally. That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, PSD must show that the harm to competition occurred in an identified market, known as a relevant market. I have already instructed you on the relevant market and refer you back to Instruction Nos.

If you find that PSD has proven the existence of a relevant market, then you must determine whether PSD also has proven that the challenged restraint had a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;
- the purpose and nature of the restraint;
- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed;
- and whether the defendant possesses market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.  A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether defendant possesses market power is defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether defendant has market power are described in Instruction No. **. If defendant does not possess market power, it is less likely that the challenged restraint has resulted in a substantial harmful effect on competition in the market.[71]

---

[71] ABA Model Instructions, Chapter 1.C.2., Instruction 3B: Rule of Reason—Proof of Competitive Harm.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 43. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) – PROOF OF COMPETITIVE HARM

As I mentioned, to prove that the challenged <u>agreement to recommend, sell, and install FlowRider machines</u> (~~restraint~~) is unreasonable, <u>PSD</u> (~~plaintiff~~) first must demonstrate that the <u>agreement to recommend, sell, and install FlowRider machines</u> (~~restraint~~) has resulted (~~*or is likely to result*~~) in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of <u>PSD</u> (~~plaintiff~~) is not sufficient, by itself, to demonstrate harm to competition generally.   That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, <u>PSD</u> (~~plaintiff~~) must show that the harm to competition occurred in an identified <u>product and geographic</u> market, known as a relevant market.   <u>The analysis of the product and geographic market for PSD's Section 1 claim is the same as the analysis I described earlier for its Section 2 claim</u>.   (~~There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market.~~) It is <u>PSD's</u> (~~plaintiff's~~) burden to prove the existence of a relevant market.

If you find that <u>PSD</u> (~~plaintiff~~) has proven the existence of a relevant market, then you must determine whether <u>PSD</u> (~~plaintiff~~) also has proven that the challenged <u>agreement to recommend, sell, and install FlowRider machines</u> (~~restraint~~) has (~~*or is likely to have*~~) a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. If the challenged <u>agreement to recommend, sell, and install FlowRider machines</u> (~~conduct~~) has not resulted in (~~*or is not likely to result in*~~) higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then

there has been no competitive harm, and you should find that the challenged conduct was not unreasonable, and find in favor of WhiteWater and ADG.

In determining whether the challenged agreement to recommend, sell, and install FlowRider machines (restraint) has produced ([or is likely to produce]) competitive harm, you may look at the following factors:

- the effect of the agreement to recommend, sell, and install FlowRider machines (restraint) on prices, output, product quality, and service;

- the purpose and nature of the agreement to recommend, sell, and install FlowRider machines (restraint);

- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed;

- and whether WhiteWater and ADG together (the defendant) possess(es) market power.  This is different from the Sherman Act Section 2 claim, where you are to consider whether WhiteWater, on its own, possesses monopoly power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above those that would be charged in a competitive market.   A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether a defendant possesses market power is that defendant's market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether a defendant has market power include market share trends, the existence of barriers to entry (that is, how difficult is it for other producers to enter the market and begin competing with defendant for sales), the entry and exit by other companies, and the number and size of competitors([list factors relevant to the facts of the

~~case, such as the existence of barriers to entry or potential competitors]~~). If a defendant does not possess a substantial market share, it is less likely that defendant possesses market power. If a defendant does not possess market power, it is less likely that the challenged restraint has resulted (~~[or will result]~~) in a substantial harmful effect on competition in the market.[72]

---

[72] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1.C, Instruction 3B: Rule of Reason – Proof of Competitive Harm (2016 Edition).

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

### 44. PSD'S PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON

### EVIDENCE OF COMPETITIVE BENEFITS

If you find that PSD has proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways. If you find that the challenged restraint does result in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefits. If PSD proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.[73]

---

[73] ABA Model Instructions, Chapter 1.C.3., Instruction 3C: Rule of Reason—Evidence of Competitive Benefits.

**SECTION 1: UNREASONABLE RESTRAINT OF TRADE**

**44. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON – EVIDENCE OF COMPETITIVE BENEFITS**

If you find that <u>PSD</u> (~~plaintiff~~) has proven that the challenged <u>agreement to recommend, sell, and install FlowRider machines</u> (~~restraint~~) resulted in substantial harm to competition in a relevant market, then you next must determine whether the <u>agreement</u> (~~restraint~~) also benefits competition in other ways. If you find that the challenged <u>agreement to recommend, sell, and install FlowRider machines</u> (~~restraint~~) does result in competitive benefits, then you also must consider whether the <u>agreement</u> (~~restraint~~) was reasonably necessary to achieve the benefits. If <u>PSD</u> (~~plaintiff~~) proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the <u>agreement to recommend, sell, and install FlowRider machines</u> (~~restraint~~). [74]

---

[74] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1.C, Instruction 3C: Evidence of Competitive Benefits (2016 Edition).

