BUCHALTER PC
Joshua M. Robbins (SBN 270553)
Roger L. Scott (SBN 247165)
Alexandria C. Montes (SBN 309207)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
jrobbins@buchalter.com
rscott@buchalter.com
amontes@buchalter.com

CROWELL & MORING LLP
Daniel A. Sasse (SBN 236234)
Sima Namiri-Kalantari (SBN 293876)
David Griffith (SBN 329342)
3 Park Plaza, 20th Floor
Irvine, CA  92614-8505
Telephone: 949.263.8400
dsasse@crowell.com
snamiri@crowell.com
dgriffith@crowell.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PACIFIC SURF DESIGNS, INC.,** | Case No. 3:20-CV-01464-BEN-DDL |
| Plaintiff, | Hon. Roger T. Benitez |
| vs. | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO BAR EVIDENCE OF, OR REFERENCES TO, PLAINTIFF EXPERTS' EXCLUDED OPINIONS** |
| **WHITEWATER WEST INDUSTRIES, LTD.**, et al., | |
| Defendant. | **Trial Date:  August 11, 2023** **Courtroom 5A** |

The Court excluded half of the damages analysis by Dr. Ilan Guedj, expert witness for Plaintiff Pacific Surf Designs, Inc. ("PSD"), because it featured speculative conclusions based on unreliable sources. PSD now wants the Court to bar any reference at trial to that exclusion, even though Dr. Guedj's remaining analysis suffers from exactly the same defects. More specifically, PSD does not want the jury to know that Dr. Guedj's reliance on undocumented and uncorroborated conversations with PSD's principals for data to project hypothetical lost profits for its "B2C" business was deemed unfit for trial, while Dr. Guedj presents to that jury opinions about lost profits for PSD's "B2B" business based on the very same sources. That is improper: the jury should be permitted to hear about the deficiencies in Dr. Guedj's rejected approach when it considers his credibility as an expert, and decides whether to overlook similar problems with his trial testimony. PSD's Motion should be denied as to Dr. Guedj.

PSD also seeks to bar reference to the exclusion of certain opinions of its other expert, Dr. David Barth. Defendant WhiteWater West Industries, Ltd. ("WhiteWater") does not intend to make any such reference and thus does not oppose that request.[1]

I. **Relevant Evidence**

Dr. Guedj submitted an expert report in which he opined that WhiteWater's conduct had caused PSD to lose sales and profits in both its "B2B" line of business (selling sheet wave machines to water parks) and its planned "B2C" line of business (operating venues with sheet wave machines installed). WhiteWater moved to exclude both portions of the analysis under Federal Rule of Evidence ("Rule" or "Rules") 702. *See* ECF No. 128-1. As WhiteWater explained, both the B2B and B2C portions of the report suffered from fatal defects, including the fact that for background data to support his calculations, Dr. Guedj relied on conversations he

---

[1] WhiteWater reserves the right to ask Dr. Barth appropriate questions on cross examination should PSD refer to any of Dr. Barth's excluded opinions.

allegedly had with PSD's owner-executives Yong Yeh and Richard Alleshouse, which were neither recorded nor corroborated by other sources.

With its opposition to WhiteWater's *Daubert* motion to exclude Dr. Guedj's analysis, PSD submitted a "supplemental declaration" from Dr. Guedj that included fully-revised calculations for the B2B analysis, based on a new set of data that included supposed new conversations with Mr. Yeh and Mr. Alleshouse, again undocumented and uncorroborated. *See* May 22, 2023 Expert Decl. of S. Ilan Guedj, Ph.D., ECF No. 141-2. WhiteWater moved to strike the declaration as an unauthorized supplemental expert report. *See* May 26, 2023 Mot. to Strike Decl. of S. Ilan Guedj, Ph.D., ECF No. 158-1.

In its July 10, 2023 decision on WhiteWater's *Daubert* motion, the Court excluded the B2C portion of Dr. Guedj's testimony and "conclude[d] that Dr. Guedj's B2C profits analysis [was] akin to that of the excluded expert in *Alpha Grp.*" ECF No. 176 at 19 (citing *Alpha GRP, Inc. v. Subaru*, CV 18-2133-MWF-MRWx, 2021 WL 1146029 (C.D. Cal. Feb. 8, 2021)). The Court explained that:

> Much like the expert in *Alpha Grp.*, Dr. Guedj does not explain the content of his discussion with Alleshouse or Yeh, or whether he conducted any cross check to their answers. Also like the expert in *Alpha Grp.*, Dr. Guedj provides no analysis or explanation regarding how PSD is similar to the putatively comparable business[.]

