**Zelle LLP**
Jennifer Duncan Hackett (*pro hac vice*)
(Active: DC 477433; OR 180905; MD)
James R. Martin (SBN 173329)
1775 Pennsylvania Avenue, NW, Suite 375
Washington, D.C. 20006
Tel: (202) 899-4100
Fax: (612) 336-9100
jhackett@zellelaw.com
jmartin@zellelaw.com

**Zelle LLP**
Judith A. Zahid (SBN 215418)
James S. Dugan (SBN 325565)
555 12th Street, Suite 1230
Oakland, CA 94607
Tel: (415) 693-0700
jzahid@zellelaw.com
jdugan@zellelaw.com

**The Law Office Of Manuel de la Cerra**
Manuel de la Cerra (SBN 189313)
7040 Avenida Encinas, Suite 104-381
Carlsbad, CA 92011
Tel: (760) 809-2250
manny@delacerralaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pacific Surf Designs, Inc., <br><br> Plaintiff, <br><br> v. <br><br> WhiteWater West Industries, Ltd., et al., <br><br> Defendants. | Case No. 3:20-cv-01464-BEN-DDL <br><br> Hon. Judge Roger T. Benitez <br><br> **PACIFIC SURF DESIGN'S [PROPOSED] DECIDED FACTS AND LAW** <br><br> Trial Date: August 11, 2023 <br> Time: 9:30 AM <br> Court Room: Courtroom 5A |

1      At the Final Pretrial Conference in the above-captioned case on July 10,

2   2023, the Court directed the parties to submit a proposed statement of Decided Facts and

3   Law to be read to the jury regarding the prior litigations between the parties.  The Court

4   advised the parties that they should try and agree on a Joint Statement, but if they could

5   not, that the parties should each submit a proposal and the Court would decide on the

6   best course of action.  The parties have engaged in extensive meet and confers on this

7   issue, but have not been able to resolve their differences.  In accordance with the Court's

8   direction, therefore, Plaintiff Pacific Surf Designs, Inc. submits the following proposed

9   statement of Decided Facts and Law:

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PSD's [Proposed] Decided Facts and Law
Case No. 3:20-cv-01464-BEN-DDL

# INTRODUCTION

Members of the jury, I am going to provide you with some facts that you should accept as true.  These all relate to prior lawsuits between the plaintiff and defendant.  I will read these facts to you and they will be available in written form for you to have as a reference.

# PRIOR LAWSUITS

### A. The "2014 Surf Waves Action" and "2014 FlowRider Action"

On May 1, 2014, Surf Waves Ltd. ("Surf Waves"), which was owned by WhiteWater, filed an action titled *Surf Waves Ltd. v. PSD, et al*.  I will call that lawsuit "*the 2014 Surf Waves Action*" for ease of reference.

Surf Waves named Pacific Surf Designs ("PSD"), Richard Alleshouse, and Yong Yeh as defendants.  The action alleged a claim for infringement of Patent No. 8,088,016, titled "Half Pipe Water Ride."  I will call this the "016 Patent."

Surf Waves alleged that it acquired ownership of the patent through an assignment of all rights obtained from the inventor, Douglas Murphy. Surf Waves alleged that it developed a product, the "Stingray," that incorporated the '016 Patent.  Surf Waves alleged that, based on information available on PSD's publicly available website, PSD made and/or sold products that infringe one or more claims of the '016 Patent.

On May 1, 2014, Flowrider Surf Ltd. ("Flowrider Surf"), which was owned by WhiteWater, filed an action titled *Flowrider Surf Ltd.  v. Alleshouse, et. al*.  I will call that lawsuit "*2014 FlowRider Action*" for ease of reference.

Flowrider Surf Ltd. ("Flowrider Surf") was a wholly owned subsidiary of WhiteWater.  It named PSD, Richard Alleshouse, and Yong Yeh as defendants.  The action alleged claims for infringement of Patent No. 6,491,589, titled "Mobile Water Ride Having Sluice Slide-Over Cover."  I will call this the "589 Patent."  The complaint also alleged breach of contract, conversion, fraud, unfair competition, and tortious interference.

1   Flowrider Surf alleged that it acquired a license to all rights in the '589 Patent
2   from Wave Loch, Inc. ("Wave Loch") on January 31, 2014. Flowrider Surf alleged that it
3   developed a product, the FlowRider, incorporating the '589 Patent.  Flowrider Surf
4   alleged that Alleshouse breached an agreement that he signed on September 8, 2008,
5   while employed by Wave Loch titled "Covenant Against Disclosure and Covenant Not to
6   Compete."  Flowrider Surf alleged that PSD directly competed with it by offering the
7   same types of water attractions to Flowrider Surf's current and potential customers.
8   Flowrider Surf alleged that Alleshouse breached the agreement by gathering confidential
9   Wave Loch information and disclosing that information to PSD and others and
10   infringing the '589 Patent.

