**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PACIFIC SURF DESIGNS, INC., a Delaware Corporation,<br><br>         Plaintiff,<br><br>v.<br><br>WHITEWATER WEST INDUSTRIES, LTD., et al.,<br><br>         Defendants. | Case No.: 3:20-cv-01464-BEN-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING ADG'S MOTION FOR TAXATION OF COSTS; AND**<br><br>**(2) GRANTING-IN-PART WHITEWATER'S MOTIONS FOR TAXATION OF COSTS**<br><br>**[ECF No. 317, 331]** |

  Before the Court are Aquatic Development Group's ("ADG") Motion for Taxation of Costs and Defendant Whitewater West Industries, Ltd.'s ("Whitewater") Motion for Taxation of Costs. ECF Nos. 317, 331. Plaintiff did not file an opposition to ADG's Motion for Taxation of Costs. Plaintiff did file an opposition to Whitewater's Motion for Taxation of Costs, ECF No. 332, and Whitewater replied. ECF No. 335. The Court found these motions suitable for decision on the papers and vacated both hearings. ECF Nos. 328, 337. For the reasons set forth below, the Court **GRANTS** ADG'S Motion and **GRANTS-IN-PART** Whitewater's motion.

## I. BACKGROUND

  On July 29, 2020, Plaintiff Pacific Surf Designs ("PSD") filed this lawsuit against Defendants Whitewater, ADG and others for violation of the Sherman Act. *See generally*,

1  ECF No. 1.  On July 10, 2023, this Court denied the Defendants' motions for summary judgment.  ECF No. 176.  At this point, PSD had only two claims remaining: the first against Whitewater, the second against ADG.  *Id.*  On July 28, 2023, the parties jointly moved to dismiss PSD's second claim.  ECF No. 217.  The Court granted this motion on August 2, 2023.  ECF No. 238.  The Court then held a two-week jury trial on PSD's sole remaining claim against Whitewater.  The jury returned a verdict for Whitewater.  ECF Nos. 306, 313.

On August 16, 2023, ADG filed a Bill of Costs, seeking **$16,339.03** in costs against PSD.  ECF No. 265.  The Clerk set a hearing for ADG's Bill of Costs for September 5, 2023, and also set a deadline for oppositions.  ECF No. 270.  Although PSD did not oppose ADG's Bill of Costs, the Clerk declined to tax costs because no judgment was issued in favor of ADG.  ECF No. 316.  ADG then filed its Motion for Taxation of Costs addressed in this Order.  ECF No. 317.

On September 19, 2023, Whitewater filed a Bill of Costs, seeking **$297,868.72** in costs against PSD.  ECF No. 318.  The Clerk set a hearing for Whitewater's Bill of Costs for October 17, 2023.  ECF No. 320.  PSD timely filed an Objection to the Bill of Costs.  ECF No. 326.  On November 2, 2023, the Clerk taxed **$19,527.11** against PSD in favor of Whitewater.  ECF No. 330.  Whitewater then filed its Motion for Taxation of Costs addressed in this Order.  ECF No. 331.

## II. LEGAL STANDARD

"A review of the decision of the clerk in the taxation of costs may be taken to the court on motion to re-tax by any party in accordance with Rule 54(d), Fed. R. Civ. P., and Civil Local Rule 7.1."  S.D. Cal. Civ. R. 54.1(h).  "'Under the well-established Rule 54(d)(1) case law, the district court is charged with making a de novo review of the clerk's determination of the costs issue.'"  *Jardin v. DATAllegro, Inc.*, No. 08-CV-1462-IEG WVG, 2011 WL 4835742, at *1 (S.D. Cal. Oct. 12, 2011) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 461 (3d Cir. 2000)).  Rule 54(d) creates a presumption favoring an award of costs to the prevailing party.  *See*, *e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 375–76 (2013) ("describing the 'venerable' presumption that prevailing parties are

entitled to costs); *see also Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 966 (9th Cir.), *cert. granted*, 139 S. Ct. 52, (2018), and *rev'd in part*, 139 S. Ct. 873 (2019) (noting that *Marx* remains binding precedent on the Ninth Circuit). "However, a district court's discretion to award costs is limited to particular types of costs enumerated in 28 U.S.C. § 1920." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 926 (9th Cir. 2015) ("In re DVD") (*citing Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)).