**SECTION 1: UNREASONABLE RESTRAINT OF TRADE**

**45. PSD'S PROPOSED INSTRUCTION (PSD) RULE OF REASON –**

**BALANCING THE COMPETITIVE BENEFITS**

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint. If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. Plaintiff bears the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.[75]

---

[75] ABA Model Instructions, Chapter 1.C.4., Instruction 3C: Rule of Reason—Balancing the Competitive Effects.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

## 45. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) RULE OF REASON – BALANCING THE COMPETITIVE BENEFITS

If you find that the challenged <u>agreement to recommend, sell, and install FlowRider machines</u> (<s>restraint</s>) was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same <u>agreement</u> (<s>restraint</s>).

If the competitive harm substantially outweighs the competitive benefits, then the challenged <u>agreement to recommend, sell, and install FlowRider machines</u> (<s>restraint</s>) is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged <u>agreement</u> (<s>restraint</s>) is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors. <u>PSD</u> (<s>Plaintiff</s>) bears the burden of proving that the anticompetitive effect of the <u>agreement to recommend, sell, and install FlowRider machines</u> (<s>conduct</s>) substantially outweighs its benefits.[76]`

---

[76] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 1.C, Instruction 3D: Balancing the Competitive Benefits (2016 Edition).

**SECTION 1: UNREASONABLE RESTRAINT OF TRADE**

**46. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED): SECTION 1**

**SHAM LITIGATION**

For PSD's monopolization claims against WhiteWater, I explained to you that the Constitution ensures the right of everybody, whether acting alone or in combination or agreement with others, to initiate lawsuits, recognizing that when people do so, they will naturally seek judicial action that favors them and also may be unfavorable to others. The law provides that the right to initiate a lawsuit(s) is an important right, and that the exercise of that right, even by an agreement, does not normally violate the antitrust laws.

This instruction also applies to PSD's claim that WhiteWater and ADG agreed to pursue sham litigation against PSD.

Therefore, in order to find for PSD and against WhiteWater on this claim, PSD must show, by clear and convincing evidence, two things with respect to each individual lawsuit it alleges was brought for an anticompetitive purpose:

(1) that the lawsuit was objectively baseless; and

(2) that the baseless lawsuit was an attempt to harass or interfere directly with the business relationships of one or more competitors through the use of governmental process as opposed to through the outcome of the suit.

**ANTITRUST INJURY AND CAUSATION**

**47. PSD'S PROPOSED INSTRUCTION (DISPUTED) GENERALLY**

If you find that Defendants have violated any of Sections 1 or 2 of the Sherman Act as alleged by PSD, then you must decide if PSD was injured by Defendants' conduct. PSD is entitled to recover damages for an injury to its business or property if it can establish, by a preponderance of the evidence, three elements of injury and causation:

(1) PSD was in fact injured as a result of Defendants' violation of the antitrust laws;

(2) Defendants' illegal conduct was a material cause of PSD's injury; and

(3) PSD's injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For PSD to establish that it is entitled to recover damages, it must prove that it was injured as a result of Defendants' violation of the antitrust laws. Proving the fact of damage does not require PSD to prove the dollar value of its injuries. It requires only that PSD prove that it was in fact injured by Defendants' antitrust violation. If you find that PSD has established that it was in fact injured, you may then consider the amount of PSD's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that PSD has established that it was in fact injured.

PSD must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that Defendants' illegal conduct was a material cause of PSD's injuries. This means that PSD must prove that some damage occurred to it as a result of Defendants' alleged antitrust violation, and not some other cause. PSD is not required to prove that Defendants' antitrust violation was the sole cause of its injuries; nor need PSD eliminate

all other possible causes of injury. It is enough if PSD has proven that the alleged antitrust violation was a material cause of its injuries. However, if you find that PSD's injuries were caused primarily by something other than the alleged antitrust violation, then you must find that PSD has failed to prove that it is entitled to recover damages from Defendants.