*Id.*

As to Dr. Guedj's new declaration on the B2B portion, the Court agreed that it was "properly viewed as an untimely expert report[,]" *id.* at 15, but allowed the opinions to be admitted, while authorizing WhiteWater to depose Dr. Guedj again and produce a further rebuttal report from its own expert Dr. Jon Tomlin, *id.* at 16. The Court said that it would "not allow further *Daubert* challenges." *Id.*

At his subsequent deposition held on July 20, 2023, Dr. Guedj confirmed he never spoke with PSD's executives, Mr. Alleshouse or Mr. Yeh directly, and could

1  not fully describe the content of his team's discussions with them. Dr. Guedj also
2  could not confirm whether he conducted any cross check to the answers his team
3  received, or explain how PSD is similar to WhiteWater, the only company Dr. Guedj
4  used for purposes of comparison. *See* Ex. 1 to Decl. of Daniel Sasse, July 20, 2023
5  Dep. of S. Ilan Guedj, Ph.D. ("Guedj Dep."), at 29:5-12 (explaining that Dr. Guedj
6  did not himself have any direct conversations with anyone from PSD, including Mr.
7  Alleshouse and Mr. Yeh, for the purpose of his May 22, 2023 declaration); *id.* at
8  56:18-57:3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9  ▓▓▓▓▓▓▓▓▓; *id.* at 88:22-89:2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
10 ▓▓▓▓▓▓; *id.* at 32:10-14 ("[T]he main corroborator as I state in paragraph 5 and
11 paragraph 6 of my declaration is to compare those profit margins to WhiteWater.");
12 *id.* at 47:22-25 (using WhiteWater's profit margins to confirm PSD's stated costs);
13 *id.* at 63:22-25 ▓▓▓; *id.* at 84:17-22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; *id.* at 105:13-19 ("Q. And is it appropriate to compare
17 margins of a brand-new startup less than a year in business with established
18 businesses that have been running for more than 10 years? A. In this case it was one
19 data point in the comparison to get some comfort about the numbers.").

20 **II.  Argument**

21     **A.  Dr. Guedj's excluded opinion is highly relevant to Dr. Guedj's**
22             **credibility as a damages expert.**

23     Because the jury must determine the reliability of Dr. Guedj's B2B damages
24 calculation, and his overall credibility as an expert witness, WhiteWater should be
25 permitted to tell the jury that half of Dr. Guedj's damages analysis was already
26 excluded as unreliable, and that the same infirmities afflict his remaining work. The
27 fact that Dr. Guedj relied on uncorroborated statements from PSD's self-interested
28 principals to project lost B2B profits—when the same approach was deemed too

4

unreliable even to consider for purposes of the B2C analysis—is extremely relevant to the jury's consideration of Dr. Guedj's testimony and PSD's damages claim.

The fact that WhiteWater is barred from moving to exclude Dr. Guedj's remaining B2B testimony makes it particularly important that this evidence be admitted.[2] Ordinarily, WhiteWater would use Dr. Guedj's admissions regarding his additional unreliable methods in his declaration—and their similarity to the methods that the Court found unreliable—in a renewed *Daubert* motion to prevent PSD from offering his conclusions to the jury at all. But because WhiteWater cannot do that, it must be permitted to make the point to the jury in countering Dr. Guedj's testimony.

Permitting discussion of the exclusion of part of Dr. Guedj's testimony would not cause undue prejudice to PSD. In particular, contrary to PSD's claim, it would not convey that the Court has deemed the remainder of Dr. Guedj's opinions untrustworthy. Rather, the jury might naturally infer that the fact that the Court has allowed Dr. Guedj to testify as to PSD's B2B damages suggests that the Court finds that analysis *more* reliable. And PSD is certainly entitled to argue that the issues that plagued Dr. Guedj's B2C analysis are absent from the B2B portion—indeed, it admits that any potential prejudice could be cured by its "asking appropriate questions on re-direct." (Mot. at 2.) But WhiteWater should have the right to argue otherwise.