On June 27, 2014, the parties to the lawsuits entered into an agreement under
11
12   which Surf Waves and Flowrider Surf agreed to dismiss the lawsuits "without
13   prejudice," which means that they could be refiled in the future, and PSD agreed to
14   "toll" any applicable statute of limitations for six months.  The actions were dismissed
15   on June 30, 2014, without prejudice.

16   ### B. "2015 Surf Waves/FlowRider Surf Action"

17   #### 1. Filing of Action

18   On August 24, 2015, Surf Waves and FlowRider together caused to be filed an
19   action titled *Flowrider Surf Ltd.  and Surf Waves Ltd. v. PSD, et. al*.  I will call that
20   lawsuit the "*2015 Surf Waves/FlowRider Surf Action*" for ease of reference.  It named
21   PSD as the defendant.  *The 2015 Surf Waves/FlowRider Surf Action* alleged that PSD
22   infringed the '016 and '589 patents.

23   This Court dismissed the '589 Patent claims on May 25, 2017, because the Court
24   found that WhiteWater, not Flowrider Surf, was the proper plaintiff.

25   #### 2. Inter Partes Review

26   PSD filed a request with the Patent Trial and Appeal Board ("PTAB") for "inter
27   partes review" ("IPR") of the '016 and '589 patents.  IPR is a type of administrative trial
28

1  proceeding conducted at the PTAB to review the patentability of one or more claims in a

2  patent only on certain limited grounds and only on the basis of prior art consisting of

3  patents or printed publications.  IPR may be instituted upon a showing that there is a

4  reasonable likelihood that the petitioner would prevail with respect to at least one claim

5  challenged.  In granting IPR of the '016 patent, the PTAB concluded that there was a

6  reasonable likelihood that PSD would prevail in establishing the unpatentability of the

7  '016 patent claims.

8          On January 30, 2017, the PTAB granted PSD's request for IPR of the '016 patent.

9  On February 22, 2017, the PTAB denied PSD's request for IPR of the '589 patent.

10         On January 17, 2018, after IPR of the '016 Patent, PTAB issued a written decision

11  finding that the asserted claims were unpatentable. That decision was summarily

12  affirmed by the appellate court on July 1, 2019.

### 3. *Dismissal of the '016 patent claim and decisions on attorneys' fees*

14         On May 7, 2018, based on the decision of the PTAB, the trial court entered

15  judgment dismissing the '016 claims.  On July 15, 2019, PSD filed a motion seeking

16  attorneys' fees, which may be awarded under federal patent law upon a finding that a

17  case is "exceptional."

18         A case may be deemed exceptional if it stands out from others with respect to

19  either: (1) the substantive strength of a party's litigating position, or (2) the unreasonable

20  manner in which the case was litigated.  A finding that a case is exceptional does not end

21  the inquiry. The decision to award attorney's fees is discretionary and "permits the judge

22  to weigh intangible as well as tangible factors: the degree of culpability of the infringer,

23  the closeness of the question, litigation behavior, and any other factors whereby fee-

24  shifting may serve as an instrument of justice." *2015 Surf Waves/Flowrider  Surf Action*,

25  ECF No. 308 at 3–4.

26         The court granted the motion in part and denied the motion in part. With regard to

27  the '016 patent the court held that Surf Waves "knew or should have known that the '016

28

PSD's [Proposed] Decided Facts and Law
Case No. 3:20-cv-01464-BEN-DDL

1  Patent was objectively unreasonable and frivolous." *Id.* at 6.   The court found: "At

2  bottom, [Surf Waves] relied on nothing more than their own speculative aspirations,

3  derived from weak circumstantial indicators-rather than clear language taken from

4  controlling legal documents to reach the conclusions asserted in response to [PSD's]

5  Motion.  As such, [Surf Waves had] no reasonable basis for arguing that its claims are

6  well grounded." *Id.* at 8.  The court further found Surf Waves (1) "failed to undertake an

7  adequate pre-suit filing investigation before filing" and forced PSD to "spend resources

8  on meritless discovery and expert reports," and (2) "refused to discuss the merits of the

9  case despite [PSD's] numerous invitations to do so." *Id.* at 9.

10        PSD's motion also requested attorney's fees under federal law which may be

11  awarded upon a finding that a party's actions "multiplie[d] the proceedings . . .