The losing party carries the burden of overcoming the presumption favoring an award of costs to the prevailing party by affirmatively showing a valid reason that the prevailing party is not entitled to costs. *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944-45 (9th Cir. 2003). In reviewing costs assessments, district courts consider: (1) whether the costs are allowable; and (2) whether the amount assessed for each item is reasonable. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000); *see also Yumi Ito v. Tokio Marine & Fire Ins. Co., LTD.*, No. CV036835JFWJTLX, 2007 WL 9735847, at *1 (C.D. Cal. Mar. 22, 2007) (citing to *Majeske* for the same proposition).

### III. DISCUSSION

#### A. ADG's Motion for Taxation of Costs

ADG was dismissed from the lawsuit with prejudice pursuant to a stipulation among the parties. ECF No. 238. Under Ninth Circuit precedent, ADG is still considered a "prevailing party" under Federal Rule of Civil Procedure ("Rule") 54 and entitled to recover costs. *Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009). However, under the Local Rules, the Clerk's authority to tax costs is limited to costs sought after entry of judgment. *See* Local Rule 54(1)(f). Accordingly, the Clerk declined to tax costs to ADG on this basis. ECF No. 316.

ADG seeks a total of **$16,339.03** in costs against PSD. ECF No. 317 ("ADG Mot.") at 10. This accounts for: (1) $1,374.97 for service of summons and subpoenas; (2) $14,391.90 for deposition transcripts; (3) $200 for witness fees; and (4) $372.16 in messenger services and document retrieval fees ("exemplification and copies"). *Id.* ADG argues these are all routine costs specifically allowed by Rule 54. ADG Mot. at 6-

9. ADG further argues such costs are reasonable. *Id*. Noted above, PSD did not file an opposition to ADG's Motion for Taxation of Costs. Under the Local Rules, "[i]f an opposing party fails to file the papers…that failure may constitute a consent to the granting of a motion or other request for ruling by the Court." Local Rule 7.1(f)(3)(c). In addition, the Court agrees with ADG that the costs it seeks appear reasonable and allowable.

Accordingly, the Court **GRANTS** ADG's Motion for Taxation of Costs and awards costs to ADG in the amount of **$16,339.03**.

### B. Whitewater's Motion for Taxation of Costs

Whitewater originally sought **$297,868.72** in costs against PSD. ECF No. 318. After a hearing, the Clerk awarded Whitewater **$19,527.11** in costs. ECF No. 330. Whitewater thereafter filed its Motion for Taxation of costs seeking **$278,342.14**, essentially the difference between the amount it originally sought and the amount awarded by the Clerk. ECF No. 331 ("Whitewater Mot."). Whitewater's arguments are centered around three areas: (1) transcript costs; (2) costs associated with the Court-Ordered additional deposition of Dr. Guedj; and (3) e-Discovery costs. Whitewater Mot. at 8-15.

#### 1. Transcript Costs

The Clerk taxed **$0** in favor of Whitewater for trial transcript costs. ECF No. 330 at 3. Whitewater seeks **$4,233.61** in costs associated with trial transcripts. Whitewater Mot. at 8-9. PSD does not oppose Whitewater's request for these transcript costs. ECF No. 334 ("Oppo.") at 1. Accordingly, the Court **GRANTS** Whitewater's request to tax **$4,233.61** in transcript costs against PSD.

#### 2. Costs Associated with Court-Ordered Deposition of Dr. Guedj

In opposition to Defendant's motion in limine to exclude the testimony of Dr. Guedj, PSD submitted a declaration from Dr. Guedj which purported to adjust his damages figures and incorporate new data. ECF No. 141-2. The Court concluded this declaration was properly viewed as an untimely expert report, which was "not

substantially justified or harmless in light of the unproduced new data files that accompanied it." ECF No. 176 at 15.  However, finding the updated damages figures would facilitate decision on the merits, the Court declined to strike the declaration and instead ordered the Defendants be allowed to depose Dr. Guedj an additional time before the trial.  *Id*. at 16.  The Court ordered that "Plaintiff shall pay for reasonable costs and expenses incurred by Defendants for the additional deposition of Dr. Guedj[.]" *Id*.

The Clerk declined to tax **$3,681.13** in costs for airfare, hotel, transportation and food costs incurred by Whitewater for attending the deposition of Dr. Guedj in person in Washington D.C.  ECF No. 330 at 1-2.[1]  Whitewater now seeks an additional **$4,360.13** in costs related to this Court-ordered deposition of Dr. Guedj.  This includes: (1) **$679** for the deposition transcript; and (2) **$3,681.13** in travel expenses.