Finally, PSD must establish that its injuries are the type of injuries that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If PSD's injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then PSD's injuries are antitrust injuries. On the other hand, if PSD's injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then its injuries are not antitrust injuries and PSD may not recover damages for those injuries under the antitrust laws.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against - such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit - and the antitrust laws do not permit PSD to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if PSD can establish that it was in fact injured by Defendants' conduct, that Defendants' conduct was a material cause of its injury, and that PSD's injury was the type that the antitrust laws were intended to prevent, then you should find that PSD has met its burden of proof on this element of its claims.[77]

---

[77] ABA Model Instructions, Chapter 6.A.1., Instruction 1: Injury and Causation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 47. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) INJURY AND CAUSATION

If you find that ~~WhiteWater has violated Section Two of the Sherman Act, or WhiteWater and/or ADG have violated Section One of the Sherman~~ (defendant has violated [*the applicable section of the Sherman, Clayton, or Robinson-Patman*]) Act, then you must decide if PSD (~~Plaintiff~~)is entitled to recover damages from defendant.

PSD (~~plaintiff~~) is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

(1)   plaintiff was in fact injured as a result of defendant's alleged violation of the antitrust laws;

(2)   defendant's alleged illegal conduct was a material cause of PSD's (~~plaintiff's~~) injury; and

(3)   PSD's (~~plaintiff's~~) injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For PSD (~~plaintiff~~)to establish that it is entitled to recover damages, it must prove that it was injured as a result of defendant's alleged violation of the antitrust laws.   Proving the fact of damage does not require PSD (~~plaintiff~~) to prove the dollar value of its injury. It requires only that PSD (~~plaintiff~~) prove that it was in fact injured by WhiteWater's and/or ADG's (~~defendant's~~) alleged antitrust violation. If you find that PSD (~~plaintiff~~) has established that it was in fact injured, you may then consider the amount of PSD's (~~plaintiff's~~) damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that PSD (~~plaintiff~~) has established that it was in fact injured.

PSD (~~Plaintiff~~) must also offer evidence that establishes by a preponderance of the evidence that defendant's alleged illegal conduct was a material cause of PSD's

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1  (plaintiff's) injury.   (~~This means that plaintiff must have proved that some damage~~
2  ~~occurred to it as a result of defendant's alleged antitrust violation, and not some other~~
3  ~~cause. Plaintiff is not required to prove that defendant's alleged antitrust violation was the~~
4  ~~sole cause of its injury; nor need plaintiff eliminate all other possible causes of injury. It~~
5  ~~is enough if plaintiff has proved that the alleged antitrust violation was a material cause of~~
6  ~~its injury.~~)

7  Finally, <u>PSD</u> (~~plaintiff~~) must establish that its injury is the type of injury that the
8  antitrust laws were intended to prevent.   This is sometimes referred to as "antitrust injury."
9  If <u>PSD's</u> (~~plaintiff's~~) injuries were caused by a reduction in competition, acts that would
10 lead to a reduction in competition, or acts that would otherwise harm consumers, then
11 <u>PSD's</u> (~~plaintiff's~~) injuries are antitrust injuries. On the other hand, if <u>PSD's</u> (~~plaintiff's~~)
12 injuries were caused by heightened competition, the competitive process itself, or by acts
13 that would benefit consumers, then <u>PSD's</u> (~~plaintiff's~~) injuries are not antitrust injuries
14 and <u>PSD</u> (~~plaintiff~~) may not recover damages for those injuries under the antitrust laws.

15 (*[Insert the following if plaintiff is a competitor of defendant]*.)  You should bear in
16 mind that businesses may incur losses for many reasons that the antitrust laws are not
17 designed to prohibit or protect against--such as where a competitor offers better products
18 or services, or where a competitor is more efficient and can charge lower prices and still
19 earn a profit. The antitrust laws do not permit a plaintiff to recover damages for losses that
20 were caused by the competitive process or conduct that benefits consumers.

21 In summary, if <u>PSD</u> (~~plaintiff~~) can establish that it was in fact injured by <u>WhiteWater's</u>
22 <u>and/or ADG's</u> (~~defendant's~~) conduct, that <u>WhiteWater's and/or ADG's</u> (~~defendant's~~)
23 conduct was a material cause of plaintiff's injury, and that <u>PSD's</u> (~~defendant's~~) injury was
24 the type that the antitrust laws were intended to prevent, then <u>PSD</u> (~~plaintiff~~) is entitled to
25 recover damages for the injury to its business or property. [78]

26

27 _____
[78] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6.A, Instruction 1: Injury and
28 Causation (2016 Edition).