The exclusion of an expert's testimony by a *different* court in a *separate case* would potentially raise concerns under Rule 403. *See, e.g.*, *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, No. 19-CV-06593-HSG, 2022 WL 254348, at *6 (N.D. Cal. Jan. 27, 2022) ("As a general matter, references at trial to another court's prior *Daubert* ruling create a risk of unfair prejudice that usually substantially outweighs any probative value."); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-

---

[2] For the record, WhiteWater maintains its objection to Dr. Guedj's testimony, and renews its request that the testimony be fully excluded under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 516 U.S. 869 (1995), particularly in light of Dr. Guedj's testimony at his second deposition.

CV-01370-EJD, 2018 WL 1569703, at *3 (N.D. Cal. Mar. 30, 2018) ("The problem with the order, however, is that it was decided by another judge, in a different case with different facts, under *Daubert*."). There are no such concerns here, as this Court excluded portions of Dr. Guedj's opinions that were made in the same case based on the same set of facts. The fact that Dr. Guedj's opinions have been, at least partially, excluded in this case is directly relevant to his credibility.

PSD's sole authority, the unpublished decision in *Vaporstream, Inc. v. Snap Inc.*, No. 217CV00220MLHKSX, 2020 WL 978731, at *10 (C.D. Cal. Feb. 28, 2020), is distinguishable.[3] In that case, the expert offered two entirely separate methods for measuring the same category of damages. *Id.*, 2020 WL 2543814, at *2-7 (C.D. Cal. Jan. 10, 2020). The Court found one of the two unreliable, but said that decision was insufficiently probative of the expert's credibility on the other category to outweigh the prejudice involved. *Id.*, 2020 WL 978731, at *10. Here, Dr. Guedj's B2B analysis is based on the same measure—lost profits—as the B2C analysis, and he relies on the same data source (PSD's principals) that was found unreliable. The exclusion of the prior opinion is thus far more probative here than in *Vaporstream*.

### B. The Court should reserve ruling because PSD's motion is premature.

In any case, it is too early for the Court to determine the balance of relevance and prejudice in allowing evidence of the exclusion of Dr. Guedj's opinions. For example, experts testifying at trial routinely attempt to establish their credibility with a jury by testifying to the number of times they have been qualified as an expert witness and had their testimony admitted. Thus, at a minimum, the Court should provide WhiteWater the opportunity to raise the admission of the Court's *Daubert* Order during trial depending on how Dr. Guedj testifies about his own credibility or

---

[3] PSD cites *Indect USA Corp. v. Park Assist, LLC*, No. 318-cv-02409-BEN-DEB, 2022 WL 272012, at *2 (S.D. Cal. Jan. 27, 2022) simply for the general propositions underlying Rules 401, 402, and 403. The case has nothing to do with experts or *Daubert* orders.

litigation experience. *See Edwards*, 2022 WL 254348, at *6 ("[W]ithout knowing how Mr. Wagner will testify about his credibility or prior litigation experience, the Court is not prepared to categorically exclude any reference to any order that has ever excluded Mr. Wagner's expert testimony," and permitting defendant to "rais[e] this argument later depending on what Mr. Wagner says at trial."); *Vaporstream*, 2020 WL 978731, at *10 (leaving open the possibility that the *Daubert* order could be admitted by "further order of the Court").

Alternatively, PSD may elicit testimony from Drs. Guedj or Barth that relate to the B2C business and alleged losses. If that happened, then prohibiting WhiteWater from informing the jury that the B2C damages analysis was deemed too unreliable to admit would be highly prejudicial to WhiteWater. The Court should at least wait until PSD's experts have testified before deciding the admissibility of their excluded opinions.

### III. Conclusion

For these reasons, the Court should deny PSD's Motion, or in the alternative, reserve ruling on the Motion until after PSD's experts testify at trial.

DATED: July 31, 2023                **CROWELL & MORING**

By: /s/ Daniel A. Sasse
Daniel A. Sasse
Email: dsasse@crowell.com

Attorneys for Defendant