12  unreasonably and vexatiously."  The Court declined to award additional attorney's fees

13  under this law upon finding that the actions of Surf Waves and its counsel did not rise to

14  the level of subjective bad faith, which occurs when an attorney knowingly or recklessly

15  raises a frivolous argument or argues a meritorious claim for the purpose of harassing an

16  opponent."  The court also declined to find that Surf Waves or its attorneys brought the

17  action for purposes of harassing PSD. The Court found that, instead, "it seems more likely

18  that Surf Waves simply took an aggressive tack toward this case and maintained hopeful

19  aspirations that, somehow, it could eventually push its way through."  Of the $2.827 million

20  that PSD sought in fees and costs, the court granted $553,233 attributable to the '016 Patent

21  claims.  The Court later ruled that the 2015 Surf Waves/Flowrider Surf Action "was at least

22  in part motivated by [WhiteWater's] desire for 'payback' for Defendant's ongoing

23  competition in the global water attraction market."

### C. The 2017 Employment Contract Action

#### 1. *Filing of the action and trial to a United States district judge*

26       On March 13, 2017, WhiteWater sued Mr. Alleshouse, Mr. Yeh, and PSD asserting

27  claims for breach of contract and correction of inventorship.  Specifically, WhiteWater

28

1    alleged that Mr. Alleshouse applied and obtained patents based on designs he had

2    worked on at Wave Loch. WhiteWater claimed that Mr. Alleshouse had to assign each of

3    three patents to WhiteWater, as Wave Loch's successor, pursuant to the agreement Mr.

4    Alleshouse signed when he worked at Wave Loch.  WhiteWater also claimed that Mr.

5    Yeh was improperly listed as an inventor on three patents. Two of the patents Nos.

6    9,044,685 and 9,302,189, claimed inventorship of certain water-park attractions that

7    individuals may ride as if surfing (the "half pipe" and "quarter pipe"), and the third

8    patent, No. 9,592,433, claimed inventorship of nozzle configurations for regulating

9    water flow in such surfing attractions.

10          The Non-Compete Agreement included the following language:

11          a. Assignment: In consideration of compensation paid by
            Company, Employee agrees that all right, title and interest in all
12          inventions, improvements, developments, trade-secret,
            copyrightable or patentable material that Employee conceives
13          or hereafter may make or conceive, whether solely or jointly
            with others:
14

15          (a) with the use of Company's time, materials, or facilities; or

16          (b) resulting from or suggested by Employee's work for
            Company; or
17

18          (c) in any way connected to any subject matter within the
            existing or contemplated business of Company shall
19          automatically be deemed to become the property of Company
            as soon as made or conceived, and Employee agrees to assign
20          to Company, its successors, assigns, or nominees, all of
            Employee's rights and interests in said inventions,
21          improvements, and developments in all countries worldwide.
            Employee's obligation to assign the rights to such inventions
22          shall survive the discontinuance or termination of this
            Agreement for any reason.
23

24          The case was tried to a judge and on March 27, 2019, the judge held that (a) Mr.

25    Alleshouse breached the Non-Compete Agreement, the agreement was valid under state

26    law, and WhiteWater was therefore entitled to assignment of PSD's patent interests, and

27    (b) Mr. Yeh was improperly joined as an inventor.  Mr. Alleshouse argued that the Non-

28

PSD's [Proposed] Decided Facts and Law
Case No. 3:20-cv-01464-BEN-DDL

1  Compete Agreement was invalid under California law.  Specifically, California Business

2  and Professions Code § 16600 states: "Except as provided in this chapter, every contract

3  by which anyone is restrained from engaging in a lawful profession, trade, or business of

4  any kind is to that extent void" and California Labor Code § 2870(a) which provides:

5  "Any provision in an employment agreement which provides that an employee shall

6  assign, or offer to assign, any of his or her rights in an invention to his or her employer

7  shall not apply to an invention that the employee developed entirely on his or her own

8  time without using the employer's equipment, supplies, facilities, or trade secret

9  information except for those inventions that either: (1) Relate at the time of conception

10  or reduction to practice of the invention to the employer's business, or actual or

11  demonstrably anticipated re-search or development of the employer; or (2) Result from

12  any work performed by the employee for the employer."

13        The trial judge held that § 2870 did not invalidate the assignment provision

14  because, in its view, Mr. Alleshouse failed to explain how requiring an employee to

15  assign inventions "suggested by" his work for Wave Loch exceeded the scope of Section

16  2870, which permits an employer to require an employee to assign inventions "related

17  to" the employer's business.  The district court then briefly rejected the defense of

18  invalidity under California Business and Professions Code § 16600, finding that the

19  Non-Compete Agreement did not restrain Mr. Alleshouse from engaging in the sheet

20  wave profession" but, rather, only required him to assign inventions resulting from his

21  work at Wave Loch or relating to Wave Loch's business at the time he was there.