PSD does not oppose Whitewater's request of **$679** for the deposition transcript. Oppo. at 1.  Additionally, while PSD concedes it would be responsible for "*reasonable* travel costs" related to this deposition, PSD asserts the costs claimed by Whitewater are not reasonable.  *Id*. (emphasis in original).  PSD argues: (1) travel expenses were not necessary because the deposition could have occurred via Zoom; (2) Whitewater sent two attorneys to attend the deposition, and accordingly the costs associated with the "unnecessary" attorney are not warranted; and (3) the costs incurred by the primary attorney are unreasonably high.  *Id*. at 2.

Whitewater responds that PSD offered the option of taking this deposition in person and cannot now argue that Whitewater accepting PSD's offer was somehow unreasonable.  ECF No. 331-1 at 9-10.  The Court agrees with Whitewater on this point. Regarding sending two attorneys, Whitewater submits a declaration demonstrating that attorneys for both sides routinely traveled to attend depositions throughout this litigation. ECF No. 335-1 at 1-3. Additionally, on several occasions, both sides sent more than one

---

[1] The Clerk did tax **$19,501.58** in costs in favor of Whitewater for deposition transcripts generally.  *Id*. at 2.

attorney to attend depositions. *Id*. Under this record, the Court cannot conclude that it is "unreasonable" for this trend to continue. This is especially true considering the reason the additional deposition of Dr. Guedj was necessary.

Finally, regarding the travel costs themselves, while PSD argues they are unreasonable, it does not sufficiently explain *why* these costs are unreasonable. Oppo. at 2. Nor does PSD argue what "reasonable" travel expenses from Southern California to Washington D.C. would be. *Id*. at 2. Instead, PSD offers to cover $500 of Whitewater's travel expenses. *Id*. The Court does not find this argument availing. Accordingly, the Court **GRANTS** Whitewater's request to tax an additional **$4,360.13** costs against PSD related to this deposition.

<u>3. e-Discovery Costs</u>

Whitewater seeks to re-tax costs related to e-Discovery in the amount of **$270,427.40**. This number represents two categories of costs: (1) **$6,556.97** in conversion related costs; and (2) **$263,870.43** in hosting related costs.

The Court finds the Ninth Circuit's opinion in *In re DVD* instructive. There, the Ninth Circuit directed district courts to closely examine descriptions of tasks and services, directing that they should be "described and established with sufficient specificity, particularity, and clarity as to permit a determination" that costs are awarded correctly under a "narrowly construed § 1920(4)[.]" *Id*. at 928. Using the hypothetical of a copy created by a photocopier versus a fax machine, the Ninth Circuit explained,

> "The cost of making the copy is not rendered non-taxable merely because it was created by using fax machines rather than a photo-copier. Conversely, § 1920(4) does not award costs merely because a process resulted in the creation of a copy…Rather, a further determination is required: whether the copy was necessarily obtained for use in the case. Like any other copy, if the faxed copy was *created to be produced* in discovery, the cost of making the fax would be taxable under § 1920(4). However, if the faxed copy was created solely for the *convenience of counsel*, the cost of making the copy would not be taxable."

*Id*. at 929 (emphasis added). For *In re DVD*, the Ninth Circuit determined that

copies of documents uploaded to a database were non-taxable because merely facilitating the process of selecting documents for production "establishes only that the copies were essential to the document production process, [but] fails to establish the copies were necessarily obtained for use in the litigation." *Id*. at 930.

    *i. Conversion Costs*. PSD argues the Court should deny Whitewater's request for conversion fees because the request includes reimbursement for "deriving data" and "preparation for converting [] data" that is impermissible. Oppo. at 3. PSD points out Whitewater identifies tasks performed "in preparation for the actual conversion" as well as costs for "all files obtained…regardless of whether they were ultimately produced to PSD." *Id*. at 4. Whitewater argues it incurred the requested **$6,556.97** in costs for "third party vendors to assist it in converting documents into a format useable for review and production according to the parties' ESI protocol." ECF No. 335 at 5. Whitewater argues because it was required to upload and convert these documents in order to review them for production, these costs are taxable.

    Whitewater submits three invoices for conversion related expenses. *See* ECF No. 318-7 at 2-17. A review of the conversion invoices reveals some tasks do not appear to meet the *In re DVD* standard. Whitewater submits the Declaration of Tamera Goodman which explains the conversion and data hosting invoices. *See* ECF No. 331-2. While this declaration generally describes these conversion tasks as "professional services performed regarding conversion of ESI" from various sources, the invoices reveal some non-taxable services or services that are insufficiently described. ECF No. 331-2 at 3-5. The Court identifies three (3) invoices which appear to include non-taxable services. First, an invoice for $2,411.25, which contains approximately 2.25 hours of billed services for "communications with client." *See* ECF No. 318-7 at 5-7.[2] Removing the

---

[2] Many of these entries are listed as the applicable task "and communications with client regarding the same." The Court generally deducted .25 hours for the addition of the

2.25 hours for communications, the taxable total for this invoice would be $1,972.50. This trend continues across the other two invoices, with 4.75 hours[3] and 2.0 hours[4] respectively billed for "communication with client" included in tasks. Whitewater does not cite authority for the idea that communication with an ESI provider is a taxable cost, nor does it appear to align with *In re DVD*'s conception of taxable costs of making copies under a narrowly construed § 1920(4). The Court finds deduction of these hours appropriate from the submitted bills.