## 48. DEFINITION OF BUSINESS OR PROPERTY

PSD must establish that the injury it claims to have suffered was an injury to its "business or property." The term "business" includes any commercial interest or venture, and you are instructed that PSD has been injured in its "business" if you find that it has suffered injury to any of its commercial interests or enterprises as a result of Defendants' alleged antitrust violation. The term "property" includes anything of value PSD owns, possesses, or in which PSD has a protectable legal interest. You are instructed that PSD has been injured in its "property" if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of Defendants' alleged antitrust violation. You are further instructed that PSD has been injured in its "property" if you find that it has lost money as a result of Defendants' alleged antitrust violation.[79]

---

[79] ABA Model Instructions, Chapter 6.A.2., Instruction 2: Business or Property.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

# DAMAGES

## 49. ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE

If you find that one or both Defendants violated the antitrust laws and that this violation caused injury to PSD, then you must determine the amount of damages, if any, PSD is entitled to recover. The fact that I am giving you instructions concerning the issue of PSD's damages does not mean that I believe PSD should, or should not, prevail in this case. If you reach a verdict for both Defendants on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instruction that I am about to give.

The law provides that PSD should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been had the alleged antitrust violation not occurred. The law does not permit you to award damages to punish a wrongdoer— what we sometimes refer to as punitive damages— or to deter particular conduct in the future. Furthermore, you are not permitted to award to PSD an amount for attorneys' fees or the costs of maintaining this lawsuit.[80]

---

[80] ABA Model Instructions, Chapter 6.B., Instruction 1: Antitrust Damages – Introduction and Purpose.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DAMAGES

## 50. BASIS FOR CALCULATING DAMAGES

You are permitted to make just and reasonable estimates in calculating PSD'S damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates. Damages may not be based on guesswork or speculation.

PSD must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that PSD has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.  If you find that PSD has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages or you may award nominal damages, not to exceed one dollar.[81]

---

[81] ABA Model Instructions, Chapter 6.B.3., Instruction 3: Basis for Calculating Damages.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

# DAMAGES

## 51. PSD'S PROPOSED INSTRUCTION (DISPUTED) CAUSATION AND

## DISAGGREGATION

If you find that one or both Defendants violated the antitrust laws and that PSD was injured by that violation, PSD is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of defendant. PSD bears the burden of showing that its injuries were caused by Defendant's antitrust violation, as opposed to any other factors. If you find that PSD's alleged injuries were caused in part by one or more of the alleged antitrust violations and in part by other factors, then you may award damages only for that portion of PSD's alleged injuries that was caused by the alleged antitrust violation.

PSD claims that it suffered injury because it lost sales and profits as a result of the alleged antitrust violation. Defendants claim that any profits or sales lost by PSD occurred as a result of other factors that have nothing to do with the alleged antitrust violation. PSD is not entitled to recover for lost profits that resulted solely from causes arising from the normal course of business activity. The presence of these factors does not mean PSD did not suffer antitrust injury, but PSD is not entitled to recovery for damages caused by them. PSD only may recover for damages caused by the alleged antitrust violation.

PSD bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that PSD was injured by one or more alleged antitrust violations, and there is a reasonable basis to apportion PSD's alleged injury between lawful and unlawful causes, then you may award damages.

If you find that PSD's alleged injuries were caused by factors other than the alleged antitrust violations, then you must return a verdict for Defendants. If you find that there is no reasonable basis to apportion PSD's alleged injury between lawful and unlawful causes,

1  or that apportionment can only be accomplished through speculation or guesswork, then

2  you may not award any damages at all.[82]

---

[82] ABA Model Instructions, Chapter 6.B.4., Instruction 4: Causation and Disaggregation.

# DAMAGES

## 51. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)  CAUSATION AND DISAGGREGATION

If you find that a defendant violated the antitrust laws and that PSD (plaintiff) was injured by that violation, PSD (plaintiff) is entitled to recover for such injury that was the direct result or likely consequence of the unlawful acts of that defendant. PSD (Plaintiff) bears the burden of showing that its injuries were caused by a defendant's antitrust violation, as opposed to any other factors. If you find that PSD's (Plaintiff's)alleged injuries were caused in part by a defendant's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of PSD's (plaintiff's) alleged injuries that was caused by the defendant's alleged antitrust violation.