22        The trial court then found that Mr. Alleshouse breached the Non-Compete because

23  the inventions were related to, or emanated from, Wave Loch's business and research.

24  Citing Mr. Alleshouse's responsibility as the product manager for the FlowRider

25  attraction at Wave Loch and knowledge of certain attractions that were under

26  development at Wave Loch, the trial court stated that "common sense shows that the

27  inventions at issue resulted from Mr. Alleshouse's work at Wave Loch."  The trial court

28

PSD's [Proposed] Decided Facts and Law
Case No. 3:20-cv-01464-BEN-DDL

1  further found that Mr. Yeh was improperly named as an inventor because "Mr.

2  Alleshouse alone conceived of the inventions" and that "Mr. Yeh's contributions

3  occurred thereafter and are insufficient under the law."

4        ## 2. *Appeal and reversal*

5        PSD, Mr. Alleshouse, and Mr. Yeh appealed.  The appellate court reversed, finding

6  that the assignment provision was void under California Business and Professions Code

7  § 16600.  On appeal, the parties accepted two factual premises: (1) the inventions at

8  issue were not conceived until after Mr. Alleshouse left his job at Wave Loch and (2) Mr.

9  Alleshouse did not use any trade-secret or other confidential information belonging to

10  Wave Loch (now belonging to WhiteWater) in arriving at the patented inventions. In

11  ruling, the appellate court wrote that the assignment provision was "broad."  It wrote:

12  "No trade-secret or other confidential information need have been used to conceive the

13  invention or reduce it to practice for the assignment provision to apply. The obligation is

14  unlimited in time and geography. It applies when Mr. Alleshouse's post-employment

15  invention is merely 'suggested by' his work for Wave Loch.  It applies, too, when his

16  post-employment invention is "in any way connected to any subject matter" that was

17  within Wave Loch's "existing or contemplated" business when Mr. Alleshouse worked

18  for Wave Loch.

19        "The restraining effect of these requirements is evident.  For a number of years,

20  Mr. Alleshouse worked for Wave Loch in a wide variety of capacities involving design

21  and implementation of water attractions. Anyone in his position would have developed

22  useful, specialized knowledge of the business of water attractions, wholly apart from any

23  confidential information. Work in the same line of business was necessarily among the

24  best and likeliest prospects for such an individual to pursue when leaving the employer.

25  Yet under the Agreement's assignment provision, pursuit of the very prospects for which

26  the individual was "particularly fitted" carried "a heavy price."

27

28

PSD's [Proposed] Decided Facts and Law
Case No. 3:20-cv-01464-BEN-DDL

### D. The 2017 WhiteWater Action

On February 22, 2017, the Patent Trial and Appeal Board denied PSD's request to institute a review proceeding to seek to have the '589 patent invalidated.

On June 1, 2017, WhiteWater filed an action titled *WhiteWater West Industries, Ltd. v. Pacific Surf Designs, Inc., et al..* I will call that lawsuit "*the 2017 WhiteWater Action*" for ease of reference. The *2017 WhiteWater Action* alleged that PSD infringed the '589 patent.

The trial court denied two motions by WhiteWater for an order that would enjoin PSD from selling sheet-wave machines and motions by PSD for an order dismissing the action for lack of any disputed issues of fact. The case was tried to a jury for seven days. On December 18, 2019, the jury unanimously found that PSD did not infringe on any of WhiteWater's asserted claims in the '589 Patent. In advisory findings on PSD's counterclaim seeking a declaration that the '589 patent was invalid, the jury unanimously found that PSD had shown by clear and convincing evidence that the '589 Patent was "obvious," that WhiteWater, or someone acting on WhiteWater's behalf, submitted material misrepresentations to the United States Patent Trademark Office ("PTO"), but that PSD failed to prove by clear and convincing evidence that WhiteWater had the specific intent to deceive the PTO. The trial court adopted the advisory findings.

Following the verdict, PSD moved for attorney fees, arguing that WhiteWater's '589 patent claim was objectively baseless and was brought in bad faith to harass PSD. The court denied the motion, finding that this was not an exceptional case warranting fees because "there is a presumption that infringement assertions are made in good faith" and PSD had not presented sufficient evidence that WhiteWater's claim was not brought in good faith.

1  Respectfully Submitted,

2  DATED:  August 9, 2023                              **ZELLE LLP**
                                                        By: */s/ Jennifer Duncan Hackett*
3

4                                                          Jennifer Duncan Hackett
                                                           *Attorneys for Plaintiff*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PSD's [Proposed] Decided Facts and Law
Case No. 3:20-cv-01464-BEN-DDL