Accordingly, the Court **GRANTS-IN-PART** Whitewater's request to tax additional conversion costs in the amount of **$4,801.97** against PSD.

*ii. Hosting Costs*. PSD argues it is "settled law" that ESI hosting costs are not taxable. Oppo. at 5 (listing cases). Whitewater responds by citing two cases, one from the Eastern District of Pennsylvania[5] and one from the Central District of California, *Perfect 10, Inc. v. Giganews, Inc* ("Perfect 10").[6] Whitewater argues, "PSD cites no binding authority from the Ninth Circuit, or any cases from within this District. At best, PSD's citations reflect a split of authority on the issue." ECF No. 335 at 8. While the *Perfect 10* ruling was affirmed by the Ninth Circuit, the Ninth Circuit's opinion is

---

"communications with client" onto the task.

[3] The invoice originally totaled $2,801.25; after deducting the 4.75 hours billed for communication related tasks, the total taxable amount was $1,875. See ECF No. 318-7 at 8-12.

[4] The invoice originally totaled $1,327.50; after deducting 2.0 hours billed for communication related tasks, the total taxable amount was $937.50. See ECF No. 318-7 at 13-17.

[5] *In re Aspartame Antitrust Litigation*, 817 F.Supp.2d 608, 614-15 (E.D. PA. 2011).

[6] No. CV 11-07098-AB-SHX, 2015 WL 1746484 at *28 (C.D. Cal. Mar. 24, 2015) *aff'd* 847 F.3d 657 (9th Cir. 2017).

virtually silent on the issue of costs, instead focusing on the attorney fee award (which comprised the bulk of the *Perfect 10* district court opinion as well). 847 F.3d at 676-677.

Whether hosting costs in general are taxable is an unsettled question, however, *In re DVD* is again instructive here. After review of Whitewater's data-hosting invoices, an impermissible ambiguity arises. There is no differentiation in any of the invoices regarding what data was hosted, whether this data was reviewable in its native format, or whether this data was merely reviewed or ultimately produced. The monthly invoices show a fluctuation in the amount of hosted data, but again, there is no explanation for why the monthly amount would fluctuate, or what amount of that stored data was eventually produced. Additionally, at least two of the invoices do not contain information identifying that the invoice was related to this case. *See* ECF No. 318-7 at 29-30. While Whitewater may be correct that hosting the data may have greatly facilitated the discovery undertaking in this case, under binding Ninth Circuit precedent it does not follow that these "services leading up to the actual production constitute 'making copies.'" *In re DVD-Rental Antitrust Litig.*, 779 F.3d at 928 (citation omitted).[7]

Accordingly, the Court **DENIES** Whitewater's request to tax **$263,870.43** in hosting related e-Discovery hosting costs against PSD.

## IV. CONCLUSION

After consideration of the parties' papers and for the reasons set forth above, the

---

[7] "A narrow construction of § 1920(4) requires recognition that the circumstances in which a copy will be deemed necessarily obtained for use in a case will be extremely limited. That a chosen document production process requires the creation of a copy does not establish that the copy is necessarily obtained for use in the case. A lawyer may review electronically stored information for privilege either by viewing the original documents on the client's computer or, alternatively, by viewing copies uploaded to the lawyer's computer. Although the latter method of review requires the creation of a copy, the ability to conduct the review by looking at the original document establishes that the uploaded copy was not necessarily obtained for use in the case." *Id*. at 930 (internal quotations omitted, cleaned up).

Court **ORDERS** as follows:

1. ADG's Motion for Taxation of Costs is **GRANTED** and costs shall be awarded to ADG in the amount of **$16,339.03**.

2. Whitewater's Motion for Taxation of Costs is **GRANTED-IN-PART**, and costs shall be awarded to Whitewater in the modified amount of **$32,922.82**[8] consistent with this Order.

IT IS SO ORDERED

Date: May 29, 2024

Hon. Roger T. Benitez
United States District Court Judge

---

[8] This represents the Clerk's original award of $19,527.11 + $13,395.71 in additional costs awarded by this Order.