([*Where plaintiff is a purchaser claiming injury from an alleged overcharge:*] Plaintiff claims that it suffered injury because it paid higher prices for [*product X*] than it would have paid if the [*alleged antitrust violation*] had not occurred. Defendant claims that these higher prices occurred as a result of other factors that have nothing to do with the alleged antitrust violation. These include [*list, as appropriate, defendant's examples of ways prices could increase in the normal course of business activity*]. Plaintiff is not entitled to recover for changes in price that resulted solely from these or other causes arising from the normal course of business activity. The presence of these factors does not mean plaintiff did not suffer antitrust injury, but plaintiff is not entitled to recover for damages caused by them. Plaintiff only may recover for damages caused by the alleged antitrust violation.)

([*Where plaintiff is a competitor:*]) PSD (Plaintiff) claims that it suffered injury because it lost sales and profits as a result of each defendant's alleged antitrust violation. (defendant's [*alleged antitrust violation*].) Defendants claim(s) that PSD's lost profit calculations are incorrect and unsupported by the evidence in this case, and even if they were correct, PSD has not shown that its lost profits were caused by either defendant's

alleged violation of the antitrust laws. Defendants claim that any lost profits or sales by PSD (any profits or sales lost by plaintiff) occurred as a result of other factors that have nothing to do with the alleged antitrust violation. (~~These include [~~*list, as appropriate, defendant's examples of ways plaintiff could lose sales in the normal course of competitive business activity*~~].)~~ PSD (~~Plaintiff~~) is not entitled to recover for lost profits that resulted solely from (~~these or other~~) causes arising from the normal course of business activity. (~~The presence of these factors does not mean plaintiff did not suffer antitrust injury, but plaintiff is not entitled to recovery for damages caused by them.~~) PSD (~~Plaintiff~~) only may recover for damages caused by the alleged antitrust violation.

PSD (~~Plaintiff~~) bears the burden of proving damages by a preponderance of the evidence, including apportioning damages between lawful and unlawful causes. If you find that PSD (~~plaintiff~~) was injured by either defendant's alleged antitrust violation, and there is a reasonable basis to apportion PSD's (~~Plaintiff's~~) alleged injury between lawful and unlawful causes, then you may award damages.

If you find that PSD's (~~Plaintiff's~~) alleged injuries were caused by factors other than a defendant's alleged antitrust violation, then you must return a verdict in favor of WhiteWater and ADG (~~a defendant~~). If you find that there is no reasonable basis to apportion PSD's (~~Plaintiff's~~) alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award PSD any damages at all.[83]

---

[83] ABA Model Jury Instructions in Civil Antitrust Cases, Ch.6.B.4, Instruction 4: Causation and Disaggregation (2016 Edition).

**DAMAGES**

**52. PSD'S PROPOSED INSTRUCTION (DISPUTED)**

**DAMAGES FOR COMPETITORS – LOST PROFITS**

PSD claims that it was harmed because it lost profits as a result of the alleged antitrust violations. If you find that one or both Defendants committed an antitrust violation and that violation caused injury to PSD, you now must calculate the profits, if any, that PSD lost as a result of Defendants' antitrust violation.

To calculate lost profits, you must calculate net profit: the amount by which PSD's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues. You may calculate the net profit by estimating the amount of profit that PSD would have earned, if any, but for Defendants' unlawful conduct and subtracting from that estimate the amount of profit that PSD in fact earned during the same time period. You should follow the evidence in estimating lost profits and may consider expert testimony offered by the parties in your evaluation of this aspect of damages.[84]

---

[84] ABA Model Instructions, Chapter 6.B.8, Instruction 8: Damages for Competitors – Lost Profits.

**DAMAGES**

**52. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)**

**DAMAGES FOR COMPETITORS – LOST PROFITS**

<u>PSD</u> (~~Plaintiff~~) claims that it was harmed because it lost profits as a result of <u>defendants'</u> (~~defendant's~~) alleged (~~antitrust~~) violation <u>of the antitrust laws</u> (~~alleged antitrust violation~~). If you find that <u>WhiteWater and/or ADG</u> (~~defendant~~) committed an antitrust violation and that this violation caused injury to <u>PSD</u> (~~plaintiff~~), you now must <u>determine</u> (~~calculate~~) the profits, if any, that <u>PSD</u> (~~plaintiff~~)lost as a result of <u>WhiteWater's and/or ADG's</u> (~~defendant's~~) antitrust violation.[85] To calculate lost profits, you must calculate net profit: the amount by which plaintiff's gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those revenues. You may calculate the net profit by <u>identifying specific sales that PSD lost, determining the profit that it would have made on each sale, and adding up the totals.</u>~~the following measure: [Note: The court should incorporate case-specific instructions addressing legitimate means of measuring lost profit, as appropriate based on the evidence, such as the before-after, yardstick, or market share measures~~].)

---

[85] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6.B.8, Instruction 8: Damages for Competitors – Lost Profits (2016 Edition).

## DAMAGES

### 53. PSD'S PROPOSED INSTRUCTION (DISPUTED) DAMAGES FOR

### COMPETITORS – FUTURE LOST PROFITS

PSD claims that it was harmed because, had it not been for the alleged antitrust violation, PSD would have earned profits into the future. If you find that one or both Defendants committed an antitrust violation and that violation caused injury to PSD, you now must calculate the future profits, if any, that PSD lost as a result of the antitrust violation.

To calculate future lost profits, you must make a reasonable estimate of (1) the amount of profits, if any, that PSD would have earned in future years, and (2) the length of time for which it would have earned those profits. In making this calculation, you are not required to calculate future lost profits with absolute mathematical certainty or precision, but you must not engage in guesswork or speculation. In making this determination, you must consider the various factors that could affect the future success of PSD's business, such as general market or economic conditions, lawful competition plaintiff would face in the future, PSD's management of business, changes in technology or other business conditions, and other factors affecting PSD's future performance.

Your determination of future lost profits must have a reasonable basis in the evidence and cannot be speculative. If there is no evidence from which you can make a reasonable estimate of lost future profits, you may not award damages for future lost profits. In calculating future lost profits, you must calculate net profit. In simple terms, net profit is gross revenues minus all of the costs and expenses that would be necessary to produce those revenues. You may calculate net profit by estimating the amount of profit that PSD would have earned, if any, but for Defendants' unlawful conduct and subtracting from that estimate the amount of profit that PSD will, in fact, earn during the same time period. As with the prior lost profits instruction I just gave, you should follow the evidence

and may consider expert testimony offered by the parties in your evaluation of this aspect of damages.

If you award damages for future lost profits, you must discount the amount to its present value, using a discount rate of interest that you find reasonable. This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today— this is known as the time value of money. For example, if you had a choice to receive $1,000 today or a year from now, you would be better off receiving the money today and earning interest on it for a year— you would then have something more than $1,000 in a year from now. Similarly, if you had a right to $1,000 a year from now and you asked for the money today, the person owing you the money a year from now could properly give you a lower amount, reflecting the value that could be earned on that money over the next year. This lower amount is known as an amount discounted to present value.[86]

---

[86] ABA Model Instructions, Chapter 6.B.9, Instruction 8: Damages for Competitors – Future Lost Profits.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

**DAMAGES**

**53. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED) DAMAGES**

**FOR COMPETITORS – FUTURE LOST PROFITS**

*Note: Defendants object to this instruction and to any claim for future lost profit. If this instruction is given, Defendants propose the following:*

PSD (~~Plaintiff~~) claims that it was harmed because it lost profits as a result of defendants' (~~defendant's~~) alleged (~~antitrust~~) violation of the antitrust laws, PSD (Plaintiff) would have earned profits through 2037 (~~for [X] years into the future~~). If you find that (defendant) WhiteWater or ADG committed an antitrust violation and that this violation caused injury to PSD (plaintiff), you now must calculate the future profits, if any, that PSD (plaintiff) lost as a result of the (defendant's) antitrust violations.

To calculate future lost profits, you must make a reasonable estimate of (1) the amount of profits, if any, that PSD (plaintiff) would have earned in future years, and (2) the length of time for which it would have earned those profits. In making this calculation, you are not required to calculate future lost profits with absolute mathematical certainty or precision, but you must not engage in guesswork or speculation. In making this determination, you must consider the various factors that could affect the future success of PSD's (~~plaintiff~~) business, such as general market or economic conditions, lawful competition PSD (~~plaintiff~~) would face in the future, PSD's (~~plaintiff~~) management of business, changes in technology or other business conditions, and other factors affecting plaintiff's future performance (~~[*expand or contract as appropriate*~~]).

Your determination of future lost profits must have a reasonable basis in the evidence and cannot be speculative. If there is no evidence from which you can make a reasonable estimate of lost future profits, you may not award damages for future lost profits.

In calculating future lost profits, you must calculate net profit. In simple terms, net profit is gross revenues minus all of the costs and expenses that would be necessary to produce those revenues. (You may calculate net profit by <u>identifying specific sales that PSD would have made in the future but for any unlawful conduct by Defendants, determining how much profit PSD would have made on each sale, and adding up the totals. As with the prior lost profits instruction I just gave, you should follow the evidence and may consider expert testimony offered by the parties in your evaluation of this aspect of damages.</u> (~~using the following measures: [~~*The court should incorporate case-specific instructions addressing legitimate means of measuring future lost profit, as appropriate based on the evidence, such as the before-after, yardstick, or market share measures*~~]~~.))

If you award damages for future lost profits, you must discount the amount to its present value, using a discount rate of interest that you find reasonable. This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today--this is known as the time value of money. For example, if you had a choice to receive $1,000 today or a year from now, you would be better off receiving the money today and earning interest on it for a year--you would then have something more than $1,000 in a year from now. Similarly, if you had a right to $1,000 a year from now and you asked for the money today, the person owing you the money a year from now could properly give you a lower amount, reflecting the value that could be earned on that money over the next year. This lower amount is known as an amount discounted to present value.[87]

---

[87] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6.B, Instruction 11: Damages for Competitors – Future Lost Profits (2016 Edition).

**DAMAGES**

**54. PSD'S PROPOSED INSTRUCTION (DISPUTED) PREPAREDNESS TO ENTER BUSINESS**

PSD claims that it was harmed because the alleged antitrust violations prevented it from entering a new business.  To recover damages, it is not necessary that PSD actually have entered into this business if you find that the alleged antitrust violation prevented PSD from entering into this business. PSD must prove, however, that it had an intention to enter into this business and that it had taken concrete steps to prepare to do so.

In determining whether or not PSD has demonstrated the intention and preparedness to enter this new business, you may consider such elements as the following: the background and experience of the principals and employees of PSD; the ability of PSD to finance the business and to purchase the necessary facilities and equipment; concrete and discernible steps taken by PSD to enter into this new business; and the success of comparable businesses. Ultimately, to award PSD damages related to its failure to enter this business, you must determine that had it not been for one or both Defendant's alleged antitrust violation, PSD would have entered that business.[88]

---

[88] ABA Model Instructions, Chapter 6.B.11., Instruction 11: Damages for Competitors – Future Lost Profits.

## DAMAGES

### 54. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

### PREPAREDNESS TO ENTER BUSINESS

PSD (~~Plaintiff~~) claims that it was harmed because the defendants' (~~defendant's~~) alleged (~~antitrust~~) violation of the antitrust laws prevented it from (~~entering~~) starting its B2C (~~a new~~) business. To recover damages, it is not necessary that (~~plaintiff~~) PSD actually have entered into (~~this~~) the B2C business if you find that defendants' conduct (defendant's alleged antitrust violation) prevented PSD (~~plaintiff~~) from entering into this business. (~~Plaintiff~~) PSD must prove, however, that it had an intention to enter into this business and that it had taken concrete steps to prepare to do so.

In determining whether or not (~~plaintiff~~) PSD has demonstrated the intention and preparedness to enter this new business, you may consider such elements as the following: the background and experience of the principals and employees of (~~plaintiff~~) PSD; the ability of (~~plaintiff~~) PSD to finance the business and to purchase the necessary facilities and equipment; (and) concrete and discernible steps taken by (~~plaintiff~~) PSD to enter into this new business, and the success of comparable businesses (~~[expand or contract list as appropriate]~~). Ultimately, to award (~~plaintiff~~) PSD damages related to its failure to enter this business, you must determine that had it not been for the defendants' (~~defendant's~~) alleged antitrust violation, (~~plaintiff~~) PSD would have entered that business.[89]

---

[89] ABA Model Jury Instructions in Civil Antitrust Cases, Ch. 6.B, Instruction 11: Damages for Competitors – Preparedness to Enter Business (2016 Edition).

**DEFENSES**

**55. PSD'S PROPOSED INSTRUCTION (DISPUTED)**

**NOERR-PENNINGTON**

WhiteWater contends that the only conduct alleged to be anticompetitive consists of the filing of lawsuits. The Constitution ensures the right of everybody, whether acting alone or in combination or agreement with others, to petition or appeal to the courts for judicial action, recognizing that when people do so, they will naturally seek judicial action that favors them and also may be unfavorable to others. The law provides that the right to use the courts to seek judicial action is an important right, and that the exercise of that right, even by an agreement, does not normally violate the antitrust laws. PSD contends that Defendants' conduct consists of a scheme of conduct that included, but was not limited to, the filing of lawsuits.

In isolation, a defendant's decision to bring or continue one or more lawsuits against plaintiff does not violate the antitrust laws unless those lawsuits were part of a pattern or practice of successive filings undertaken essentially for purposes of harassment. Litigation is invariably costly, distracting and time-consuming.  The filing of a series of lawsuits without regard to the merits has far more serious implications than filing a single action and can serve as a very effective restraint on trade. When dealing with a series of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.

In determining Defendants' purpose, you may consider whatever direct evidence of Defendants' motivation for bringing the lawsuits is available to you.  Of course, you also may consider circumstantial evidence of Defendants' true purpose. [90]

---

[90] This instruction is based on Model Instructions, Chapter 7.A.3., Instruction 3: Noerr-Pennington – Lobbying; *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades Council, AFL-CIO*, 31 F.3d 800 (9th Cir. 1994); *California Motor Transport Co. v.*

## 55. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## NOERR-PENNINGTON

*Note: Defendants's proposed instructions related to sham litigation and*  Noerr-Pennington *can be found above.*

*Trucking Unlimited*, 404 U.S. 508 (1972); *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993).

# DEFENSES

## 56. DEFENDANTS' PROPOSED INSTRUCTION (DISPUTED)

## UNCLEAN HANDS

Defendants have raised an affirmative defense of that PSD has "unclean hands." The doctrine of unclean hands bars relief to a plaintiff who has violated conscience, good faith, or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted. If PSD has unclean hands, then even if you find that Defendants committed antitrust violations, you must find in favor of Defendants and against PSD on all claims.

To show that PSD has unclean hands, Defendants must prove, by clear and convincing evidence, that:

1.      PSD's conduct is inequitable, which means wrongful, willful, in bad faith, or grossly negligent; and

2.      The conduct relates to the subject matter of PSD's claims.

If Defendants prove these things, then you must balance the alleged wrongdoing by PSD against that of Defendants, to decide whether it should prevent PSD from recovering in this case.[91]

---

[91] *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, 2018 WL 3618243, *2-*5 (S.D.Cal. July 30, 2018) (Benitez, J.), *aff'd* 821 Fed.Appx. 701 (citing, e.g., *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 960 (9th Cir. 2015)).

## 57. ATTORNEY-CLIENT PRIVILEGE

Each party has an absolute right not to disclose what it told its attorney in confidence because the law considers this information privileged.  Do not consider, for any reason at all, the fact that a partydid not disclose what it told its attorney. Do not discuss that fact during your deliberations or let it influence your decision in any way.[92]

---

[92] Instruction given in *WhiteWater West Industries, Ltd. v. Pacific Surf Design, Inc.*, Case No. 17-01118-BEN-BLM (S.D.Cal.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 58. IMPEACHMENT EVIDENCE

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.[93]

---

[93] 9th Circuit Instructions 2.9

## 59. EXPERT WITNESSES

You have heard testimony from three individuals that were qualified as experts, Drs. Barth, Guedj, and Tomlin, who testified about their respective opinions and the reasons for those opinions. This opinion testimony was allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.[94]

---

[94] 9th Circuit Instruction 2.13.

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 60. CHARTS AND SUMMARIES

Certain charts and summaries not admitted into evidence may have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves. [95]

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves. [96]

---

[95] 9th Circuit Instructions 2.14

[96] 9th Circuit Instructions 2.15

## 61. COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.[97]

---

[97] 9th Circuit Instructions 3.3

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 62. READBACK OR PLAYBACK

Because a request has been made for a [readback] [playback] of the testimony of [witness's name] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation but must be considered in the context of all the evidence presented.[98]

---

[98] 9th Circuit Instructions 3.4

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 63. DELIBERATION AND VERDICT

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.[99]

---

[99] 9th Circuit Instructions 3.1

PROPOSED JURY INSTRUCTIONS
Case No. 3:20-cv-01464-BEN-DDL

## 64. UNANIMOUS VERDICT

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict. [100]

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] [bailiff] that you are ready to return to the courtroom.[101]

---

[100] 9th Circuit Instructions 3.1

[101] 9th Circuit Instructions 3.5

# 65. DUTY TO DELIBERATE

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear

anything touching on this case in the media, turn away and report it to me as soon as possible.

## 66. COURT HAS NO OPINION

Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented